**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| **TINNUS ENTERPRISES, LLC,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **ZURU LTD.,** ) | **Civ. Action No. 6:16-cv-33** |
| ) | |
| **Plaintiffs,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **v.** ) | |
| ) | |
| **TELEBRANDS CORP.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Tinnus Enterprises, LLC ("Tinnus") and ZURU Ltd. ("ZURU"), by counsel, file this complaint against Telebrands Corporation ("Telebrands" or "Defendant"), and in support thereof, plaintiffs state as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action to enjoin the manufacture, importation, distribution, use, sales, and offers to sell by Defendant of certain products known as Balloon Bonanza HD (including Balloon Bonanza HD Color Burst), Battle Balloons, and Battle Balloons Color Combat that infringe or contribute toward the infringement of a valid and enforceable U.S. Patent owned by Tinnus and licensed to ZURU, as well as for monetary damages for Defendant's willful infringement.

## THE PARTIES

2.      Plaintiff Tinnus is a limited liability company organized under the laws of the State of Texas with its principal place of business at 3429 18th Street in Plano, Texas.

3.      Plaintiff ZURU is a company organized under the laws of Hong Kong, with its principal place of business in Guangzhou, China.

4.      Defendant Telebrands is a corporation organized under the laws of the State of New Jersey with its principal place of business at 79 Two Bridges Road in Fairfield, New Jersey.

## JURISDICTION AND VENUE

5.      This is a civil action for patent infringement arising under the United States patent statutes, 35 U.S.C. § 1, *et seq*.

6.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

7.      Defendant is subject to this Court's personal jurisdiction because it does and has done substantial business in this judicial district.  In addition, upon information and belief, Defendant (directly and/or through a distribution network) has or intends to regularly place infringing products in the stream of commerce with the knowledge and/or understanding that such products will be sold in Texas and in this district.  Defendant is subject to the general jurisdiction of this Court because it has regular and systematic contacts with this forum such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice.

8.      Additionally, on information and belief, Defendant is offering to sell infringing products throughout the United States, including in Texas and this judicial district.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c), as well as under 28 U.S.C. § 1400(b).

**THE PATENT-IN-SUIT**

10.     On January 26, 2016, the United States Patent and Trademark Office ("USPTO")

duly and legally issued United States Patent No. 9,242,749 ("'749 Patent," attached as **Exhibit**

**A**), entitled "System and Method for Filling Containers with Fluids" to Tinnus.  The '749 Patent

is a continuation of United States Patent No. 9,051,066, which issued to Tinnus on June 9, 2015.

The '749 Patent includes one independent claim.

11.     Any required maintenance fees have been paid, and the '749 Patent has not

expired.  Tinnus is the owner by assignment of the entire right, title and interest in the '749

Patent.  ZURU is the exclusive licensee of the '749 Patent, and thus both plaintiffs have standing

to sue for infringement of the '749 Patent.

**FACTS**

12.     Josh Malone ("Mr. Malone") is the founder and sole owner of Tinnus and the sole

inventor of the '749 Patent.

13.     By early 2014, Mr. Malone, a father and an inventor, had developed a

revolutionary new toy product (a product that is now marketed as Bunch O Balloons), which

would allow someone to fill as many as 100 water balloons which self-tie themselves in

approximately 60 seconds.

14.     The device includes a hose attachment with an opposite end that is fitted with

multiple flexible tubes that connect to balloons.  Versions of the device have included 35 or 37

balloons.  When the hose is turned on, the balloons fill and are automatically sealed when

released of the hose attachment assembly.  A website advertising Mr. Malone's Bunch O

Balloons product can be found at http://www.buybunchoballoons.com.

15.     In March 2014, Mr. Malone, through Tinnus, began taking steps to manufacture the Bunch O Balloons product using certain contractors.  The first batch of product was manufactured in June 2014.  Manufacturing of the Bunch O Balloons product has continued since that time.

16.     To help raise funds for the manufacture and marketing of the Bunch O Balloons product, Mr. Malone, through Tinnus, launched a Kickstarter campaign on July 22, 2014.

17.     Kickstarter is the world's largest Internet crowdsource funding platform for creative projects.

18.     In less than 12 hours, the project was fully funded to its initial $10,000 goal, and within five days, the project had received over a half of a million dollars in startup funding.

19.     To date, that funding has reached nearly $1 million, and the Kickstarter video featuring the Bunch O Balloons product has had approximately 2.9 million views.

20.     The same day Mr. Malone launched the Kickstarter campaign, July 22, 2014, his Bunch O Balloons invention was featured in *Sports Illustrated*'s on-line magazine.

21.     Two days later, *Time* magazine ran a story about his novel product on its website.

22.     That same day, July 24, 2014, Mr. Malone's invention was featured on a nationally-televised broadcast of *Good Morning America*.

23.     Shortly thereafter on July 27, *People* magazine covered the Bunch O Balloons product on its website.

24.     Then, on July 29, just a week after Mr. Malone began his Kickstarter campaign, Mr. Malone appeared on the *Today Show* with his unique invention during a nationally-televised broadcast.

25.     Moreover, the Bunch O Balloons product went viral on the web, including one YouTube review of Mr. Malone's invention, which currently has in excess of 20 million views.

26.     On July 22, 2014, the same day Mr. Malone launched his Kickstarter campaign, he received his first orders from the public for the Bunch O Balloons product, which included 598 orders.

27.     Mr. Malone sold out his initial production batch on the first day of his Kickstarter campaign.

28.     Mr. Malone received those orders before Telebrands began offering its infringing product.

29.     As the publicity surrounding Mr. Malone's invention increased, so too did the interest in his product.

30.     On August 21, 2014, Tinnus launched its website, http://bunchoballoons.com, to accept increasing numbers of product orders.

31.     That website has continually received orders since from that time until May, 2015, following which the website provided links for visitors to a purchasing site based in their desired region.

32.     On August 29, 2014, Tinnus shipped its first batch of the Bunch O Balloons product to customers located in the U.S. and around the world.  Shipping has continued since that time.

33.     Also, in August 2014, ZURU and Tinnus began negotiations to partner with each other for the manufacture, marketing, and sale of the Bunch O Balloons product.

34.     On August 19, 2014, Tinnus and ZURU entered into a license agreement wherein Tinnus granted ZURU an exclusive license to intellectual property rights, including patents, relating to the Bunch O Balloons product.

35.     Following execution of the license agreement, ZURU immediately began heavily investing in the development, production, and marketing of the Bunch O Balloons product.

36.     To date, ZURU has invested millions of U.S. dollars in production and facilities to ramp up the product output.

37.     On information and belief, Telebrands engaged in a scheme to copy and mimic the extremely successful Bunch O Balloons product.

38.     On information and belief, Telebrands began offering to sell knock-offs of the Bunch O Balloons product in or around December 2015 and January 2016.  Telebrands has marketed these knock-off products under different names, including "Balloon Bonanza HD," "Balloon Bonanza HD Color Burst," "Battle Balloons," and "Battle Balloons Color Combat" (hereinafter collectively referred to as "Balloon Bonanza HD").

39.     Telebrands is no stranger to litigation, including federal and state investigations and actions arising out of unfair competition and consumer fraud on the part of Telebrands. Public records indicate that since 1983, Telebrands has been sued more than 50 times for infringement of intellectual property rights.

40.     Ajit Khubani is the CEO and founder of Telebrands.  Mr. Khubani has been referred to as the "Knock-Off King" in the television infomercial industry.

41.     In addition, Peter Bieler, the gentleman responsible for successfully marketing the ThighMaster, stated in his book, *This Business Has Legs*:  "I was more than familiar with A. J. Khubani.  He was a legend in his own time, a knock-off artist par excellence.  He had a

reputation in the infomerial [sic] business as someone who'd kill your direct response campaign by selling his copies to the retailers, who'd sell them for half the price.  Your phones stopped ringing."

42.     Further, Mr. Remy Stern wrote in his book, *But Wait … There's More!*: "Khubani's greatest distinction . . . is that in [the infomercial] industry where almost every new product is a rehash of a previous product and there are precious few true inventions, he has carved out a reputation as one of the most shameless copycats in the business. . . .  Creating cheaper versions of other people's products has since become firmly embedded in Telebrands' business plan."

43.     In addition, Telebrands has been accused of violating consumer protection laws, the latest being a suit by the New Jersey Attorney General and state Division of Consumer Affairs initiated in August 2014.

44.     The nationally-recognized Better Business Bureau's ("BBB") Board of Directors revoked Telebrands's status as an "Accredited Business."  On information and belief, the BBB Board did so because the BBB had received 1,397 complaints relating to Telebrands within the three years prior to the revocation.

45.     Defendant is, among other things, manufacturing, importing, using, selling, and/or offering to sell the Balloon Bonanza HD products, which infringe the '749 Patent. Consequently, plaintiffs' right to relief arises out of the same transaction, occurrence, and/or series of transactions or occurrences relating to the making, using, offering for sale, and/or selling the same infringing products.

**COUNT I**
**INFRINGEMENT OF THE '749 Patent**

46.     Plaintiffs reallege and incorporate by reference all of the above paragraphs of this Complaint as if fully set forth herein.

47.     Plaintiffs are the owner and exclusive licensee of the entire right, title, and interest in the '749 Patent.

48.     Telebrands has and continues to manufacture, use, import, distribute, offer to sell, and/or sell in the United States the Balloon Bonanza HD products that infringe the '749 Patent. Specifically, Telebrands's Balloon Bonanza HD products, including at least those products marketed as Balloon Bonanza HD, Balloon Bonanza HD Color Burst, Battle Balloons, and Battle Balloons Color Combat, infringe claim 1 of the '749 Patent literally and/or under the doctrine of equivalents.  The Balloon Bonanza HD products infringe claim 1 of the '749 Patent at least because the Balloon Bonanza HD products include each and every limitation of claim 1.

49.     Upon information and belief, Telebrands was aware that plaintiffs had a pending patent application that matured into the '749 Patent, and Telebrands was aware that the '749 patent would issues as U.S. Patent No. 9,242,749 on January 26, 2016.

50.     Defendant infringes and will continue to infringe the claim of the '749 Patent by making, using, importing, offering to sell, and/or selling within the United States the Balloon Bonanza HD products.

51.     Defendant's infringement of the '749 Patent is willful.

52.     Plaintiffs are, and will continue to be, damaged and irreparably harmed by Defendant's infringement, which will continue unless Defendant is enjoined by this Court.

**REQUEST FOR RELIEF**

WHEREFORE, plaintiffs respectfully request the following relief against Defendant:

A.      A judgment that the '749 Patent is duly and legally issued, valid, and enforceable;

B.      A judgment holding Defendant liable for infringement of the '749 Patent;

C.      A temporary restraining order, preliminary injunction, and permanent injunction against Defendant, its officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with it, enjoining it from continued acts of infringement of the '749 Patent, including without limitation, an injunction against offers for sale and future sales of the infringing products and colorable imitations thereof;

D.      An accounting for damages and an award of compensatory damages resulting from Defendant's infringement of the '749 Patent, together with pre-judgment and post-judgment interest;

E.      A judgment holding that Defendant's infringement of the '749 Patent is willful and a trebling of damages pursuant to 35 U.S.C. § 284;

F.      A judgment holding that this action is an exceptional case and an award to plaintiffs for their attorney's fees and costs pursuant to 35 U.S.C. § 285 and other authority;

G.      A judgment that plaintiffs be awarded their costs incurred herein; and

H.      Such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, plaintiffs hereby demand trial by jury.


Dated:  January 26, 2016                              Respectfully submitted,


                                        _____/s/ Eric H. Findlay_____
                                        Eric H. Findlay
                                        State Bar No. 00789886
                                        Findlay Craft, P.C.
                                        102 N. College Ave, Ste 900

Tyler, TX 75702
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com

Thomas M. Dunlap, Esq. (Admitted E.D. Tex./VA
Bar No. 44016)
David M. Ludwig, Esq. (Admitted E.D. Tex./VA
Bar No. 73157)
Robert Spendlove, Esq. (Admitted E.D. Tex./VA
Bar No. 75468)
Eric Olavson, Esq. (Admitted E.D. Tex./VA
Bar No. 87872)
Dunlap Bennett & Ludwig PLLC
211 Church Street, SE
Leesburg, Virginia 20175
(703) 777-7319 (t)
(703) 777-3656 (f)
tdunlap@dbllawyers.com
dludwig@dbllawyers.com
rspendlove@dbllawyers.com
eolavson@dbllawyers.com

Cortland C. Putbrese, Esq. (Admitted E.D. Tex./
VA Bar No. 46419)
Dunlap Bennett & Ludwig PLLC
2307 East Broad Street, Ste. 301
Richmond, Virginia 23223
(804) 977-2688 (t)
(804) 977-2680 (f)
cputbrese@dbllawyers.com

*Counsel for plaintiffs Tinnus Enterprises, LLC and
ZURU Ltd.*