**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **TINNUS ENTERPRISES, LLC, ZURU LTD.,** § § | |
| § | **CIVIL ACTION NO. 6:16-CV-00033-RWS** |
| **Plaintiffs,** § § | |
| § | |
| **v.** § | |
| § | |
| **TELEBRANDS CORPORATION,** § § | |
| § | |
| **Defendant.** | |

**MEMORANDUM OPINION AND ORDER**

This claim construction opinion construes the disputed claim terms in U.S. Patent Nos. 9,051,066 ("the '066 Patent"), 9,315,282 ("the '282 Patent"), and 9,242,749 ("the '749 Patent"). Plaintiffs Tinnus Enterprises, LLC, and ZURU Ltd. ("Plantiffs") allege that Defendant Telebrands Corp. ("Telebrands") infringes certain claims of the '282 and '749 Patents. Plaintiffs allege that Defendants Bed Bath & Beyond Inc, Fry's Electronics, Kohl's Department Stores Inc, Sears Holding Corporation, The Kroger Company, Toys "R" Us-Delaware, Inc., and Walgreens Boots Alliance, Inc. (collectively the "Retailers") infringe certain claims of the '749, '282, and '066 Patents. Plaintiffs filed an opening claim construction brief (Doc. No. 162), to which Defendants filed a responsive brief (Doc. No. 174), and Plaintiffs filed a reply (Doc. No. 186). The parties additionally submitted a Joint Claim Construction Chart pursuant to P.R. 4-5(d). (Doc. No. 194.) On December 8, 2016, the Court held a claim construction hearing. Upon consideration of the parties' arguments, and for the reasons stated herein, the Court adopts the constructions set forth below.

1

**OVERVIEW OF THE PATENTS**

Plaintiffs contend that Telebrands's Battle Balloons products literally infringe certain claims of the '066, '749, and '282 Patents. This Court has previously issued an order construing certain claim terms of the '066 Patent. (6:15-cv-551 "*Tinnus I*", Doc. Nos. 181, 200.) All three patents are related and share a common specification. By way of background, the '282 Patent is entitled "System and Method for Filling Containers with Fluids."  '282 Patent. The disclosure of the '282 Patent relates generally to fluid inflatable systems and more particularly, to a system and method for filling containers with fluids. '282 Patent at 1:22–24. The stated objective of the invention is to fill more than one container, such as balloons, simultaneously to save time and avoid potential damage to the containers. '282 Patent at 1:28–44.  The '282 Patent contains one independent claim, claim 1, which recites:

> 1. An apparatus comprising:
>    a housing comprising an inlet and a plurality of outlets;
>    a plurality of hollow tubes, each hollow tube attached to the housing at a respective one of the outlets;
>    a plurality of containers, each container removably attached to a respective one of the hollow tubes;
>    and a plurality of elastic fasteners, each elastic fastener clamping a respective one of the plurality of containers to a respective tube, and each elastic fastener configured to restrict detachment of its respective container from its respective tube and to automatically seal its respective container upon detachment of the container from its respective tube, the restriction of each elastic fastener being sufficiently limited to permit its respective container to detach from its respective tube upon one or more of (1) at least partially filling the container with fluid and (2) shaking the housing;
>    wherein the apparatus is configured to fill the containers substantially simultaneously with fluid;
>    and wherein at least first and second ones of the plurality of containers are disposed sufficiently close to each other such that they press against each other, regardless whether the first and second ones of the plurality of containers are in a filled state or an unfilled state.

'282 Patent at 6:35–48.

The '749 Patent has only one claim, which recites as follows:

1. An apparatus comprising:

a housing comprising an opening at a first end and a plurality of holes extending
    through a common face of the housing at a second end;
a plurality of hollow tubes, each hollow tube attached to the housing at a
    respective one of the holes at the second end of the housing;
a plurality of containers, each container removably attached to a respective one of
    the hollow tubes;
and a plurality of elastic fasteners, each elastic fastener clamping a respective one
    of the plurality of containers to a respective tube, and each elastic fastener
    configured to restrict detachment of its respective container from its respective
    tube and to automatically seal its respective container upon detachment of the
    container from its respective tube, the restriction of each elastic fastener being
    sufficiently limited to permit its respective container to detach from its
    respective tube upon one or more of (1) at least partially filling the container
    with a fluid and (2) shaking the housing;
wherein the apparatus is configured to fill the containers substantially
    simultaneously with the fluid.

'749 Patent at 6:35–57.

## CLAIM CONSTRUCTION PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention
to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303,
1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381
F.3d 1111, 1115 (Fed. Cir. 2004)).  The Court examines a patent's intrinsic evidence to define
the patented invention's scope.  *Id.* at 1313–14; *Bell Atl. Network Servs., Inc. v. Covad
Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  Intrinsic evidence includes
the claims, the rest of the specification and the prosecution history.  *Phillips*, 415 F.3d at
1312–13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their
ordinary and customary meaning as understood by one of ordinary skill in the art at the time of
the invention. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361,
1368 (Fed. Cir. 2003).  Claim language guides the Court's construction of claim terms.

*Phillips*, 415 F.3d at 1314.  "[T]he context in which a term is used in the asserted claim can be highly instructive."  *Id.*   Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent."  *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance.  *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'"  *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)).  "[T]he specification 'is always highly relevant to the claim construction analysis.   Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Id.* (quoting *Vitronics Corp.v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  In the specification, a patentee may define his own terms, give a claim term a different meaning than it would otherwise possess, or disclaim or disavow some claim scope.  *Phillips*, 415 F.3d at 1316.   Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer.  *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343–44 (Fed. Cir. 2001).   This presumption does not arise when the patentee acts as his own lexicographer.  *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone."  *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct."  *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583).  But, "[a]lthough

the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). The well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002); *see also Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003) ("The disclaimer . . . must be effected with 'reasonable clarity and deliberateness.'") (citations omitted)). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on

the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted).  Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent.  *Id.* at 1318.  Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful."  *Id.*  Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms."  *Id.*

In patent construction, "subsidiary fact finding is sometimes necessary" and the court "may have to make 'credibility judgments' about witnesses." *Teva v. Sandoz*, 135 S.Ct. 831, 838 (2015).  In some cases, "the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Id.* at 841.  "If a district court resolves a dispute between experts and makes a factual finding that, in general, a certain term of art had a particular meaning to a person of ordinary skill in the art at the time of the invention, the district court must then conduct a legal analysis: whether a skilled artisan would ascribe that same meaning to that term *in the context of the specific patent claim under review*." *Id.* (emphasis in original).  When the court makes subsidiary factual findings about the extrinsic evidence in consideration of the "evidentiary underpinnings" of claim construction, those findings are reviewed for clear error on appeal. *Id.*

## DISCUSSION

The parties dispute the meaning of the following claim terms, which are set forth herein:

I.      **"sufficiently limited" ('749 Patent, Claim 1; '282 Patent, Claim 1)**

| Claim Term | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| **"sufficiently limited"**<br><br>**('749 Patent, Claim 1; '282 Patent, Claim 1)** | "the restriction of the elastic fastener is such that the container detaches upon at least partially filling, shaking, or both." | Defendants contend that the combined language found at '749 at 6:46-54 and '282 at 6:43-51 renders the claims indefinite. This claim term is found within that functional limitation.<br><br>Alternatively, Defendants propose the following claim construction:<br><br>"the restriction of the elastic fastener is such that the container is permitted to detach upon at least partially filling shaking, or both" |

As an initial matter, Defendants contend that the phrase in which the term "substantially limited" is found renders claim 1 of the '749 and '282 Patents indefinite. For the reasons explained in the Court's corresponding order on indefiniteness, that phrase is not indefinite. With respect to Defendants' alternative construction, the parties' dispute surrounds the meaning and implication of the word "permit" as used in the claim. Defendants emphasize that the claim says "permitted to detach" and that permitted to detach and detachment are not the same thing. (Doc. No. 174, at 7.) Defendants argue that the claims do not recite detachment caused by partially filling, shaking, or both, and that a construction that included such causation would exclude the preferred embodiment of pulling off the containers. *Id*. Plaintiffs dispute Defendants' interpretation of "permit." (Doc. No. 162, at 13.) Plaintiffs argue that Defendants have interpreted the term "permit" to mean that the claims do not recite actual detachment, but that the term appears in the claim to define the strength of the elastic fastener's restriction, not to imply some other force might be used to detach the containers. *Id.*

Claim 1 of the '282 Patent recites in relevant part, "…elastic fastener being sufficiently limited to permit its respective container to detach from its respective tube upon one or more of

(1) at least partially filling the container with fluid and (2) shaking the housing…" and claim 1 of the '749 Patent recites "…each elastic fastener being sufficiently limited to permit its respective container to detach from its respective tube upon one or more of (1) at least partially filling the container with a fluid and (2) shaking the housing." '282 Patent (Claim 1); '749 Patent (Claim 1).  The term "sufficiently limited," as used in the claim, is a limitation of the elastic fastener. The term "permit" is not used to imply some other force might be used to detach the containers, but rather it is used to define the restrictive force of the elastic fasteners as stated in the claim. In other words, the elastic fastener must be configured in such a way for detachment to occur upon at least partially filling, shaking, or both. This claim language is not ambiguous and the plain language of the claim does not exclude an alleged preferred embodiment as Defendants' contend.

The disputed phrase including "sufficiently limited" is simply another limitation of the elastic fasteners that allows detachment "upon one or more of (1) at least partially filling the container with a fluid and (2) shaking the housing." Because this claim language is clear, and the parties have not identified a legitimate claim scope dispute that warrants a construction, the Court finds that no construction is necessary for the term "sufficiently limited."

## II. "filled state" / "unfilled state" ('282 Patent, Claim 1)

| Claim Term | Plaintiffs' Proposal | Defendants' Proposal |
| --- | --- | --- |
| **"filled state"**<br><br>**('282 Patent, Claim 1)** | "a state after a user has added fluid to the container" | Defendants contend the term "filled state" is indefinite.<br><br>Alternatively, Defendants propose the following claim construction:<br><br>"when the container filled with fluid reaches a desired size and/or volume" |
| **"unfilled state"**<br><br>**('282 Patent, Claim 1)** | "a state prior to a user adding fluid to the containers" | "the point before a fluid is introduced into the container" |

As an initial matter, Defendants contend that the term "filled state" is indefinite. For the reasons explained in the Court's corresponding order on indefiniteness, "filled state" is not indefinite. As to their proposed construction, Defendants argue that "filled state" means "when the container filled with fluid reaches a desired size and/or volume," which Defendants contend is substantially supported throughout the specification. (Doc. No. 174, at 4.) Plaintiffs argue that both "filled state" and "unfilled state" should be construed in the context of the '282 Patent to convey the full spectrum of fullness. (Doc. No. 162, at 8.) Plaintiffs contend that a person of ordinary skill in the art would therefore understand that a "filled state" is "a state after a user has added fluid to the containers," and that there is no need to determine the meaning of "filled" in any absolute or quantitative sense. (Doc. No. 162, at 8.) As to "unfilled state," Plaintiffs contend that a person of ordinary skill in the art would therefore understand that an "unfilled state" is "a state prior to a user adding fluid to the containers." (Doc. No. 162, at 8.) Defendants argue that their proposed claim construction more accurately reflects the claim language and that Plaintiffs' proposed construction inappropriately adds a "user." (Doc. No. 174, at 5.)

Claim 1 of the '282 Patent recites in relevant part, "wherein at least first and second ones of the plurality of containers are disposed sufficiently close to each other such that they press against each other, regardless whether the first and second ones of the plurality of containers are in a filled state or an unfilled state." '282 Patent (Claim 1). Thus, the terms "filled state" and "unfilled state" as used in claim 1 of the '282 Patent are used to provide context for the recited claim language that the containers "press against each other." In other words, the terms are not being used in the context of the claim to describe some desired volume of fluid as Defendants' contend, but to provide the limitation that the containers press against each other regardless of whether they are in a "filled state" or "unfilled state." This claim language is clear and does not

need any further construction. A "filled state" as opposed to an "unfilled state" is simply a state where the containers have some volume of fluid in them. Accordingly, the Court finds no further construction is necessary for the terms "filled state" and "unfilled state."

**III. "at least partially filling" ('749 Patent, Claim 1; '282 Patent, Claim 1)**

| Claim Term | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| **"at least partially filling"**<br><br>**('749 Patent, Claim 1; '282 Patent, Claim 1)** | "adding an amount of fluid" | Defendants contend that the combined language found at '749 at 6:46-54 and '282 at 6:43-51 renders the claims indefinite. This claim term is found within that functional limitation.<br><br>Alternatively, Defendants propose the following construction:<br><br>"adding an amount of fluid" |

As an initial matter, Defendants contend that the phrase in which this term is found renders claim 1 of the '749 and '282 Patents indefinite. For the reasons explained in the Court's corresponding order on indefiniteness, that phrase is not indefinite. The parties agree that the term "at least partially filling" means "adding an amount of fluid." The Court, having reviewed the claims and the intrinsic record, agrees with this proposed construction. Therefore, the Court construes the term "at least partially filling" to mean "adding an amount of fluid."

**IV. "common face" ('066 Patent, Claim 1; '749 Patent, Claim 1)**

| Claim Term | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| **"common face"**<br><br>**('066 Patent, Claim 1; '749 Patent, Claim 1)** | "a shared outer surface of the housing through which a plurality of holes extend" | "a planar portion of an object bounded by an edge or other geometric transition" |

The Court has already construed the term "common face" to mean "a shared outer surface of the housing through which a plurality of holes extend." *Tinnus I*, Doc. No. 181, at 10.

Plaintiffs advocate that the Court adopt this construction. (Doc. No. 162, 3.) The Retailer

Defendants argue that the Court should reconsider its construction in light of the '749

prosecution history. (Doc. No. 174, at 9–12.)

While the Retailers' arguments with respect to the prosecution history are primarily the

same as previously raised by Telebrands and considered by the Court, the Retailers also contend

the '749 prosecution history further supports their proposed construction. Specifically, the

Retailers point to the Examiner's consideration of the prior art Saggio as not disclosing

"that the tubes extend through a common face of the housing," compared to prior art Furey:



Saggio, Fig. 7 (Alm Ex. 12)          Furey, Fig. 1 (Alm Ex. 13)
(Highlighting added:  red circles illustrating
holes in the green surface)

(Doc. No. 174, at 12.)

Previously in considering the prosecution history argument raised by Telebrands, the

Court expressly rejected Telebrands' proposed limitation that the "common face" be "planar,"

and stated:

> The Examiner clearly recognized the full scope of the claim as he amended the
> claim as follows: "a housing comprising an opening at a first end, and a plurality
> of holes extending through a common face of the housing two dimensional array
> of holes at a second end." (Doc. No. 162-13, Prosecution History App. No.
> 14/492,487, at 2.)  Importantly, the plain language of the claim requires the
> "common face" to be at a second end of the housing.  Boise does not disclose a
> shared outer surface with a plurality of holes at a *second end*.

*Tinnus I,* Doc. No. 181, at 9.

Here, during the prosecution of the '749 Patent, the Examiner merely stated that Saggio "does not disclose that the tubes extend through a common face of the housing," and that Furey does disclose "tubes…extending from a common face of the housing" in rejecting certain claims under 35 U.S.C. § 103. (Doc. No. 174-12, at 7–8.) But the Examiner's consideration of these references similarly does not require that the "common face" be planar. And, for the reasons already previously discussed, the intrinsic record simply does not support limiting the "common face" to a planar surface that must be geometrically bounded.

Accordingly, the Court construes the term "common face" as "a shared outer surface of the housing through which a plurality of holes extend."

**V.     "second end" ('066 Patent, Claim 1; '749 Patent, Claim 1)**

| Claim Term | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| "second end" ('066 Patent, Claim 1; '749 Patent, Claim 1) | "an outer limit of the housing distinct from the first end" | "one of at least two lengthwise limits of an object" |

The Court has previously construed the term "second end" to mean "an outer limit of the housing distinct from the first end." *Tinnus I*, Doc. No. 181, at 13. Plaintiffs contend the Court should adopt its prior construction. (Doc. No. 162, at 4.) Defendants contend that the Court's construction of "second end" is internally inconsistent and cite to their expert's identification of Boise having nine holes at a second end. (Doc. No. 174, at 14.)

During subsequent preliminary injunction proceedings, the Court further clarified its construction of "second end" in resolving a dispute between the experts:

> Telebrands interprets the Court's claim construction to mean the only portion of the housing that can be a "second end" is the outer *linear* limit of the housing. But the Court's construction is not so limiting. Indeed, in its claim construction opinion, the Court rejected the requirement that the second end be a "linear limit"

or "adjacent to a linear limit." (6:15-cv-551, Doc. No. 181, at 12.) Instead, the Court explained "[t]he specification consistently discloses the 'second end' as an outer limit of the housing and distinguishes the 'second end' from the 'first end.'" *Id.* at 12–13 (citing '066 Patent Fig. 1; 2:33-37.) Because the parties have turned the Court's claim construction into a dispute among the experts as to the meaning of "outer limit" in the Court's construction, the Court clarifies its claim construction herein. The meaning of "outer limit" as used in the Court's construction is simply that of an "outer surface." The distinguishing marker of the "second end," as was set forth in the Court's claim construction, is that the "second end" be *distinct* from the "first end."

(Doc. No. 99, at 13–14.)

In the context of the preliminary injunction, the Court was resolving a dispute between the experts where Defendants' expert continued to impermissibly interpret the meaning of "limit," as set forth in the Court's construction, to be a linear limit of the housing—a position this Court had rejected during the claim construction proceedings. In objecting to the undersigned's construction and clarification of the meaning of the term "second end," Telebrands argued that the undersigned's clarification improperly broadened the term "second end." (Doc. No. 102, at 6.) In his Order Adopting the Magistrate Judge's findings, Judge Schroeder explained, "[b]y labeling everything that is not the outer linear limit an 'adjacent surface,' Telebrands is again arguing that the term should be limited to only the outer linear limit, a limitation that the Magistrate Judge was correct to reject." (Doc. No. 142, at 5.) Because Defendants' expert continued to advocate a position that circumvented the Court's construction based on the meaning of "limit," the Court clarified that limit was an outer surface distinct from the first end. Now, Defendants' expert has labeled all "outer surfaces" as "distinct" under the Court's construction to suggest that the Court's construction reads on the prior art considered during prosecution. *See, e.g.*, Doc. No. 174, at 14. Under the Court's current constructions of "common face" and "second end," Boise does not include a shared outer surface of the housing through which a plurality of holes extend at "an outer limit of the housing distinct from the first

13

end." However, given the continuously modifying interpretations of the Court's construction, the Court finds itself in a position where it must again clarify its construction.

While the Court used the term "outer limit" in its construction, it was to resolve the parties' initial dispute as to whether the "second end" needed to be a linear limit. The Court only clarified the meaning of that term using the term "surface" to resolve the dispute between testifying experts at the preliminary injunction hearing. In reality, the language of the patent is clear in that it requires both a "first end" and a "second end" and they must be distinct. The Court has stated this from the outset. The outer limit is simply synonymous with an "end" of the housing as a person of ordinary skill in the art would understand the plain and ordinary meaning of that word. The "second end" must be an end of the housing. There is no support in the intrinsic record that "second end" must be "one of at least two lengthwise limits."

Accordingly, the Court construes the term "second end" to mean "an outer limit of the housing distinct from the first end."

## VI.     "substantially filled" ('066 Patent, Claim 1)

| Claim Term | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| **"substantially filled"** **('066 Patent, Claim 1)** | "when containers are filled with a volume of fluid such that shaking (as construed herein) overcomes the connecting force and causes the containers to detach." | Defendants contend "substantially filled" is indefinite.<br><br>Alternatively, Defendants propose the following claim construction:<br><br>"when containers have reached a desired size and/or they are filled with the desired volume of fluid" |

In *Tinnus I*, the Court construed the term "substantially filled" to mean "when containers are filled with a volume of fluid such that shaking (as construed herein) overcomes the connecting force and causes the containers to detach." *Tinnus I*, Doc. No. 181, at 14. Plaintiffs contend that the Court should adopt its prior construction of "substantially filled." (Doc. No. 162,

at 6.) Defendants raise the same indefiniteness arguments and alternative construction arguments previously raised. (Doc. No. 174, at 17–18.) The Court has already extensively considered these arguments both in the claim construction briefing and on summary judgment, including Defendants' objections to both. For the reasons previously explained, and as further explained in the concurrent opinion on indefiniteness, "substantially filled" means "when containers are filled with a volume of water such that shaking (as construed herein) overcomes the connecting force and causes the containers to detach."

## VII.   "flexible" ('066 Patent, Claim 1)

| Claim Term | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| "flexible" ('066 Patent, Claim 1) | "capable of bending or being bent" | "not rigid or semi-rigid and capable of bending or being bent" |

In *Tinnus I*, the Court previously construed the term "flexible" to mean "capable of bending or being bent." *Tinnus I*, Doc. No. 181, at 16. Plaintiffs contend the Court's prior construction should be adopted. (Doc. No. 162, at 5.) Defendants raise the same arguments previously raised and argue that the terms "rigid" and "semi-rigid" need to be given some distinction in the Court's construction. (Doc. No. 174, at 16.). For the same reasons previously discussed, "flexible" means "capable of bending or being bent."

## VIII. Agreed Constructions

Finally, the parties submitted the following agreed constructions:

| U.S. Patent No. 9,051,066 Claim Language | Plaintiffs' Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| "connecting force" | [AGREED] | [AGREED] | "force that holds a container onto a |

| U.S. Patent No. 9,051,066 Claim Language | Plaintiffs' Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| | | | tube" |
| **"not less than"** | **[AGREED]** | **[AGREED]** | "equal to or greater than" |
| **"container"** | **[AGREED]** | **[AGREED]** | "an object that can hold something, such as fluids" |

The Court, having reviewed the parties' agreed constructions, as well as the asserted patents' claims, specifications, and prosecution histories, finds the parties' agreed constructions appropriate and construes the terms as set forth above.

## CONCLUSION

For the foregoing reasons, the Court adopts the constructions set forth above.

**So ORDERED and SIGNED this 13th day of December, 2016.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE