IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| TINNUS ENTERPRISES, LLC, and ZURU LTD. | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 6:16-cv-0033 RWS-JDL |
| TELEBRANDS CORP., | § § § § | JURY DEMANDED |
| Defendant. | § § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

The above entitled and numbered civil action was referred to United States Magistrate Judge John D. Love pursuant to 28 U.S.C. § 636(b)(3). On November 21, 2016, the Magistrate Judge issued a Report and Recommendation containing his proposed findings and recommending that the Retailers be enjoined from the sale of Telebrands' Battle Balloon products currently in inventory. (Doc. No. 182.) The Retailers[1] filed an objection to the Report and Recommendation (Doc. No. 195) to which Plaintiffs Tinnus Enterprises ("Tinnus") and ZURU Ltd.'s ("ZURU") (collectively "Plaintiffs") filed a response (Doc. No. 203). Having considered the Retailers' objections, the Court **ADOPTS** the Report and Recommendation of the Magistrate Judge as the findings and conclusions of the Court. All objections are overruled.

### BACKGROUND

On October 31, 2016, the Court issued an injunction against Defendant Telebrands in the lead action as to U.S. Patent Nos. 9,232,749 ("the '749 Patent") and 9,315,282 ("the '282 Patent"). (6:16-cv-33, Doc. No. 159.) During the injunction proceedings, the Retailers were

---

[1] The Retailers are Bed Bath & Beyond Inc, Fry's Electronics, Kohl's Department Stores Inc, Sears Holding Corporation, The Kroger Company, Toys "R" Us-Delaware, Inc., and Walgreens Boots Alliance, Inc.

present and heard on all issues pertaining to the related emergency motion pending against the Retailers. (6:16-cv-34, Doc. No. 26.) Because the issues before the Court focused on Telebrands and the Retailers had not raised any Retailer-specific issues during the proceedings, the Court first proceeded with the injunction on the motion against Telebrands. (6:16-cv-34, Doc. No. 80.)

Upon issuance of the injunction, the parties continued to dispute technicalities on the applicability of the injunction as it pertains to the Retailers. Because the prior briefing was nearly identical to the briefing submitted by Telebrands and not helpful to resolving the parties' then-presented dispute, the Magistrate Judge denied that motion and requested supplemental briefing on the issues that remained pertaining to the Retailers. (6:16-cv-34, Doc. No. 80.) Specifically, on November 1, 2016, the Court requested supplemental expedited briefing on the issue of whether an injunction should issue with respect to the remaining stocked inventory of the Retailers. (Doc. No. 163.) Plaintiffs filed their brief in support of an injunction on November 10, 2016 (Doc. No. 171), and Defendants filed a responsive brief on November 17, 2016 (Doc. No. 179). The Magistrate Judge held a hearing on November 21, 2016 and that same day issued his recommendation that the Retailers be enjoined from the sale of Telebrands' Battle Balloon products currently in inventory. (Doc. No. 182.) The Retailers have now filed objections to the Magistrate Judge's Report and Recommendation.

**LEGAL STANDARD**

The Court reviews *de novo* the portions of the Magistrate Judge's findings to which the Defendant has raised objections. 28 U.S.C. § 636 (b)(1).

"The decision to grant a preliminary injunction is within the discretion of the district court." *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001). "A district court may enter a preliminary injunction based on its consideration of four

2

factors: (1) the likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest." *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1298 (Fed. Cir. 2009) (internal citations omitted).

To establish likelihood of success on the merits, the patentee seeking a preliminary injunction must show that it will likely prove infringement, and that it will likely withstand any challenges to the validity of the patent. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009); *see Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997). The test for infringement in the context of a preliminary injunction is the same as the test for infringement on the merits, which requires that the accused device be evaluated in light of the properly construed claim. *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1372 (Fed. Cir. 2005). With respect to validity, "if the alleged infringer raises a substantial question concerning validity, *i.e.*, asserts an invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue." *Helifix Ltd. v. Block-Lok, Ltd.*, 208 F.3d 1339, 1351 (Fed. Cir. 2000).

Irreparable harm may be demonstrated by showing that: (1) infringement has caused or will cause price erosion or loss of market share; (2) deprivation of the exclusive right to the patented invention; or (3) the accused infringer is incapable of paying a damages award. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011). A patent owner may also suffer irreparable harm from loss of revenue or damage to customer goodwill, as these harms "may frequently defy attempts at valuation." *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010).

**DISCUSSION**

As to the Retailers' initial objection that the Magistrate Judge lacked jurisdiction to make his recommendation, that objection is overruled. As explained above, the Retailers were heard on the motion and the issues were resolved by the Magistrate Judge and the Court as it pertained to both Telebrands and the Retailers. This approach was taken in an effort to help the Court manage its docket where the Retailers presented no different circumstances in briefing or at the injunction hearing. The Court's injunction expressly enjoined the sale of Telebrands's Battle Balloon products by Telebrands and its agents and "all other persons who are in active concert or participation with Telebrands who receive actual notice of this Order by personal service or otherwise." (Doc. No. 159, at 4.) Because the Retailers raised a dispute over this language regarding whether the sale of stocked inventory was enjoined—the only issue specifically presented as unique to the Retailers—the Magistrate Judge then ordered additional briefing and held a hearing on the matter. (6:16-cv-34, Doc. No. 80.) The Report and Recommendation does not modify the prior injunction against Telebrands, but specifically recommends enjoining the sale of the Retailers' currently stocked inventory. For this reason, the Retailers' jurisdictional objection lacks merit.

    a. **Likelihood of Success**

The Retailers first object to the Report and Recommendation's incorporation of the likelihood of success considerations from the initial Report and Recommendation and Order Adopting because the '066 Patent was not included in those orders. (Doc. No. 195, at 2.) As to that point, the Retailers' objection is moot. The Report and Recommendation in question only recommends an injunction as to the Retailers on the '282 and '749 Patents.

4

The Retailers next object that the Court did not construe "sufficiently limited to permit its respective containers to detach…" and explain why Donaldson and Lee do not allegedly teach it. (Doc. No. 195, at 2.) First, the Magistrate Judge has since explained the meaning of this phrase is consistent with the understanding and application of the phrase in the Magistrate Judge's original Report and Recommendation (Doc. No. 99). (Doc. No. 200, at 7–8.) Therein, the Magistrate Judge explained why neither Donaldson nor Lee teach this limitation:

> Not only is it unclear how it would be obvious to use [a mechanical release that includes a firing pin and pressurized gas] to release a plurality of containers filled with water by partially filling and/or shaking, it appears actually counterintuitive to such a teaching. Instead, the mechanical action for release disclosed in Donaldson is actually distinguishable from the present invention, as Donaldson does not teach removing the container by partially filling or shaking.
>
> Lee discloses that the balloon is removed by pushing the guide pipe. Lee at [0033] ("[i]n this state, when the pushing handle 8 of the rear portion of the guide pipe 4 is pushed in the direction of the front end, the rubber band is moved in the direction of the front end of the inner guide pipe by a front end of the outer guide pipe and is escaped from the guide pipe.") Lee does not disclose "the restriction of each elastic fastener being sufficiently limited to permit its respective container to detach from its respective tube upon one or more of (1) at least partially filling the container with fluid and (2) shaking the housing…" as required by the claim.

(Doc. No. 99, at 15–16, 21); see also Doc. No. 142, at 7 ("As the Magistrate Judge correctly found, none of Telebrands's cited references teaches removal by shaking or partially filling.")

The Magistrate Judge's reasoning as to why these prior art references do not disclose this limitation was and remains clear. Accordingly, this objection to the Report and Recommendation is without merit.

Finally, the Retailers argue that the Magistrate Judge erred by failing to consider the impact of a terminal disclaimer of the '749 Patent and an argument that the containers pressing together in the '282 Patent is an unpatentable duplication of elements that does not qualify as an unexpected result. (Doc. No. 195, at 2.) As to the terminal disclaimer objection, the Retailers'

5

argument presented to the Court is that claim 1 of the '749 Patent is invalid for all of the same reasons as claim 1 of the '066 Patent. (6:16-cv-34, Doc. No. 44, at 8.) Despite contending that the Retailers are not impacted by the injunction on the '066 Patent, the Retailers raise and incorporate only those arguments previously raised by Telebrands with respect to the '066 Patent. The Court has already extensively considered these arguments in issuing an injunction (6:15-cv-551, Doc. Nos. 66, 84), and finds that these arguments do not change the determination on the likelihood of success. As to the '282 Patent, the Retailers point only to a single statement that "[e]ven if there was no motivation to make this change, the limitation still is not patentably significant, because '[t]he duplication of elements is not patentable unless a new or unexpected result is produced.'" (6:16-cv-34, Doc. No. 44, at 4.) While this exact statement was not considered verbatim, it does not impact the Court's analysis on the likelihood of success. The Court found that Defendants had not raised a substantial question as to invalidity of the '282 Patent based on the combinations of references presented, and the Court did not consider the fact that the balloons press together as a point of novelty in rendering its analysis. (Doc. No. 142, at 6–9.) Thus, considering this argument now does not change the outcome of this analysis. Therefore, the Court agrees with the Magistrate Judge regarding the likelihood of success and overrules the Retailers' objections.

### b. Irreparable Harm

Regarding irreparable harm, the Retailers first object that the Magistrate Judge failed to identify any irreparable harm as to Tinnus when Tinnus was the sole original movant. (Doc. No. 195, at 3.) But the Court has joined ZURU as a plaintiff in this action as a necessary party. (6:16-cv-34, Doc. No. 71.) Moreover, ZURU joined in the briefing on irreparable harm that was

considered by the Magistrate Judge in issuing his Report and Recommendation. (Doc. No. 171.) Therefore, the Magistrate Judge was not incorrect to consider irreparable harm to ZURU.

Next, the Retailers list a litany of considerations for which the Retailers contend there was no evidence in the record. (Doc. No. 195, at 4.) However, these items were either not conclusions made in the Magistrate Judge's Report and Recommendation (and therefore there is no basis upon which to object) or are mischaracterized by the Retailers. For example, the Retailers first cite an alleged conclusion on "the inferior quality of the accused products." (Doc. No. 195, at 4.) However, the record reveals there is no discussion of, or conclusion made on, the inferiority of the accused products in the Magistrate Judge's Report and Recommendation. (Doc. No. 182.) Next, the Retailers provide a quote as if from the Magistrate Judge's findings in the Report and Recommendation that "consumers are buying in bulk and reselling in market places like Amazon and eBay." (Doc. No. 194, at 4.) As the record again reveals, this is not a conclusion drawn by the Magistrate Judge in his Report and Recommendation, but a characterization of the Plaintiffs' arguments during the discussion of the parties' contentions. (Doc. No. 182, at 5.)

Next, the Retailers object to the statement that "the Retailers are in a position that they must clear their shelves of this inventory due to the injunction against Telebrands." (Doc. No. 195, at 4.) Here, it is undisputed that there is an injunction in place against Telebrands and its agents. (Doc. No. 159.) Therefore, the Magistrate Judge accurately described the present circumstances in this consideration.

The Retailers also object to the Magistrate Judge's consideration of the side-by-side placement of the accused products and Plaintiffs' products by the Retailers. (Doc. No. 195, at 4.) In the briefing, Plaintiffs included evidence of the Plaintiffs' products being sold side-by-side the

7

accused products at a Walmart store—a company that was a defendant in this action. (Doc. No. 171, at 5.) In their response, the Retailers did not dispute that this photo was accurate or that Walmart was not placing the products side-by-side. To the extent the Retailers wanted to challenge the competency of this evidence as it pertains to the side-by-side placement, that should have been raised in their response and not for the first time in their objections. Instead, the Retailers objected to this evidence on the grounds that it was not accurate evidence of price erosion. (Doc. No. 179, at 7.) The Magistrate Judge, however, did not rely on this photo as evidence of price erosion in his Report and Recommendation. Rather, the Magistrate Judge stated that side-by-side placement, as was presented in the record, was likely to continue the consumer confusion that was previously cited in the record upon issuance of the injunction against Telebrands. (Doc. No. 182, at 6.) Although Walmart has since been dismissed from this action, the Magistrate Judge did not err in drawing this inference from the record. Moreover, as to irreparable harm, the Magistrate Judge ultimately concluded that "the fact that the Retailers are currently engaging in a fire sale of the accused products incentivizes not only significant price cuts to the accused products while Plaintiffs products are still being sold side by side, it also incentives continued sales through alternative markets." (Doc. No. 182, at 6.) The Retailers do not provide a meritorious objection to this conclusion and the Court agrees with the Magistrate Judge's findings on this point.

Finally, the Retailers object to the Report and Recommendation's reliance on *Robert Bosch LLC v. Pylon Mfg. Corp.* and that the Magistrate Judge did not consider the delay with respect to the '066 Patent. (Doc. No. 195, at 4–5, 7.) As to the objection regarding *Robert Bosch LLC v. Pylon Mfg. Corp.,* the Magistrate Judge did not rely on this case to support the idea that price erosion may constitute irreparable harm as the Retailers' claim. Rather, the Report and

8

Recommendation cites this case in its legal section in support of the statement that "demonstrating likelihood of success on the merits does not lead to a presumption of irreparable harm." (Doc. No. 182, at 3.) The Court sees no error in this citation and finds that the Retailers' objection mischaracterizes the Magistrate Judge's use of the case citation in question. Finally, with regard to the '066 Patent, the record is clear that there has been no injunction analysis on the '066 Patent as it pertains to the Retailers. Therefore, the Magistrate Judge did not err in declining to consider the time from the issuance of the '066 Patent to the filing of Plaintiffs' emergency motion for an injunction.

### c. Remaining Factors

As to the remaining factors, the Retailers again incorrectly characterize the Magistrate Judge's discussions of the parties' arguments as a foregone conclusion drawn by the Magistrate Judge in their objections. (Doc. No. 195, at 7.) Contrary to the Retailers' contentions, the Magistrate Judge did not conclude that the Retailers "remove product from their shelves all the time." Instead, the Magistrate Judge clearly concluded that "while there will be some burden to the Retailers to remove this inventory, that burden alone does not weigh against the grant of injunction where a small identifiable number of units remain with retailers who have the experience and ability to remove these products from their shelves." (Doc. No. 182, at 7.) The Court agrees with this finding. Finally, as to the public interest factor, the Retailers object that the Report and Recommendation impermissibly relies on a presumption that this factor is always satisfied. (Doc. No. 195, at 8.) The Court disagrees that the Magistrate Judge relied on an unsupported presumption. The record reveals that the Magistrate Judge concluded that because the patents are likely infringed and valid, and there were no other relevant concerns raised, this factor weighed in favor of an injunction. (Doc. No. 182, at 7–8.) The Court finds the remainder

9

of objections constitute reargument of arguments already raised and properly considered by the Magistrate Judge.

## CONCLUSION

Having considered each of the Retailers' objections, the Court **ADOPTS** the Report and Recommendation of the Magistrate Judge (Doc. No. 182) as the findings of this Court. All objections are **OVERRULED**.

The parties are further **ORDERED** to meet and confer within seven (7) days of the issuance of this Order and submit to the Court a proposed bond amount and injunctive order pursuant to Federal Rule of Civil Procedure 65. To the extent the parties cannot agree on an appropriate bond amount or injunctive order, the parties may submit their disputes to the Court within seven (7) days of the issuance of this Order.

**So ORDERED and SIGNED this 3rd day of January, 2017.**

*[signature]*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE