UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| TINNUS ENTERPRISES, LLC, *et al.*,  <br><br>  Plaintiffs,  <br><br> v.  <br><br> TELEBRANDS CORP.,  <br><br>  Defendant. | Civ. Action No. 6:16-CV-00033 (RWS-JDL)  <br> **[LEAD CASE]** |
| TINNUS ENTERPRISES, LLC,  <br><br>  Plaintiffs,  <br><br> v.  <br><br> WAL-MART STORES, INC., *et al.*,  <br><br>  Defendants. | Civ. Action No. 6:16-CV-00034 (RWS-JDL)  <br> **[Consolidated with Lead Case 6:16-CV-00033-RWS-JDL]** |

**PLAINTIFFS' MOTION TO STRIKE REBUTTAL EXPERT REPORT OF SCOTT STEINBERG REGARDING SECONDARY CONSIDERATIONS**

INTRODUCTION

On June 20, 2017—just days before the close of expert discovery—defendants filed a Notice of Service of Supplemental Rebuttal Expert Report (Dkt. 316) by which they "provide[d] notice of the service of a Supplemental Rebuttal Report of Scott Steinberg." (Dkt. 316 at 1.) That Notice related to defendants' after-hours service on June 19, 2017 of a 31-page expert report from their new, third retained expert. Defendants' belated expert report violates the Court's Fourth Amended Docket Control Order (Dkt. 312) and the Court's Discovery Order (Dkt. 74), which provides that each side is limited to two experts. Unless defendants' brand-new report is stricken, it will unduly and unfairly prejudice plaintiffs.

Although defendants' notice characterizes their new expert report as a "supplemental rebuttal expert report," there is nothing "supplemental" about it. On the contrary, it represents a new report, on a new matter, from an expert who has not previously offered opinions or produced a report in this litigation. In reality, this new report is nothing more than an untimely sur-rebuttal report prepared by an additional, third retained expert for defendants. The Court's Fourth Amended Docket Control Order and the earlier Discovery Order do not contemplate or permit such an additional report, much less an additional expert. And defendants never even sought leave to disclose this new unauthorized third expert.

Recognizing that fact, defendants try to claim that they should be allowed to identify a new expert and opinion at the very close of discovery because plaintiffs were not required to present expert opinion on objective indicia for non-obviousness until May 31, 2017, the rebuttal expert report deadline contained in the docket control order. Defendants, however, have known about plaintiffs' objective indicia opinions for years ever since plaintiffs disclosed them in connection with their first preliminary injunction motion against Telebrands' infringing Balloon Bonanza

product. Since that time, plaintiffs have repeatedly disclosed these objective indicia expert opinions through their expert, Dr. Barry Kudrowitz, in both this Texas litigation as well as in the PGR proceedings that Telebrands has brought to try to invalidate plaintiffs' patents. Despite these facts, defendants chose to ignore the expert report disclosure deadlines contained in the Court's docket control order in a strategic effort to surprise plaintiffs by springing a new expert report on them at the eleventh hour. For these and other reasons discussed below, plaintiffs' motion should be granted.

FACTS

The Court entered its Discovery Order just over a year ago on June 17, 2016. The Discovery Order provides that "[e]ach side is limited to two testifying experts." (Dkt. 74 at 2 of 2, ¶ 1.) The Court subsequently entered the Fourth Amended Docket Control Order ("DCO") which sets forth the schedule for designating experts and expert reports. Under that DCO, the parties were required "to **designate *all* experts** who will provide reports pursuant to Federal Rule of Civil Procedure 26(a)(2)(B)" by March 17, 2017. (Dkt. 312 at 5) (orig'l emphasis). The DCO also provides that "**[e]xpert witness reports [were] due by the parties with [the] burden of proof**" no later than May 17, 2017. (Dkt. 312 at 5) (orig'l emphasis). "**Rebuttal expert witness reports [were] due**" by May 31, 2017. (Dkt. 312 at 5) (orig'l emphasis).

Notably, the DCO specifies that "[i]f, without agreement, a party serves a supplemental expert report after the rebuttal expert report deadline has passed, the serving party must file notice with the Court stating service has occurred and the reason why a supplemental report is necessary under the circumstances." (Dkt. 312 at 5.)

On March 17, 2017, defendants served their Designation of Experts. (*See* Exh. 1.) That designation identified <u>three</u> retained expert witnesses: Ken Kamrin, PhD, John Hatch, PhD, and Scott Steinberg. (Exh. 1 at 2.)

Subsequently, plaintiffs' counsel contacted defendants' counsel and pointed out that defendants' designation of more than two experts violated the Discovery Order. (*See* Exh. 2.) In that same letter, plaintiffs asked defendants to modify their expert designation to conform to the requirements of the Discovery Order. (*See* Exh. 2.) Defendants refused to do so. Instead, they responded that they had not yet decided whether Mr. Steinberg would testify. (*See* Exh. 3.) Defendants further stated that they would petition the Court to amend the Discovery Order if defendants decided they wanted Mr. Steinberg to testify. (*See* Exh. 3.) Defendants, however, never petitioned this Court to amend the Discovery Order or otherwise sought the Court's leave to use more than two experts.

On May 17, 2017, defendants served an expert report prepared by just one of the three experts they had designated: Dr. Kamrin. (*See* Dkt. 285.) Defendants did not serve any report from Mr. Steinberg. On May 31, 2017, defendants served a rebuttal report by Dr. Kamrin and two reports by Dr. Hatch, but again, no report from Mr. Steinberg.[1] The May 31 reports prepared by Dr. Kamrin and Dr. Hatch, respectively, responded to reports prepared by plaintiffs' two experts, Barry Kudrowitz and Alan Ratliff, which plaintiffs served on May 17, 2017.

On June 15, 2017, defendants' counsel emailed plaintiffs' counsel and advised that defendants "intend[ed] to serve a supplemental expert report responding to Dr. Kudrowitz's opinions on secondary considerations," and asked whether Plaintiffs would object to such a

---

[1] Plaintiffs will produce copies of those reports to the Court, upon request.

supplemental report. (*See* Exh. 4, 6/15/17 2:37 PM email fr. L. Lee to D. Gunter.) Plaintiffs' counsel inquired as to which expert would be providing the supplemental report and whether defendants intended to seek leave to serve the report. (*See* Exh. 4, 6/15/17 5:11 PM email fr. D. Gunter to L. Lee.) Defendants' counsel disputed that the Court's leave was necessary, and he represented that defendants would be serving two supplemental reports—a report from Dr. Hatch and a report from Mr. Steinberg, who had not previously opined. (*See* Exh. 4, 6/15/17 7:40 PM email fr. L. Lee to D. Gunter.) Plaintiffs' counsel objected, but proposed terms under which plaintiffs would consent to the proposed new opinion from Mr. Steinberg. (*See* Exh. 4, 6/19/17 5:46 PM email fr. D. Gunter to L. Lee.) Defendants, however, never responded to plaintiffs' proposal.

Instead, defendants proceeded to serve Mr. Steinberg's report after business hours on June 19, and the following day they filed their notice. (*See* Dkt. 316.) Defendants' disclosure of this new expert report took place only four business days before the June 26 deadline for completing expert discovery.

In their notice, defendants acknowledge that Mr. Steinberg's report does not relate to any of the reports from Dr. Kamrin or Dr. Hatch but, instead, is offered "to rebut Plaintiffs' evidence of [objective indicia] . . . opined on in the rebuttal expert report of Dr. Kudrowitz. . . ."[2] (Dkt. 316 at 2.) Mr. Steinberg's report is likewise very clear that it does not relate back to Dr. Kamrin's or Dr. Hatch's reports, and that its sole focus is on attempting to rebut Dr. Kudrowitz's May 31 report with respect to objective indicia of non-obviousness. "Specifically, [Mr. Steinberg

---

[2] Defendants erroneously state that the "rebuttal expert report of Dr. Kudrowitz [was] served on May 17, 2017." (Dkt. 316 at 2.) Plaintiffs served defendants with Dr. Kudrowitz's rebuttal expert report on May 31, 2017, as required under the DCO.

4

has] been asked to analyze Dr. Kudrowitz's testimony on secondary considerations, as well as the evidence that he relied upon in his Rebuttal Report." (Steinberg Rpt. at 2, ¶ 3.)

## ARGUMENT

It is axiomatic that "counsel ha[s] the responsibility to ensure compliance with [a] discovery order. . . ." *Graff v. Metro North Commuter R. R.*, No. 94 Civ. 2587, 1995 U.S. Dist. LEXIS 11727, *2-*3 (S.D.N.Y. Aug. 17, 1995). That elementary requirement reflects "the desire of the [C]ourt to insure [*sic*] that its [discovery] order [will] be promptly obeyed. . . ." *United States v. Int'l Bus. Machines Corp.*, 60 F.R.D. 650, 652 (S.D.N.Y. 1973). Indeed, courts enforce compliance with discovery orders to prevent a violating party from profiting by its own misconduct, to ensure the efficient administration of justice, and to prevent prejudice to other parties. *See Sciambra v. Graham New Co.*, No. 84-1859, 1986 U.S. Dist. LEXIS 28439, *29 (E.D. La. Mar. 7, 1986), citing *Jones v. La. State Bar Ass'n*, 602 F.2d 94 (5th Cir. 1979) (add'l cits. omitted).

Defendants have violated the Court's Discovery Order by relying upon <u>three</u> retained expert witnesses even though the Court has limited the parties to just <u>two</u>. (*See* Dkt. 74 at 2, ¶ 1.) Not only have defendants failed to seek or obtain leave to use Mr. Steinberg as an additional expert, but they have done so despite plaintiffs' longstanding admonitions that such leave was necessary. And notably, after plaintiffs first alerted defendants to the Discovery Order's two-expert limit in response to defendants' Designation of Experts (*See* Exh. 1) defendants proceeded to serve reports from just <u>two</u> of the three experts they had identified—Dr. Kamrin and Dr. Hatch. Based upon the Discovery Order's clear limit on experts and on the parties' communications in April 2017, plaintiffs therefore understood that at least as of May 31, 2017, they were operating in a two-expert-per-side universe. Indeed, plaintiffs had no reason to believe otherwise as defendants did

5

not serve any reports from Mr. Steinberg within the time frame required under the DCO. (*See* Dkt. 312 at 5.) Plaintiffs have based their conduct in the litigation, including the considerable volume of written discovery and depositions in this action, on defendants' disclosure of Dr. Kamrin and Dr. Hatch—and not Mr. Steinberg—as defendants' testifying experts.

Now, with only days remaining in the discovery period, defendants have surprised plaintiffs with an entirely new report from a third expert, a report targeted solely at Dr. Kudrowitz's rebuttal report served on May 31. <u>Such a sur-rebuttal report is not permitted under the Court's orders governing discovery, nor are defendants permitted to rely upon *three* experts</u>. Importantly, months ago when plaintiffs first objected to defendants' disclosure of Steinberg, defendants never sought leave of court to use a third expert nor did defendants advise plaintiffs that they definitely intended to rely on a third expert. Had defendants done so, perhaps the parties could have resolved the issue amicably at that time. At the very minimum, had defendants taken appropriate action then—long before the close of expert discovery—by seeking leave to use a third expert, at least plaintiffs would have been on notice that they were operating in a three-expert universe had the Court permitted defendants to use a third expert at that time. But defendants never did anything then. Instead, defendants left plaintiffs with the false impression that defendants only intended to use two experts at trial and then—just days before the close discovery—defendants sprang a brand new expert with a brand new report on plaintiffs. Even then, plaintiffs tried to resolve the matter with a reasonable compromise, but defendants ignored them. (*See* Exh. 4, 6/19/17 5:46 PM email fr. D. Gunter to L. Lee.)

Indeed, it is clear that defendants strategically timed this belated disclosure of a new expert at the eleventh hour just days before the close of discovery to prevent plaintiffs from deposing Mr. Steinberg. Defendants have also done so to prevent plaintiffs from producing their own report to

rebut Mr. Steinberg's opinions, and to prevent plaintiffs from disclosing their own third expert if plaintiffs decided they wanted to use a third expert. Because of defendants' disregard of the Court's orders, plaintiffs respectfully request that the Court strike Mr. Steinberg and his opinions so that defendants do not benefit from their improper conduct.

Relying upon the DCO's reference to the possibility of supplementing an expert's report (*See* Dkt. 312 at 5), defendants attempt to avoid the need for the Court's leave or plaintiffs' agreement by trying to shoehorn Mr. Steinberg's new 31-page report into the DCO's reference to "supplemental expert reports." (*See* Dkt. 316 at 2.) But there is nothing "supplemental" about Mr. Steinberg's report. In fact, Mr. Steinberg does not even describe his report as "supplementing" anything. On the contrary, he titles it a "Rebuttal Expert Report . . . Regarding Secondary Considerations." (Steinberg Rpt. at 1.) It "supplements" nothing. *See State ex rel. Daubenspeck v. Day*, 123 N.E. 402, 403 (Ind. 1919) ("the word 'supplemental'. . . . [is] regarded as referring to 'that which is added to a thing to complete it.' . . . 'It is that which supplies a deficiency, adds to, or completes, or extends <u>that which is already in existence</u>, without changing or modifying the original'") (emphasis supplied); BLACK'S LAW DICTIONARY (6th ed. 1990) at 1438 (defining "supplemental" to mean "[t]hat which is added to a thing or act to complete it"). And at least one court within this district has held that such an attempt to inject new expert opinion into an action in the guise of "supplementation" is improper and inadmissible. *See Biscotti, Inc. v. Microsoft Corp.*, No. 2:13cv1015, 2017 WL 2607882, *2 (E.D. Tex. May 25, 2017) (holding that an expert's "supplemental" report did "more than clarify his original positions; instead, the report serve[d] as a 'direct response' to [an opposing expert's] non-infringement report and 'retool[ed] [the supplementing expert's] infringement analysis'").

7

Rather than supplementing a prior report from Mr. Steinberg—or even the reports from Dr. Kamrin or Dr. Hatch—the "supplemental" report which defendants have just served presents <u>new</u> opinions from a <u>new</u>, unauthorized expert. And with just a few days remaining in the discovery period, the disclosure of such a new expert and report unduly and incurably prejudices plaintiffs: they will have no opportunity to depose Mr. Steinberg at this late juncture or to conduct other discovery aimed at determining the basis and veracity of the opinions offered in his report. Nor does any of the discovery conducted thus far with respect to Dr. Kamrin and Dr. Hatch cure that problem, as those reports do not address Dr. Kudrowitz' opinions on the objective indicia of non-obviousness which Mr. Steinberg now proposes to attack. In short, defendants' last-minute reliance on a new expert and new report would, if permitted, hamstring plaintiffs in their ability to prepare for trial.

It would also mean that <u>whenever</u> a patent plaintiff in a similar action served a rebuttal report addressing objective indicia, the defendant would always be entitled to serve a sur-rebuttal report—and even introduce a wholly new expert for that purpose—without allowing the plaintiff an opportunity to conduct discovery regarding the opinions offered therein. Such a scheme would undermine the very purpose of discovery in such litigation. *See Bentley v. Highlands Hosp. Corp.*, No. 15-97-ART-EBA, 2016 U.S. Dist. LEXIS 139414, *11-*13 (E.D. Ky. Oct. 6, 2016); *see generally Biscotti*, 2017 WL 2607882, *2.

As one federal district court has keenly observed, "[i]magine if, even after the initial deadline for disclosing experts has passed, a party could offer up (and use at trial) any new expert opinion it wanted. All the party has to do is to call the disclosure some variation of 'supplementation' or 'rebuttal.' In that world, parties would be able to 'make an end-run around the normal timetable for conducting discovery.'" *Bentley*, 2016 U.S. Dist. LEXIS 139414, *11,

quoting *Disney Enters., Inc. v. Kappos*, 923 F. Supp.2d 788, 795 (E.D. Va. 2013).  And that is precisely what defendants are attempting to do here by characterizing Mr. Steinberg's report as "supplemental."  But courts "look past the party's label and construe the report [in such instances] as an initial disclosure of an affirmative expert opinion under Rule 26(a)(2)(A)-(C).  And if the deadline for such disclosures has passed, then the report is untimely." *Id.*, *13-*14 (emphasis supplied).  "The question then becomes whether the untimely disclosure was 'substantially justified' or 'harmless.'  If it was not, then the Court will bar the disclosing party from offering the tardy opinion at trial." *Id.*, *14, quoting Fed. R. Civ. P. 37(c)(1).

Defendants have not shown that their late service of Mr. Steinberg's report was substantially justified.  They claim that they "were not provided with expert testimony on [objective indicia] until service of [Dr. Kudrowitz'] rebuttal expert report on May 31, 2017," and that a "supplemental" report from Mr. Steinberg "addressing [Dr. Kudrowitz'] opinions is [therefore] necessary under the circumstances." (Dkt. 316 at 2.)  In reality, however, defendants have long been aware of, and intimately acquainted with, Dr. Kudrowitz's objective indicia opinions for years now.  As the Court is aware, the closely-related *Tinnus I* action has been pending before this Court since 2015, and there are two other related lawsuits presently pending in this Court as well.  The parties have conducted a massive volume of discovery in the course of these interrelated suits, including expert discovery in the form of designations, multiple written reports, depositions, and of course expert declarations and testimony in connection with the various preliminary injunction proceedings.  Dr. Kudrowitz is plaintiffs' technical expert in *Tinnus I*, and defendants have thoroughly investigated his opinions through multiple depositions, including his opinions on objective indicia.  Defendants' recent claim that they "were not provided with [his] testimony" on objective indicia prior to receiving his May 31 rebuttal report in this action therefore

9

rings hollow. That is because defendants do not claim that Dr. Kudrowitz's opinions now are any different than they have been in the past.[3]

Defendants note that once they form a prima facie case of obviousness, the burden shifts to patent owner to rebut the prima facie case with objective indicia. (*See* Dkt. 316 at 2.) While this burden shifting occurs, the ultimate burden to prove invalidity rests with defendants. Given that the DCO contemplates only opening and rebuttal reports, defendants should have disclosed any objective indicia opinions in accordance with the DCO's deadline for the opening invalidity report. And defendants could have easily done so, given that they have known for some time now the substance of plaintiffs' objective indicia opinions. In fact, as this Court will recall, that is what defendants did in *Tinnus I*. In that related action, defendants attempted to have Dr. Kamrin opine on objective indicia, and unlike the situation here, defendants timely disclosed those opinions in accordance with the Court's docket control order in *Tinnus I*.[4] The fact that defendants did not do that in the instant case demonstrates that defendants purposely waited until days before the close of discovery to drop a new expert with a new report on plaintiffs. Again, if defendants wanted to use a new expert for their objective indicia opinions, defendants should have brought this matter to the Court's attention long ago rather than waiting until the eve of the discovery deadline to surprise plaintiffs. Such gamesmanship should not be rewarded here.

Furthermore, even if Mr. Steinberg's report could be construed as "supplemental" so as to bring it within the DCO's requirements (it cannot), defendants have not shown, and cannot show,

---

[3] In contrast to Dr. Kudrowitz, Mr. Steinberg is not among defendants' experts in *Tinnus I*. Thus, unlike defendants' familiarity with Dr. Kudrowitz and his opinions, plaintiffs are not similarly acquainted with Mr. Steinberg.

[4] Although those opinions were timely disclosed in *Tinnus I*, the Court properly struck Dr. Kamrin's objective indicia opinions in part because they were unreliable.

10

that the late-served report is harmless. There is no question that defendants have unduly delayed in serving it by producing it to plaintiffs <u>only four business days</u> before the close of discovery. *See Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 357 (W.D.N.Y. 2011) ("Supplementation [under Rule 26(e)] 'should be made at appropriate intervals during the discovery period, <u>and with a special promptness as the trial date approaches</u>'") (emphasis supplied) (quoting Fed. R. Civ. P. 26 advisory committee note (1993)); *Bentley*, 2016 U.S. Dist. LEXIS 139414, *10 ("the window for supplementation and rebuttal does not stay open forever"). Defendants concede that they were in possession of Dr. Kudrowitz's rebuttal report for some three weeks before they served Mr. Steinberg's sur-rebuttal report. (*See* Dkt. 316 at 2.) They therefore should have served Mr. Steinberg's report far earlier than they did[5]—even assuming that the report were otherwise proper (it is not). Thus, defendants did not act with the promptitude required by Rule 26(e).

And as discussed above, plaintiffs will certainly be prejudiced if Mr. Steinberg's opinion is admitted at trial, as they will have no opportunity to conduct discovery aimed at determining the basis and veracity of the opinions offered in his report. Because Mr. Steinberg's late-served report is neither substantially justified nor harmless, it should be stricken. *See Bentley*, 2016 U.S. Dist. LEXIS 139414, *14.

---

[5] Under the DCO, the parties were allowed just two weeks in which to serve their respective expert rebuttal reports. (*See* Dkt. 312 at 5.)

11

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court strike Mr. Steinberg's Rebuttal Expert Report regarding objective indicia and decline to admit expert testimony from Mr. Steinberg at the trial of this matter.

Dated: June 23, 2017

Respectfully submitted,

*/s/ Eric H. Findlay*
Eric H. Findlay
Texas State Bar No. 00789886
Debby Gunter
Texas State Bar No. 24012752
Findlay Craft, P.C.
102 N. College Ave, Ste. 900
Tyler, TX 75702
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
dgunter@findlaycraft.com

Thomas M. Dunlap (Admitted E.D. Tex./VA Bar No. 44016)
David Ludwig (Admitted E.D. Tex./VA Bar No. 73157)
Robert Spendlove (Admitted E.D. Tex./VA Bar No. 75468)
Eric Olavson (Admitted E.D. Tex./VA Bar No. 87872)
Ellis Bennett (Admitted *Pro Hac Vice*/VA Bar No. 71685)
Dunlap Bennett & Ludwig PLLC
211 Church Street, SE
Leesburg, Virginia 20175
(703) 777-7319 (t)
(703) 777-3656 (f)
tdunlap@dbllawyers.com
dludwig@dbllawyers.com
rspendlove@dbllawyers.com
eolavson@dbllawyers.com
ebennett@dbllawyers.com

Cortland C. Putbrese (Admitted E.D. Tex./ VA Bar No. 46419)
Kevin T. Streit (Admitted E.D. Tex./VA Bar No. 45024)
Dunlap Bennett & Ludwig PLLC
8003 Franklin Farms Drive
Suite 220
Richmond, Virginia 23229
(804) 977-2688 (t)
(804) 977-2680 (f)
cputbrese@dbllawyers.com
kstreit@dbllawyers.com

Jeff Ahdoot (admitted *pro hac vice*)
Dunlap Bennett & Ludwig PLLC
1717 Pennsylvania Avenue
Suite 1025
Washington, DC 20006
(202) 316-8558 (t)
(703) 777-3656 (f)
jahdoot@dbllawyers.com

Brian M. Koide (Admitted E.D. Tex/VA Bar No. 46,329)
Dunlap Bennett & Ludwig PLLC
8300 Boone Blvd #550
Vienna, VA 22182
703-442-3890 (t)
703-777-3656 (f)
bkoide@dbllawyers.com

*Counsel for Plaintiffs Tinnus Enterprises, LLC and ZURU Ltd.*

By: */s/ Kelly J. Kubasta*
Kelly J. Kubasta
Texas Bar No. 24002430
Ferguson, Braswell & Fraser, P.C.
2500 Dallas Parkway, Suite 600
Plano, TX 75093
972-378-9111 (t)
972-378-9115 (f)
kkubasta@dallasbusinesslaw.com

*Counsel for Plaintiff Tinnus Enterprises, LLC*

13

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of June 2017, I electronically filed Plaintiffs' Motion to Strike Rebuttal Expert Report of Scott Steinberg Regarding Secondary Considerations with the Clerk of the Court using the CM/ECF system, which will send notification to all attorneys of record.

                                                */s/    Eric H. Findlay*
                                                Eric H. Findlay

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiffs conferred with counsel for Defendants regarding this motion on June 23, 2017, and Defendants oppose Plaintiffs' Motion to Strike Rebuttal Expert Report of Scott Steinberg Regarding Secondary Considerations.

                                                */s/    Debby Gunter*
                                                Debby Gunter