UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| TINNUS ENTERPRISES, LLC, <br><br> and <br><br> ZURU LTD., <br><br>     Plaintiffs, <br><br> v. <br><br> TELEBRANDS CORP., <br><br>     Defendant. | Civ. Action No. 6:16-CV-00033-RWS-JDL <br><br> **(LEAD CASE)** |
| TINNUS ENTERPRISES, LLC, <br><br>     Plaintiff, <br><br> v. <br><br> Wal-Mart Stores Inc., et al., <br><br>     Defendants. | Civ. Action No. 6:16-CV-00034-RWS-JDL <br><br> *(Consolidated with Lead Case No. 6:16-CV-00033-RWS-JDL)* |

**PLAINTIFFS' MOTION TO EXCLUDE DR. KENNETH KAMRIN'S
OPINIONS ON NON-INFRINGEMENT**

I.   INTRODUCTION

Dr. Kenneth Kamrin has been designated by Defendants to provide expert opinion related to infringement. Plaintiffs Tinnus Enterprises, LLC and ZURU Ltd. (collectively, "Plaintiffs") seek to exclude Dr. Kamrin's opinions on non-infringement of claim 1 of U.S. Patent No. 9,242,749 ("'749 patent) because those opinions inappropriately rely on legal argument concerning claim construction of terms already construed by the Court. Indeed, Dr. Kamrin's non-infringement report is nothing more than a rehash of the claim construction arguments previously made by Defendants and rejected by this Court.

II.   LEGAL STANDARDS

A.   **Rule 702 and *Daubert***

Rule 702 governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under Rule 702 and *Daubert*, the trial court acts as a "gatekeeper" to determine "whether the reasoning or methodology underlying [an expert's] testimony is scientifically valid and [] whether that reasoning or methodology can properly be applied to the facts at issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). The Supreme Court in *Daubert* charged trial courts with determining whether scientific expert testimony under Rule 702 is "not only relevant, but reliable." *Id.* at 589. The Court's role includes determining whether the expert possesses some specialized knowledge such that his or her testimony will be helpful to the trier

of fact and, if so, whether that knowledge arises from reliable methods applied in a reliable manner. *Id.* at 590-91; see also *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (extending *Daubert* to all expert testimony).

> The *Daubert* opinion lists a number of factors that a trial court may use in determining an expert's reliability. Trial courts are to consider the extent to which a given technique can be tested, whether the technique is subject to peer review and publication, any known potential rate of error, the existence and maintenance of standards governing operation of the technique, and, finally, whether the method has been generally accepted in the relevant scientific community . . . These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered . . . But the existence of sufficient facts and a reliable methodology is in all instances mandatory. Without more than credentials and a subjective opinion, an expert's testimony that "it is so" is not admissible.

*Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (internal citations omitted).

A court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert," and may "rightfully exclude expert testimony where a court finds that an expert has extrapolated data, and there is 'too great an analytical gap between the data and the opinion proffered.'" *Burleson v. Tex. Dep't. Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Because the admission of expert testimony is procedural, regional precedent governs the admission of expert testimony in patent cases, and Fifth Circuit law governs a motion to exclude expert testimony on the basis that it is unreliable. *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 516 (Fed. Cir. 2012); *Sulxer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1363 (Fed. Cir. 2004).

## B. Experts May Not Testify Regarding Claim Construction

Claim construction is a legal question and "exclusively within the province of the court." *Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996). Accordingly, expert testimony regarding claim construction is not admissible. *CytoLogix Corp. v. Ventara Med. Sys.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 2016 U.S. Dist. LEXIS 108142, *13, 2016 WL 4374961 (E.D. Tex. Aug. 16, 2016) ("The Court will not permit attempts to deviate from, or to collaterally attack, any claim construction."). Indeed, the Federal Circuit has repeatedly held that "it is improper to argue claim construction to the jury because the 'risk of confusing the jury is high when experts opine on claim construction.'" *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. Mar. 31, 2009) (quoting *CytoLogix*, 424 F.3d at 1172-73).

While expert testimony regarding whether an accused device falls within the scope of a court's claim construction may be appropriate, expert testimony inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact and should be excluded under the Daubert standard. *Compare EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. Feb. 11, 2016) *with Personalized User Model, L.L.P. v. Google, Inc.*, 2014 U.S. Dist. LEXIS 25356, 2014 WL 807736, at *1 (D. Del. Feb. 27, 2014). Expert testimony based on an impermissible claim construction is properly excluded as irrelevant and on the basis that the evidence could confuse the jury. *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

### III. DR. KAMRIN'S NON-INFRINGEMENT OPINIONS SHOULD BE EXCLUDED

#### A. Claim Construction

The Court in the present case has heard extensive argument regarding claim construction. The parties focused particularly on the terms "common face" and "second end." Briefing by the parties included a thorough discussion of intrinsic and extrinsic evidence, including the patent specification, prosecution history, prior art and dictionary definitions. (*See, e.g.*, Dkt. Nos. 162, 174 and 186.) The court held a claim construction hearing on December 8, 2016, and on December 13, 2016, Magistrate Judge Love issued a claim construction order construing "common face" as "a shared outer surface of the housing through which a plurality of holes extend" and "second end" as ""an outer limit of the housing distinct from the first end." (Dkt. No. 200.)

Following Judge Love's order, Defendants objected to the construction of "common face" and "second end," among other terms. After an additional round of briefing (Dkt. Nos. 207, 216), the Court overruled Defendants' objections and adopted Judge Love's claim constructions as the findings and conclusions of the Court. (Dkt. 225.)

#### B. Dr. Kamrin's Non-Infringement Arguments Rely Exclusively on Impermissible Claim Construction Arguments

Plaintiffs served an infringement report authored by Dr. Barry Kudrowitz on May 17, 2017. In his report, Dr. Kudrowitz opined that Telebrands' Battle Balloons product infringed claim 1 of the '749 patent and claims 1-3 of the '282 patent. In response, Defendants served a Rebuttal Expert Report of Dr. Ken Kamrin Regarding Non-Infringement ("Kamrin Rebuttal") on May 31, 2017. Dr. Kamrin contends that the Battle Balloons product does not infringe claim 1 of

4

the '749 patent. Dr. Kamrin did not offer any opinion regarding non-infringement of the '282 patent. A copy of Dr. Kamrin's rebuttal report is attached as Exhibit 1.

Dr. Kamrin offers two non-infringement contentions in his report: the Battle Balloons housing does not have (1) "a plurality of holes extending through a common face of the housing at a second end" or (2) "a plurality of hollow tubes, each hollow tube attached to the housing at a respective one of the holes at the second end of the housing." (Kamrin Rebuttal at 8, 21.) While Dr. Kamrin pays lip service to the Court's claim constructions (Kamrin Rebuttal ¶27), both his non-infringement contentions actually depend entirely upon impermissible arguments to reconstrue "common face" and "second end." It is inappropriate to allow an expert to use an expert's testimony "explaining" the terms as a "poorly disguised attempt to offer the jury constructions different from the Court's." *Yeti Coolers, LLC v. RTIC Coolers, LLC*, 2017 U.S. Dist. LEXIS 11163, *9, 102 Fed. R. Evid. Serv. (Callaghan) 617 (W.D. Tex. Jan. 27, 2017).

Dr. Kamrin's impermissible claim construction arguments are extensive and pervasive. The following are merely some examples of such inappropriate arguments:

### i. Offering claim construction arguments directly contrary to the Court's construction

During claim construction briefing, Defendants offered a construction for "common face" of "a planar portion of an object bounded by an edge or other geometric transition." The Court specifically rejected this proposal, concluding: "[T]he intrinsic record simply does not support limiting the 'common face' to a planar surface that must be geometrically bounded." (Claim Const. Ord. 12, Dkt. 200.) But Dr. Kamrin continues to advocate for his proposed claim construction. Dr. Kamrin argues that his previously offered construction of "a surface bounded by a geometric transition" be "incorporated into the definition of 'common face'" because "that

construction provides further support for my non-infringement opinion below." (Kamrin Rebuttal ¶ 36, p. 10n1.)

### ii. Offering claim construction arguments based on the prosecution history

"[E]xcept in a rare case, use of the prosecution history raises issues solely for the court, not the jury. Thus testimony grounded in the prosecution history to discern the meaning of a claim is properly excluded from presentation to the jury . . . ." *Mediatek Inc. v. Freescale Semiconductor, Inc.*, 2014 U.S. Dist. LEXIS 31461, *16-17 (N.D. Cal. Mar. 5, 2014). Dr. Kamrin repeatedly makes arguments based on the prosecution history of the '749 patent. (*See, e.g.,* Kamrin Rebuttal ¶ 41 ("Accordingly, a person of ordinary skill in the art, reviewing the prosecution history of the '749 patent would understand that outer surfaces, i.e., faces, are separated by geometric transitions."); *see also* ¶¶ 35, 37-41, 48, 72-82.)

### iii. Offering claim construction arguments based on the patent specification

"Testimony that embodiments in a patent specification support an expert's opinions regarding the plain and ordinary meaning of claim terms would amount to claim construction and suggest that literal infringement can be established by a comparison between accused products and specification embodiments." *EMC Corp.*, 2016 U.S. Dist. LEXIS 22970, *12. Dr. Kamrin makes arguments based on the patent specification. (*See, e.g.,* Kamrin Rebuttal ¶¶ 65 (relying on FIG. 1 from the '749 patent specification to illustrate the construction of "second end").)

### iv. Offering claim construction arguments based on the extrinsic evidence

"[W]hile the court may, in its discretion, consider extrinsic evidence if such sources will aid the court in determining 'the true meaning of language used in the patent claims,' such evidence, if required, is not appropriate for presentation to a jury and is properly excluded at

6

trial." *Mediatek Inc.* 2014 U.S. Dist. LEXIS 31461, *17. Yet, Dr. Kamrin repeatedly relies on extrinsic evidence in his non-infringement discussion, including dictionary definitions, prior art and other figures of his own devising.

Dictionary definitions may have a limited role in the patent infringement analysis even at the claim constructions stage. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1322 (Fed. Cir. 2005). However, once the Court has construed the claims, any discussion of dictionary definitions can only be so that a party can impermissibly reargue claim construction issues. Dr. Kamrin repeatedly discusses dictionary definitions with regard to both "common face" and "second end." (*See* Kamrin Rebuttal ¶¶36, 60, 66; p. 18 n.4, p. 21 n.6.)

Dr. Kamrin further discusses various alleged prior art references. To the extent these discussions are not limited to the prosecution history, they relate to extrinsic evidence that is not appropriate for a non-infringement argument presented to a jury. For example, Dr. Kamrin discusses the Saggio, Boise and Fury reference. (*Id.* at ¶¶ 38-41, 60-64, 75-77.)

Dr. Kamrin also includes an extensive discussion of geometric solids, cuboids, cylinders, spiral staircases and elbow pipes. However, none of these terms is found in the claims or the Court's claim construction. To the contrary, the Court specifically rejected Defendants' proposed construction based on "geometric transitions." (*See, e.g.* Kamrin Rebuttal ¶¶34-36, 42-50, 56.)

Indeed, Dr. Kamrin repeatedly testified in his deposition that he believes it may be necessary to further clarify the Court's construction using extrinsic evidence.

> Q. You think it's necessary, when applying the Court's claim construction, to look at the dictionary definition, right?
> [Counsel for Defendants]: Objection to the form of the question.
> A. Uh -- yes. In the process of -- if -- if the construction of the Court requires further clarity, I would look toward the dictionary definition.

(Deposition Transcript of Kenneth Kamrin 182:17-25 (June 27, 2017), attached as Exhibit 2.)

> So you think sometimes the Court's constructions requires further clarity, right?
> A. Perhaps.
> Q. All right.
> A. I mean, words are words.· I mean, I feel like I always have to say this, which is why I'm more of a mathematician and a physicist.· I don't have to deal with words as much.· But, yes, words can be -- always be ambiguous and words are only defined by words.
> Q. Sure. So I understand your opinion.· And in applying the Court's construction, you turned to a dictionary definition, right?
> A. Right.
> Q. Okay.· And in applying the Court's construction, you also looked to prior art, you looked at page -- paragraph 38, right?
> A. Mm-hmm.
> Q. All right.· And, so, it's your opinion that when -- uh -- you view the Court's construction as unclear, that you need to look at prior art, right?
> A. Um -- I want to know all the -- all the ins and outs of the Court's constructions.· So prior art and a dictionary definition are appropriate.

(*Id.* at 183:3-184:3.)

Such discussion of extrinsic evidence untied to the claim language or accused product can only serve to confuse the jury and must be excluded.

### v. Offering arguments based on his interpretation of the plain and ordinary meaning rather than the Court's claim construction

"The court is the final authority on the meaning of claim terms, and the jury must be instructed by the court, not the parties or their experts, on those meanings. *Yeti Coolers*, 2017 U.S. Dist. LEXIS 11163, at *8 (citing *CytoLogix,* 424 F.3d at 1172). Yet, Dr. Kamrin repeatedly substitutes his own interpretation for the Court's construction or inserts additional, independent analysis into the construction. "My interpretation of 'outer limit' is consistent with how Dr. Kudrowitz previously interpreted 'limit.'" (Kamrin Rebuttal ¶ 57.) "If this construction is incorporated into the definition of 'common face,' then that construction provides further support for my non-infringement opinion below." (*Id.* at p. 10 n.1.) "This view is consistent with the

plain and ordinary meaning of face and the prosecution history of the '749 patent." (Kamrin Rebuttal ¶ 35.) Dr. Kamrin testified that he thinks such additional construction is appropriate.

> Q. Right. But did you think it's the Court's intention to misconstrue some of the claim constructions that lack clarity?
> A. Nothing is insignificantly clear. And especially when you need to apply it very precisely.
> So, you know, I -- I need to make sure that I -- for instance, an outer limit requires a little bit of thought to know exactly how to do -- how to describe an outer limit of something.
> So I actually went out of my way to come up with a rigorous way to identify outer limit.
> Q. Okay.
> A. So those two words make it sound like it's straightforward.· But if you really want to be rigorous about it, you just have to think hard about it and make sure you come with a criteria that does make sense.

(Kamrin Depo. Tr. 185:12-186:5.)

> Q. Okay.· So, yeah.· You have your construction based on your interpretation of the prosecution history and the Court has its construction, right?
> A. Um -- yes, I suppose so.

(Kamrin Depo. Tr. 179:21-25.)

Dr. Kamrin's expert report and deposition testimony both exhibit a misunderstanding of his role as an expert applying the Court's claim constructions. He, frankly, appears to have a little regard for the Court's claim constructions and feels the need to modify or supplement them as he sees fit. Such testimony would be inappropriate to put before the jury.

### vi. Offering blatant claim construction arguments

Finally, in many instances, Dr. Kamrin does not even attempt to hide the fact that he is making express claim construction arguments taking aim at the Court's interpretation of the claim.

> To the extent Dr. Kudrowitz or the Court is interpreting "second end" to mean an "outer surface of the housing distinct from the first end," I respectfully disagree, because this interpretation is inconsistent with the

9

> Court's interpretation of the Boise reference. I also disagree because one
> of ordinary skill in the art would not construe "second end" that way:
> dictionary definitions do not support that construction, and the patent and
> its file history do not support that construction.

(Kamrin Rebuttal ¶ 60.) "One of ordinary skill in the art would understand the plain and ordinary meaning of end to be a limit of the housing and not a surface adjacent to the limit of the housing . . . ." (*Id*. at ¶ 60.) Again, such claim construction arguments should have been, and in fact were, made before the Court during the claim construction process. Telebrands should not now be allowed to present these arguments again to the jury. *Cytologix*, 424 F.3d at 1172.

## IV. CONCLUSION

Dr. Kamrin's non-infringement arguments are so intricately intertwined with his rebuttal report that the only equitable remedy is to strike the entire report. Once the claim construction discussions are removed, Dr. Kamrin's report consists of nothing more than conclusory assertions of non-infringement with no basis. Accordingly, Plaintiffs respectfully ask the Court to grant Plaintiffs' motion and exclude Dr. Kamrin's opinions on non-infringement in their entirety.

If the Court does not find it appropriate to entirely exclude Dr. Kamrin's non-infringement opinions, Plaintiffs request that the Court at least strike Paragraphs 28-86 of Dr. Kamrin's rebuttal report for offering impermissible discussion of claim construction issues and exclude Dr. Kamrin's opinions regarding the subject matter expressed these paragraphs.

Dated: July 7, 2017

Respectfully submitted,

*/s/ Eric H. Findlay*
Eric H. Findlay
Texas State Bar No. 00789886
Debby Gunter
Texas State Bar No. 24012752
Findlay Craft, P.C.
102 N. College Ave, Ste. 900
Tyler, TX 75702
903-534-1100 (t)
903-534-1137 (f)
efindlay@findlaycraft.com
dgunter@findlaycraft.com

Thomas M. Dunlap (Admitted E.D. Tex./VA Bar No. 44016)
David Ludwig (Admitted E.D. Tex./VA Bar No. 73157)
Robert Spendlove (Admitted E.D. Tex./VA Bar No. 75468)
Eric Olavson (Admitted E.D. Tex./VA Bar No. 87872)
Dunlap Bennett & Ludwig PLLC
211 Church Street, SE
Leesburg, Virginia 20175
(703) 777-7319 (t)
(703) 777-3656 (f)
tdunlap@dbllawyers.com
dludwig@dbllawyers.com
rspendlove@dbllawyers.com
eolavson@dbllawyers.com

Cortland C. Putbrese (Admitted E.D. Tex./ VA Bar No. 46419)
Kevin T. Streit
Admitted E.D. Tex./VA Bar No. 45024
Dunlap Bennett & Ludwig PLLC
8003 Franklin Farms Drive
Suite 220
Richmond, Virginia 23229
(804) 977-2688 (t)
(804) 977-2680 (f)
cputbrese@dbllawyers.com
kstreit@dbllawyers.com

Jeff Ahdoot (admitted *pro hac vice*)
Dunlap Bennett & Ludwig PLLC
1717 Pennsylvania Avenue
Suite 1025
Washington, DC 20006
(202) 316-8558 (t)
(703) 777-3656 (f)
jahdoot@dbllawyers.com

Brian M. Koide
Admitted E.D. Tex/VA Bar No. 46,329
Dunlap Bennett & Ludwig PLLC
8300 Boone Blvd #550
Vienna, VA 22182
703-442-3890 (t)
703-777-3656 (f)
bkoide@dbllawyers.com

*Counsel for Plaintiffs Tinnus Enterprises, LLC and ZURU Ltd.*


By: */s/ Kelly J. Kubasta*
Kelly J. Kubasta
Texas Bar No. 24002430
Dana Campbell
Ferguson, Braswell & Fraser, P.C.
2500 Dallas Parkway, Suite 600
Plano, TX 75093
972-378-9111 (t)
972-378-9115 (f)
kkubasta@dallasbusinesslaw.com
dcampbell@dallasbusinesslaw.com

*Counsel for Plaintiff Tinnus Enterprises, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of July 2017, I electronically filed Plaintiffs' Motion to Exclude Dr. Kenneth Kamrin's Opinions on Non-Infringement with the Clerk of the Court using the CM/ECF system, which will send notification to all attorneys of record.

*/s/ Eric H. Findlay*
Eric H. Findlay

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiffs conferred with counsel for Defendants regarding this motion on July 7, 2017, and Defendants oppose Plaintiffs' Motion to Exclude Dr. Kenneth Kamrin's Opinions on Non-Infringement.

*/s/ Debby Gunter*
Debby Gunter