IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| TINNUS ENTERPRISES, LLC, ZURU LTD., <br><br> Plaintiffs, <br><br> v. <br><br> TELEBRANDS CORPORATION, BULBHEAD.COM, LLC, <br><br> Defendants. | § <br> § <br> §    CIVIL ACTION NO. 6:16-CV-00033-RWS <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

## MEMORANDUM OPINION AND ORDER

Before the Court are two related motions to strike the expert reports of Plaintiffs' expert, Dr. Kudrowitz (Doc. No. 331), and Defendants' expert, Dr. Kamrin (Doc. No. 329). The motions have been fully briefed. (Doc. Nos. 329, 331, 361, 362, 376, 378.)

## BACKGROUND

On January 26, 2016, Plaintiffs filed the instant action against Telebrands, alleging infringement of U.S. Patent No. 9,242,749 ("the '749 Patent"). (Doc. No. 1.) On April 19, 2016, Plaintiffs amended their complaint to add allegations of infringement of U.S. Patent No. 9,315,282 ("the '282 Patent"). (Doc. No. 3.) This suit followed in conjunction with the related action Cause No. 6:15-cv-551 ("*Tinnus I*") where the Court had already issued an injunction on Telebrands's Balloon Bonanza products. Plaintiffs also filed for an injunction in the instant action, and after additional lengthy injunction proceedings, an injunction issued against Defendant Telebrands on October 31, 2016. (Doc. No. 159.)

During the injunction proceedings, the Court applied its prior constructions from the *Tinnus I* case for the terms "common face" and "second end." Specifically, the Court applied "a shared outer surface of the housing through which a plurality of holes extend" for the construction of "common face," and the Court applied "an outer limit of the housing distinct from the first end" for the construction of "second end." (Doc. No. 99, at 12–13.) The Court ultimately found Plaintiffs had shown a likelihood of success of infringement based on these constructions. *Id.*; Doc. No. 142. Later, during the claim construction proceedings in this matter, the Court was asked to construe the terms "common face" and "second end." The Court maintained its construction of "common face" as "a shared outer surface of the housing through which a plurality of holes extend," rejecting that the "common face" must be planar or must be "geometrically bounded." (Doc. No. 200, at 12.) The Court similarly maintained its construction of the term "second end" to mean "an outer limit of the housing distinct from the first end." *Id.* at 14. The Court clarified that it had previously used the word "surface" to resolve a dispute between the experts during the injunction proceedings and reaffirmed that the "second end" need not be a linear limit. *Id.* Both parties now move to strike the opposing technical expert's opinions in part for violating these constructions. (Doc. Nos. 329, 331.)

**LEGAL STANDARD**

Rule 702 provides that an expert witness may offer opinion testimony if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed.R.Evid. 702.

The Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993). "The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## DISCUSSION

Both parties are moving to strike the other party's technical expert's opinions on the basis that certain of those opinions related to the terms "second end" and "common face" violate the Court's construction of those terms. (Doc. Nos. 329, 331.)

### A. Plaintiffs' Motion to Exclude Dr. Kamrin (Doc. No. 329)

Plaintiffs move to exclude Defendants' technical expert, Dr. Kamrin's, opinions on non-infringement as improper rearguments of claim construction issues this Court has already resolved. (Doc. No. 329, at 2.) Plaintiffs contend that Dr. Kamrin provides two non-infringement arguments with respect to the '749 Patent: the Battle Balloons housing does not have (1) "a plurality of holes extending through a common face of the housing at a second end" or (2) "a plurality of hollow tubes, each hollow tube attached to the housing at a respective one of the holes at the second end of the housing." (Doc. No. 329, at 6, citing Kamrin Rebuttal (Doc. No. 329-2) at ¶¶ 8, 21.) Plaintiffs contend that these arguments are impermissible arguments to reconstrue "common face" and "second end." (Doc. No. 329, at 6.) Defendants argue that Dr. Kamrin repeatedly makes clear that he is indeed applying this Court's claim constructions—and not the constructions Telebrands previously advocated. (Doc. No. 362, at 5, citing Doc. No. 329-2 ¶¶ 13, 25, 32, 34, 50, 51, 52, 53, 54, 56; Doc. No. 328-8 at 216:7-12.) Defendants point out that Plaintiffs lift their argument from one footnote that is taken out of context where Dr. Kamrin provides that his construction, if it were adopted, would provide further support for his argument. (Doc. No. 362, at 5.)

The Court has reviewed Dr. Kamrin's rebuttal report, the report in question, and has very serious concerns regarding several of the paragraphs contained therein. For example, beginning in paragraph 36 of his rebuttal report, Dr. Kamrin provides a dictionary meaning for the term "common face"—a term which this Court has already construed. (Doc. No. 329-2, at ¶ 36.) Dr.

4

Kamrin then goes on to conclude that "[i]n the context of geometric solids, the applicable understanding of 'face' is a surface that is bounded by a geometric transition." *Id.* Dr. Kamrin similarly explains how he is varying the Court's construction of "common face" based on his understanding that all geometric transitions are not irrelevant in paragraphs 34 and 35. *Id.* at ¶¶ 34, 35. Not only is this opinion testimony regarding the meaning of the term "common face," it appears to call into question the Court's construction of the term which rejected a geometric definition of "face." In paragraphs 37 through 43, Dr. Kamrin continues on by offering meaning to the term in light of the prosecution history. *Id.* at ¶¶ 37–43. Dr. Kamrin then further provides his own examples to support his understanding of the term and ultimately concludes that "a person of ordinary skill in the art would understand that geometric transitions are relevant to determining the boundaries of a common face, otherwise the term 'common face' would be rendered meaningless." *Id.* at ¶¶ 44–50. These opinions are nothing more than continued claim construction argument, concluding what must be understood in order to give the term "common face" meaning to a person of ordinary skill in the art. These opinions, therefore, are not appropriately raised in a rebuttal report to infringement and will not be permitted. To be clear, the Court is not foreclosing Dr. Kamrin's noninfringement arguments, but he will not be permitted to provide his irrelevant opinions on the meaning of "common face."

Next, in paragraphs 56 through 60, Dr. Kamrin discusses Dr. Kudrowitz's prior constructions and the Court's rejection of those constructions for "second end." *Id.* at ¶¶ 56–60. While Dr. Kamrin is free to disagree with Dr. Kudrowitz's opinions set forth in his opening report on infringement, he is not free to discuss the Court's rejection of his positions in construing the terms. Explanations of the Court's reasoning or rejection of one side's position during the claim construction process is exactly the type of prejudicial and confusing testimony

precluded by the Rules of Evidence. *See* Fed.R.Evid. 403. Defendants are free to cross-examine Dr. Kudrowitz on any inconsistent statements, but Dr. Kamrin will not be permitted to offer his opinions on Dr. Kudrowitz's prior claim construction opinions, the Court's reasoning, or his interpretation thereof, for rejecting any asserted positions.

Paragraphs 61 through 64 are a continued discussion of the Court's reasoning, but with inserted opinions regarding the prosecution history. (Doc. No. 329-2, at ¶¶ 61–64.) For example, Dr. Kamrin states that "if 'outer limit' means 'outer surface,' then in FIG. 5 of Boise, the 'second end' includes the entire cylindrical surface. *Id.* at ¶ 62. These paragraphs appear to be a disagreement with Dr. Kudrowitz's current opinions on what meets the term "second end." However, Dr. Kamrin never addresses which of Dr. Kudrowitz's opinions he is disagreeing with. Rather, the paragraphs read as his opinions interpreting the meaning of "outer limit" in light of the prosecution history, which the Court has already made clear in its claim construction opinion. Paragraph 65 is a continued explanation of how Dr. Kamrin would interpret the term "outer limit" in the Court's construction of "second end" based upon the specification of the '749 Patent. *Id.* at ¶ 65. This opinion is simply a construction of the Court's construction. Finally, Paragraph 66 is Dr. Kamrin's interpretation of the Court's meaning of the term "end" which was included in the Court's reasoning regarding its construction of "second end." *Id*. at ¶ 66. Dr. Kamrin effectively latches onto the Court's use of the term "end" without further definition to reinsert that the end is a linear limit—a position repeatedly rejected by the Court during claim construction.

The Court finds these paragraphs to be interpretations of the terms "common face" and "second end" with explanations based on the prosecution history, the specification, extrinsic evidence, and the knowledge of a person of ordinary skill in the art. Dr. Kamrin will not be

6

permitted to testify as to the meaning of the terms "second end" or "common face," nor will he be permitted to provide his positions on how a person of ordinary skill in the art would interpret the Court's claim construction for those terms. Indeed, explaining how a person of ordinary skill in the art would interpret the Court's construction of claim terms is the equivalent of construing the Court's construction. The jury will be provided with the Court's claim constructions and will apply those constructions in determining infringement. This is not the time to argue to the jury about the parties' changing claim construction positions or the experts' opinions on how to interpret the Court's constructions based on dicta. Dr. Kamrin's opinions should be limited to strictly why he finds that the Battle Balloon products do not infringe under the Court's constructions and why he disagrees with Dr. Kudrowitz.

Therefore, the Court **GRANTS-IN-PART** Plaintiffs' Motion to Strike (Doc. No. 329) as to Paragraphs 34 through 50 and 56 through 66 of Dr. Kamrin's rebuttal report. Dr. Kamrin will be granted leave to amend his report and may modify, for example, paragraph's 61 through 64 to address specifically how he is disagreeing with Dr. Kudrowitz. Any further modifications should comply with the admonitions of this Order. This is not an opportunity to wholesale change or alter opinions expressed. Moreover, should Dr. Kamrin submit a supplemental report that again so blatantly violates the Court's claim construction order or attempts to provide continued claim construction opinion, the Court will not hesitate to award sanctions in the form of an adverse inference and/or attorney's fees.[1]

As to the opinions regarding the doctrine of equivalents, the parties are **ORDERED** to file a joint report to inform the Court whether the doctrine of equivalents will be asserted in this case by **August 18, 2017**.

---

[1] Dr. Kamrin may consider his claim construction arguments preserved for appellate purposes without the need to further articulate those opinions in his supplemental report.

7

## B. Defendants' Motion To Exclude Dr. Kudrowitz (Doc. No. 331)

Defendants move to exclude the opinions of Plaintiffs technical expert, Dr. Barry Kudrowitz, related to the infringement and validity of the '749 Patent. (Doc. No. 331, at 4.) Specifically, Defendants argue that Dr. Kudrowitz has construed "second end" inconsistent with the Court's admonitions and clarifications and that he effectively made up his own constructions of the term "common face." (Doc. No. 331, at 5–8.) Plaintiffs argue that Dr. Kudrowitz does not offer the opinions Defendants' suggest in any of his reports, but rather made those statements during cross-examination in which he was asked to apply the claim terms "second end" and "common face" to prior art references. (Doc. No. 361, at 7.)

The Court similarly reviewed Dr. Kudrowitz's opening expert report, the first report in question, to address Defendants' complaints. (Doc. No. 331-2.) After a thorough review of Dr. Kudrowitz's report, the Court did not find any instances in his report where he construed the terms "common face" or "second end" inconsistent with the Court's construction. Indeed, Defendants do not cite any portions of his report in reliance in their motion. Instead, Defendants appear to rely on Dr. Kudrowitz's testimony during a deposition where Defendants ran him through a hypothetical applying his constructions to the prior art. (Doc. No. 331, at 5–8.) If Dr. Kudrowitz's opinions read too broadly on the prior art, that is a matter for cross-examination, not for exclusion where Dr. Kudrowitz has not actually offered any opinions in his report regarding the testimony Defendants' cite as problematic.

Defendants next argue that Dr. Kudrowitz's opinions regarding secondary considerations should be excluded because they are effectively conclusory regurgitations of evidence and are unhelpful to the trier of fact. (Doc. No. 331, at 9–13.) Plaintiffs respond that Dr. Kudrowitz's opinions on secondary considerations rely on evidence and were properly disclosed under the rules. (Doc. No. 361, at 8–9.)

The Court similarly reviewed Dr. Kudrowitz's rebuttal report. (Doc. No. 331-3.) As to secondary considerations, Defendants motion critiques Dr. Kudrowitz's opinions as being overly simple, containing a "high level regurgitation" of information, and lacking in explanation for his conclusions. (Doc. No. 331, at 9–12.) These type of arguments do not give the Court a basis to strike Dr. Kudrowitz's opinions based upon a lack of reliability as they go to the weight of his opinions and not the admissibility. *Summit 6,* 802 F.3d at 1296 ("the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court."). Defendants are again free to cross-examine Dr. Kudrowitz on the sufficiency of his opinions related to secondary considerations.

For these reasons, the Court **DENIES** Defendants' Motion to Strike (Doc. No. 331).

## CONCLUSION

For the reasons stated herein, the Court **GRANTS-IN-PART** Plaintiffs' Motion to Strike (Doc. No. 329). Paragraphs 34 through 50 and 56 through 66 of Dr. Kamrin's rebuttal expert report are hereby **STRICKEN**. Within **14 days** of the issue of this Order, Dr. Kamrin may file an amended report consistent with the admonitions set forth herein. Defendants' Motion to Strike (Doc. No. 331) is **DENIED**. The parties shall file a joint report to inform the Court whether the doctrine of equivalents will be asserted in this case by **August 18, 2017**.

**So ORDERED and SIGNED this 11th day of August, 2017.**

*[Signature]*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE