## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **TINNUS ENTERPRISES, LLC,   ZURU LTD.,** | § | |
| | § | |
| | § | **CIVIL ACTION NO.  6:16-CV-00033-RWS** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **TELEBRANDS      CORPORATION, BULBHEAD.COM, LLC,** | § | |
| | § | |
| **Defendants.** | | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendants' Telebrands Corporation and Bulbhead.com, LLC ("Defendants") Motion For Summary Judgment on Plaintiffs' Claim of Lost Profits (Doc. No. 334). Plaintiffs Tinnus Enterprises, LLC and Zuru Ltd. ("Plaintiffs") have filed a response (Doc. No. 364), to which Defendants have filed a reply (Doc. No. 380), and Plaintiffs have filed a sur-reply (Doc. No. 390).  On September 7, 2017, the Court held a hearing on the motion. Upon consideration, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. No. 334) be **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth herein.

## I.    BACKGROUND

On January 26, 2016, Plaintiffs filed the instant action against Telebrands, alleging infringement of U.S. Patent No. 9,242,749 ("the '749 Patent"). (Doc. No. 1.) On April 19, 2016, Plaintiffs amended their complaint to add allegations of infringement of U.S. Patent No. 9,315,282 ("the '282 Patent"). (Doc. No. 3.) On April 20, 2017, Plaintiffs filed corporate disclosure statements identifying no parent corporations. (Doc. Nos. 5, 6.) This case proceeded

on a trial schedule through the completion of discovery and expert discovery and through the filing of dispositive motions. On July 7, 2017, Defendants filed the instant motion for partial summary judgment, alleging for the first time that Defendants were entitled to summary judgment on Plaintiffs' claim for lost profits because ZURU Ltd. had not made the sales of the Bunch O Balloons products in the United States, but rather ZURU Inc. had made those sales and was not a named party to this action. (Doc. No. 334.) Plaintiffs filed a response to Defendants' motion for partial summary judgment and also filed a separate motion to join the remaining ZURU entities. (Doc. No. 383.) Thereafter, on August 29, 2017, the ZURU entities filed a motion to intervene. (Doc. No. 395.) On September 1, 2017, Plaintiffs filed an amended notice of interested parties, including ZURU Inc. and ZURU LLC. (Doc. No. 401.) Given the overlapping issues presented by the motions, the Court took up all matters related to Plaintiffs' claim for lost profits at the September 7, 2017 hearing.

## II.   LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is proper when there is no genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts. Disputes over facts that are not relevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute

about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and identify the evidence that demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not have the ultimate burden of persuasion, the party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

## III.    DISCUSSION

Defendants move for summary judgment of no lost profits against the named Plaintiffs on the basis that "[t]o recover lost profits, a plaintiff must actually sell a product in the United States." (Doc. No. 334, at 5, citing *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).) Defendants contend that Tinnus "did not sell Bunch O Balloons during the damages period and does not claim lost profits damages in this action." *Id.* Moreover, Defendants contend that while another ZURU entity, ZURU Inc., sold Bunch O Balloons in the United States, the named Plaintiff, ZURU Ltd., did not. *Id.* at 11–12. Defendants argue that corporate entities cannot recover lost profits resulting from patent infringement suffered by corporate parents. *Id.* at 12. Defendants cite to the testimony of ZURU Ltd.'s 30(b)(6) witness that ZURU Ltd. does not sell Bunch O Balloons in the United States. *Id.* at 13, citing Alm Decl. Ex. 7 at 17:21-18:15, 32:3-6.

Plaintiffs first argue that, regardless of whether ZURU Inc. is joined, there are material facts in dispute because ZURU Ltd. has sold Bunch O Balloons to Walmart and Sam's Club in

3

the United States. (Doc. No. 364, at 10) (citing Ex. A, Mowbray Decl., Ex. 1). Plaintiffs also argue that ZURU Ltd. has the right to collect lost profit damages on behalf any of the ZURU entities for two reasons: (1) the closely-held ZURU entities operate as one corporate unit in the manufacture and sale of Bunch of Balloons; and (2) the ZURU entities are all exclusive licensees. (Doc. No. 364, at 12.) Finally, Plaintiffs argue that the motion to join the remaining ZURU entities moots the issue of lost profits. *Id.* at 17–18.

As discussed above, Defendants' motion for summary judgment has spurred other motions and issues related to whom may recover lost profits in this action. At the September 7, 2017 hearing, the issues presented by the motions had narrowed to: (1) whether ZURU Ltd. may collect any lost profits in this action; and (2) whether ZURU Inc., if joined, may collect any lost profits in this action. Surrounding these issues are facts related to the corporate structure of the ZURU entities and the license agreements from Tinnus to the ZURU entities.

### a. Lost Profits

The damages statute, 35 U.S.C. § 284, sets the floor for "damages adequate to compensate for [patent] infringement" at "a reasonable royalty for the use made of the invention by the infringer." The burden of proving damages falls on the patentee. *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003). Section 284 has been interpreted as "expansive" in what may be recovered to compensate for infringement and one such recovery for infringement under § 284 that has been recognized by the courts is the recovery of lost profits. *Aro Mfg. Co. v. Convertible Top Replacement Co*., 377 U.S. 476 (1964); *Del Mar Avionics, Inc. v. Quinton Instrument Co*., 836 F.2d 1320, 1326 (Fed. Cir. 1987). "To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it

4

would have made the sales that were made by the infringer." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (citing *id.*).

As discussed above, the question that remains with respect to Defendants' motion for summary judgment is which ZURU entity, if any, can recover lost profits for the time of alleged infringement. According to ZURU Ltd. and ZURU Inc.'s Chief Operating Officer, Ms. Anna Mowbray, the ZURU entities are closely-held family businesses owned and operated by Ms. Mowbray and her two brothers, Mat Mowbray and Nick Mowbray. (Doc. No. 364-2, at ¶ 5.) ZURU Ltd., ZURU LLC, ZURU UK Ltd., and ZURU Pty Ltd. are wholly-owned subsidiaries of ZURU Inc. *Id.* at ¶ 6. Ms. Mowbray contends that "[t]he ZURU entities generally operate together as one unit under the umbrella of ZURU Inc. to manufacture, market, and sell ZURU's products, including Bunch O Balloons." *Id.* at ¶ 7. Specifically, as to ZURU Ltd., Ms. Mowbray states that ZURU Ltd. has sold the Bunch O Balloons product to retailers including Walmart and Sam's Club, and attaches purchase orders and invoices as evidence. *Id.* at ¶ 9, Ex. 1 (Doc. No. 64-3).

### i.  Tinnus Enterprises, LLC

As an initial matter, as to Tinnus Enterprises LLC, there appears to be no dispute that Tinnus did not sell any of the patented devices during the time of alleged infringement in this matter. Therefore, it is understood and expected that Tinnus is not itself seeking to recover lost profits in this matter.

### ii.  ZURU Inc.

Turning to ZURU Inc., Defendants contend that adding ZURU Inc. to this case would be futile because ZURU Inc. cannot recover lost profits for a time at which it was not an exclusive licensee to the patents-in-suit. (Doc. No. 402, at 12–14.) Plaintiffs contend that ZURU Inc. had

an oral license from Josh Malone that arose around the time of the original license agreement in

August 2014, and that was confirmed by a letter from Mr. Malone dated July 11, 2015. (Doc.

No. 390-2.) This letter states that ZURU Inc. is "authorized by Tinnus to use the Intellectual

Property subject to the terms of the License." *Id.* While Plaintiffs contend that this letter

provided ZURU Inc. with the full scope of the rights under the License, this letter did not

provide ZURU Inc. with the exclusive rights to the patents-in-suit needed to recover lost profits

in this action. *Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) ("a

licensee generally may not sue for damages unless it has exclusive rights under a patent,

including the right to sue.") (citing *Rite-Hite*, 56 F. 3d at 1552).

Here, both the original license agreement executed in August 2014, and the first amended

license agreement executed on November 4, 2015, only grant an exclusive license to ZURU Ltd.

(Doc. Nos. 364-4, 364-5.) Moreover, Section 12.10 of first amended license agree provides:

"This Amended Agreement constitutes the entire agreement between the parties, and supersedes

all prior oral or written agreements, understandings, representations and warranties, and courses

of conduct and dealing between the parties relating to the subject matter of such provisions."

(Doc. No. 364-5, at 11.) Based upon this provision in the November 2015 first amended license

agreement, and the general dearth of evidence showing exclusive rights to ZURU Inc. prior to

that time, any purported oral agreement or the July 11, 2015 letter did not grant ZURU Inc.

exclusive rights to the patents-in-suit such that ZURU, Inc, may recover lost profits. At best,

ZURU Inc. gained some exclusive rights to the patents-in-suit when the second amended license

agreement was executed on October 18, 2016. (Doc. No. 364-6.) However, at that time, the

Court had already granted Plaintiffs' motion for a preliminary injunction and Telebrands had

been enjoined from selling the accused products. (Doc. No. 142.) Therefore, there would be no

6

lost profits for alleged infringement from October 2016 forward, and ZURU Inc. cannot recover lost profits from a point in time at which it had not yet obtained exclusive rights to the patents-in-suit.

For these reasons, the Court finds that joinder of ZURU Inc. (or any other ZURU entity) does not moot the problem with respect to lost profits raised in Defendants' motion. Thus, the only question that remains is whether ZURU Ltd. can recover any lost profits in this action.

### iii.  ZURU Ltd.

As to ZURU Ltd., ZURU Ltd. cannot recover lost profits for sales made by ZURU Inc., its parent corporation, who, as discussed above, did not have exclusive rights to the patents-in-suit during the time of alleged infringement. *See supra* Section III(a)(ii). The law is clear in that even a related corporate entity may not recover lost profits from sales that it did not make. *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015) (*vacated on other grounds*, 824 F.3d 1344) ("[u]nder our case law a patentee may not claim, as its own damages, the lost profits of a related company."); *Poly-America*, 383 F.3d at 1311 ("[e]ven though Poly–America and Poly–Flex seem to share interests as two entities collaborating in the manufacture and sale of textured landfill liners, that relationship by itself is not sufficient to permit Poly–America to claim Poly–Flex's lost profits from Poly–Flex's lost sales); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008). Plaintiffs have failed to provide authority that would support ZURU Ltd.'s collection of lost profits for sales made by ZURU Inc. Accordingly, the Court **RECOMMENDS** that Defendants' Motion (Doc. No. 334) be **GRANTED-IN-PART** in so much as ZURU Ltd. is not permitted to recover lost profits for sales made by ZURU Inc.

As to ZURU Ltd.'s sales, initially in their motion for summary judgment Defendants claimed that only ZURU Inc. had made sales of the patented product in the United States. (Doc. No. 334, at 11–12.) In response, Plaintiffs cited evidence of sales by ZURU Ltd. in the United States. (Doc. No. 364, at 10) (citing Ex. A, Mowbray Decl., Ex. 1). At the hearing, Defendants argued that while perhaps ZURU Ltd. had made sales in the United States—a disputed fact—it was undisputed from the evidence that ZURU Ltd. did not book the profits for those sales. Rather, according to Plaintiffs' 30(b)(6) deponent, the profits belonged to ZURU Inc. (Doc. No. 334-12, at 32:7–11.) Thus, the issue with respect to ZURU Ltd. became whether ZURU Ltd. can recover lost profits for its sales of the patented device where the profits associated with those sales were booked by ZURU Inc.

Defendants' new "profit" argument misses the mark. Effectively, Defendants argue that ZURU Ltd. may not recover any lost profits because Ms. Mowbray testified that the profits from the sales belonged to ZURU Inc. (Doc. No. 334-12, at 32:7–11.) But as discussed above, the relevant question as to whether lost profits are recoverable is whether "'but for' the infringement," the entity seeking lost profits "would have made the ***sales that were made by the infringer***." *Rite-Hite*, 56 F.3d at 1545 (emphasis added). Defendants thus confuse the issue of whether ZURU Ltd. itself made profits from sales it made during the time of alleged infringement with whether ZURU Ltd. lost out on profits for those sales it did not make due to Defendants' selling of alleged infringing products.

Here, the record suggests that indeed ZURU Ltd. was making sales of the Bunch O Balloons products during the time of alleged infringement. (Doc. No. 364-3.) This evidence, which includes purchase orders and invoices by ZURU Ltd., raises a material factual dispute regarding whether ZURU Ltd. made sales to retailers in the United States. As such, the Court

cannot find as a matter of law that no sales were made by ZURU Ltd. during the time of alleged infringement on the record before it. Defendants do not cite to any requirement that ZURU Ltd. must have also profited from those sales in order to collect the lost profits. While Defendants rely on *Poly-America*, that case is distinguishable and does not stand for the contention that the party seeking lost profits must have profited from sales it made in order to recover damages associated with those sales.

In *Poly-America*, the Federal Circuit found that Poly-America could not recover the lost profits for sales made by its sister corporation, Poly-Flex, where Poly-America had not made any sales of the patented device. *Poly-America*, 383 F.3d at 1311 ("Even though Poly–America and Poly–Flex seem to share interests as two entities collaborating in the manufacture and sale of textured landfill liners, that relationship by itself is not sufficient to permit Poly–America to claim Poly–Flex's lost profits from Poly–Flex's lost sales."). The Federal Circuit reiterated its holding that for the recovery of lost profits, "the patentee needs to have been *selling* some item, the profits of which have been lost due to infringing sales, in order to claim damages consisting of lost profits." *Id.* (emphasis added). Unlike *Poly-America*, here, the evidence suggests that ZURU Ltd. had made sales of the patented device during the time of alleged infringement. (Doc. No. 364-3.)   Moreover, unlike *Poly-America*, this is not a situation where ZURU Inc. is "synthetically" creating lost profits for ZURU Ltd. by actually booking the profits for the sales made by ZURU Ltd.[1] First, as discussed above, the record reflects that ZURU Ltd. has made sales of the patented device. Second, as Defendants concede, there is no risk of double recovery here because ZURU Inc. did not have exclusive rights to the patents-in-suit during the time

---

[1] In the briefing and during the hearing it was suggested that ZURU Inc. books the profits for ZURU Ltd.'s sales for tax purposes. While the corporate structure of the ZURU entities is a choice made by ZURU that is made subject to the benefits and perils of that choice, Defendants cite no authority that this specific arrangement would prevent a recovery of lost profits under the Patent Act.

ZURU Ltd. made the sales in question. ZURU Inc. simply cannot recover any lost profits during that timeframe.

Because ZURU Ltd. need only show it would have profited from the sales it made but for the sales made by Defendants, *Rite-Hite,* 56 F.3d at 1545, and evidence of relevant sales exists in the record, summary judgment is not proper. Accordingly, the Court **RECOMMENDS** that Defendants' Motion (Doc. No. 334) be **DENIED** as to ZURU Ltd.'s claim for lost profits of its own sales of the patented device.[2]

## IV.    CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. No. 334) be **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth herein. Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.    A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen (14) days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

---

[2]  The Court's corresponding opinion on Defendants' motion to exclude Plaintiffs' damages expert contains instructions regarding further discovery and expert reports in this matter in view of this ruling.

So ORDERED and SIGNED this 11th day of September, 2017.

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE