# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **TINNUS ENTERPRISES, LLC, ZURU LTD.,** § § § § **Plaintiffs,** § § **v.** § § **TELEBRANDS CORPORATION, BULBHEAD.COM, LLC,** § § § **Defendants.** § | **CIVIL ACTION NO. 6:16-CV-00033-RWS** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs Tinnus Enterprises, LLC and ZURU Ltd.'s ("Plaintiffs") Motion to Reconsider (Docket Nos. 423 (sealed), 425) and ZURU Inc., ZURU LLC, ZURU Pty Ltd., and ZURU UK Ltd.'s ("ZURU entities") Motion to Reconsider (Docket Nos. 422 (sealed), 424). Defendants Telebrands Corporation and Bulbhead.com, LLC ("Defendants") filed a response (Docket No. 435), to which Plaintiffs filed a reply (Docket No. 451), and Defendants filed a sur-reply. Docket No. 465. On October 25, 2017, the Court held an evidentiary hearing on the matter. For the reasons set forth herein, the Motions (Docket Nos. 422, 423, 424, 425) are **DENIED**.

## BACKGROUND

On January 26, 2016, Plaintiffs filed the instant action against Telebrands, alleging infringement of U.S. Patent No. 9,242,749 ("the '749 Patent"). Docket No. 1. On April 19, 2016, Plaintiffs amended their complaint to add allegations of infringement of U.S. Patent No. 9,315,282 ("the '282 Patent"). Docket No. 3. On April 20, 2017, Plaintiffs filed corporate disclosure

statements identifying no parent corporations. Docket Nos. 5, 6. This case proceeded on a trial schedule through the completion of discovery and expert discovery and through the filing of dispositive motions. On July 7, 2017, Defendants filed a motion for partial summary judgment, alleging for the first time that Defendants were entitled to summary judgment on Plaintiffs' claim for lost profits because ZURU Ltd. had not made sales of the Bunch O Balloons products in the United States, but rather ZURU Inc. had made those sales and was not a named party to this action. Docket No. 334. Plaintiffs filed a response to Defendants' motion for partial summary judgment and also filed a separate motion to join the remaining ZURU entities. Docket No. 383. Thereafter, on August 29, 2017, the ZURU entities filed a motion to intervene. Docket No. 395. On September 1, 2017, Plaintiffs filed an amended notice of interested parties, including ZURU Inc. and ZURU LLC. Docket No. 401. Given the overlapping issues presented by the motions, the Magistrate Judge took up all matters related to Plaintiffs' claim for lost profits at a hearing held on September 7, 2017.

On September 11, 2017, the Magistrate Judge issued three opinions related to Plaintiffs' claim for lost profits: (1) a Memorandum Opinion and Order granting-in-part and denying-in-part Defendants' Motion to Exclude Alan Ratliff's Opinions on Lost Profits (Docket No. 405); (2) a Report and Recommendation recommending that Defendants' Motion for Summary Judgment of No Lost Profits be granted-in-part and denied-in-part (Docket No. 406); and (3) an Order denying Plaintiffs' Motion to Join and the ZURU entities' Motion to Intervene as Moot in light of the concurrent findings (Docket No. 407).

While Plaintiffs and the ZURU entities filed the instant motions to reconsider on the Magistrate Judge's denial of their respective motions to join and intervene, the basis they seek for reconsideration arises from the Magistrate Judge's finding in the Report and Recommendation that

the ZURU entities did not have sufficient rights to collect lost profits during the time of alleged infringement. *See, e.g.*, Docket Nos. 422, 423. The following timeline summarizes the relevant dates and events presented by Plaintiffs' Motions:

| Date | Event |
| --- | --- |
| August 19, 2014 | Original license between Tinnus and ZURU Ltd. (Docket No. 364-4). |
| November 19–20, 2014 | First letter from Mr. Malone authorizing ZURU Inc. to "use the Intellectual Property subject to the terms of the License." Email from Johanna Bejarano at ZURU to Josh Malone requesting that ZURU Inc. be added to the letter granting Trademark Assignment (Docket No. 435-7). |
| June 9, 2015 | U.S. Patent No. 9,051,066 ("the '066 Patent") issues; Tinnus and ZURU Ltd. file complaint for alleged infringement of the '066 Patent against Bed Bath & Beyond Inc., Prometheus Brands, LLC, Telebrands Corporation. (Case No. 6:15-cv-551.) |
| July 1, 2015 | Josh Malone writes letter to ZURU stating that ZURU Inc. is "authorized by Tinnus to use the Intellectual Property subject to the terms of the License." (Docket No. 390-2.) |
| November 4, 2015 | Tinnus and ZURU Ltd. execute first amended license agreement. (Docket No. 364-5.) |
| December 22, 2015 | Order on Injunction issues as to '066 Patent. (Case No. 6:15-cv-551, Docket No. 91.) |
| January 26, 2016 | U.S. Patent No. 9,242,749 ("the '749 Patent") issues and Tinnus and ZURU Ltd. file the instant action against Telebrands. (Docket No. 1.) |
| April 19, 2016 | U.S. Patent No. 9,315,282 ("the '282 Patent") issues and Tinnus and ZURU Ltd. file an amended complaint against Telebrands. (Docket No. 3.) |
| September 29, 2016 | The Court grants Plaintiffs' Motion for Preliminary Injunction against Telebrands. (Docket No. 142.) |
| October 18, 2016 | Tinnus and ZURU Ltd. execute the second amended license agreement. (Docket No. 364-6.) |
| October 31, 2016 | Injunction Order issues on the '749 and '282 Patents. (Docket Nos. 159.) |
| July 7, 2017 | Telebrands files motion for summary judgment of no lost profits. (Docket No. 334.) |
| July 31, 2017 | Tinnus and ZURU Ltd. execute addendum to the second amended license agreement, expressly including all ZURU entities as licensees. (Docket No. 372-3.) |
| August 11, 2017 | Plaintiffs file motion to join the ZURU entities. (Docket No. 383.) |
| August 29, 2017 | ZURU entities file motion to intervene. (Docket No. 395.) |

| September 1, 2017 | Tinnus and ZURU Ltd. file amended notice of interested parties including the ZURU entities. (Docket No. 401.) |

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). Motions to reconsider are considered rare and filed only for the limited purpose: "to permit a party to correct manifest errors of law or fact, or to present newly discovered evidence." *Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 331 (W.D. Tex. 2002) (citations omitted). Mere disagreement with an order of the Court does not warrant reconsideration of that order. *Id.* at 332. A party should not restate, recycle, or rehash arguments that were previously made. *Id.*

## DISCUSSION

In the motions to reconsider, Plaintiffs argue that the evidence suggests ZURU Inc. had an exclusive license to the patents-in-suit during the period of infringement. Docket No. 422 at 2. In his Report and Recommendation, the Magistrate Judge noted that at the hearing on September 7, 2017, Plaintiffs argued that ZURU Inc. had an oral license to the patents-in-suit that was confirmed by a July 1, 2015 letter from Josh Malone. Docket No. 406 at 6. In relevant part, that letter states that ZURU Inc. is "authorized by Tinnus to use the Intellectual Property subject to the terms of the License." Docket No. 390-2. The Magistrate Judge found that this letter "did not provide ZURU Inc. with the exclusive rights to the patents-in-suit needed to recover lost profits in this action." Docket No. 406 at 6, citing *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) ("a licensee generally may not sue for damages unless it has exclusive rights under a patent, including the right to sue.").

Plaintiffs now seek to supplement the record with: (1) testimony from Mr. Malone and Ms. Anna Mowbray regarding the fact that an oral license did exist during the time of infringement;

(2) evidence of royalty payments made during the period of alleged infringement; (3) sales by ZURU Inc. during that time; and (4) the course of conduct of the parties. Docket No. 422 at 7–11. As an initial matter, Plaintiffs have no legal basis to seek reconsideration given that this evidence was previously available to them and not presented to the Court when provided with such opportunities during briefing and at the Magistrate Judge's September 7, 2017 hearing. *Beneficial Innovations, Inc. v. Blockdot, Inc*., No. 2:07-CV-263-TJW-CE, 2010 WL 11469805, at *2 (E.D. Tex. Oct. 27, 2010) (denying reconsideration where "new evidence" was not convincing because it was not "new evidence at all."). Indeed, Plaintiffs do not contest that this evidence was previously available, nor do they explain why they did not present this evidence or testimony to the Magistrate Judge or why Ms. Mowbray or Mr. Malone were unable to provide their current statements in their prior declarations. However, for completeness of the record, the Court agreed to take in the new evidence at its October 25, 2017 hearing.

At the hearing, Mr. Malone and Ms. Mowbray testified to the existence of an oral agreement between ZURU Inc. and Tinnus. Hearing Transcript "Tr." at 58:4–6; 87:20–22. Mr. Malone ultimately testified to a meeting he had with Ms. Mowbray in China where they reached an agreement that culminated in the August 19, 2014 original license agreement between ZURU Ltd. and Tinnus. Tr. at 58:7–60:2. Mr. Malone admits that ZURU Inc. was never included in any written license agreement until the October 2016 second amended license agreement but states that in his mind ZURU was ZURU and so he had no reason to distinguish the rights between ZURU Ltd. and ZURU Inc. *Id*. He confirmed ZURU Inc. had rights in letters for ZURU's customers. *Id.* Mr. Malone testified that, based on his understanding, an oral agreement between ZURU Inc. and Tinnus would have been in effect since November 2014. Tr. at 60:14–25. He admits he was unaware of ZURU Inc. at the time the original license agreement was executed in

August 2014.  Tr. at 61:1–9.  Ms. Mowbray confirmed the meeting in China in August of 2014 and testified that the terms of the oral agreement between ZURU Inc. and Tinnus were the same as the terms of the original license agreement between ZURU Ltd. and Tinnus.  Tr. at 87:23–89:9.  Ms. Mowbray also contends that the oral agreement would have been in effect as of November 19, 2014 based upon Mr. Malone's November 2014 letter to ZURU.  Tr. at 89:25–90:10.

Even if the evidence in the record establishes an oral license to ZURU Inc. during the time of infringement as Mr. Malone and Ms. Mowbray testified, as the Magistrate Judge pointed out, the question is not merely whether an oral license existed but what rights to the patents-in-suit ZURU Inc. had during the time of alleged infringement.  Docket No. 406 at 6–7.  Indeed, it is the bundle of rights held by the alleged licensee that determines whether ZURU Inc. can recover lost profits for that time period.  *See Poly-America*, 383 F.3d at 1311 ("a licensee generally may not sue for damages unless it has exclusive rights under a patent, including the right to sue."); *see also Arachnid, Inc. v. Merit Indus., Inc*., 939 F.2d 1574, 1579 (Fed. Cir. 1991) ("The general rule is that one seeking to recover money damages for infringement of a United States patent . . . must have held the legal title to the patent during the time of the infringement.").

Here, Plaintiffs point to the original license agreement executed on August 19, 2014, and referred to in Mr. Malone's November 2014 and July 1, 2015 letters, to argue that the rights granted to ZURU Inc. were all of the rights conferred to ZURU Ltd. by that original license agreement.  Docket No. 422 at 7–10.  Ms. Mowbray testified to this during the hearing.  Tr. at 87:23–88:8.  While Plaintiffs rely on these letters to establish ZURU Inc. as an exclusive licensee, neither the letters nor the license agreement itself specify what those rights would be with respect to ZURU Inc.  Docket Nos. 390-2, 435-7, 364-4.  Plaintiffs endeavor to sweep all of the rights granted to ZURU Ltd. into the hands of ZURU Inc. by virtue of the fact that the letters identify ZURU Inc.'s

authorization to "use" Intellectual Property as that of the full extent of the "License." Docket Nos. 390-2, 435-7. But other than this single cursory line in Mr. Malone's letters, there is little support for such a sweeping conclusion. First, the license agreement itself is silent as to ZURU Inc. and Mr. Malone admits he did not even know ZURU Inc. existed at that time. Docket No. 364-4; Tr. at 61:1–9. Second, interpreting this single line from Mr. Malone's letters broadly, it at best grants ZURU Inc. the right to "use" the Intellectual Property. Docket Nos. 390-2, 435-7. Mr. Malone testified that the word "use" was used to confirm for third-party customers that ZURU Inc. had the right to use the invention, as this was the nature and purpose of writing this letter. Tr. at 81:2–82:4. The right to "use" alone is not sufficient to give ZURU Inc. legal title to the patents or even all exclusionary rights to the patents. *Aspex Eyewear, Inc. v. Altair Eyewear, Inc*., 288 F. App'x 697, 705 (Fed. Cir. 2008) (categorizing "those who lack exclusionary rights" as "those licensees who are authorized to make, use, and sell the patented product but who have no right to prevent others from also doing so."). Moreover, Mr. Malone's testimony suggests the letter was written for the purpose of confirming the right to "use" to ZURU's customers, rather than for the purpose of expressly granting exclusionary rights to ZURU Inc. Tr. at 81:2–82:4.

Indeed, the lack of full exclusionary rights in this case is consistent with the parties' conduct. Here, looking to the parties' course of conduct during the time period in which an oral license was in question, it includes sales of Bunch O Balloons and royalty payments to Tinnus. Docket Nos. 422-4; 422-5. This conduct of selling and paying royalties simply supports the notion that ZURU Inc. likely had the right to manufacture and sell products covered by the patents-in-suit. However, other than the right to make and sell the covered Bunch O Balloons products, there is no evidence to suggest that ZURU Inc. had any other rights with respect to the patents-in-suit. For example, there is no evidence that ZURU Inc. ever became actively involved in any of the

litigation enforcing the patents-in-suit during this time. In fact, ZURU Inc. was not a named plaintiff nor did it have any involvement of record in the pending related case before this court—Civil Action No. 6:15-cv-551. In both this action and the other related actions, ZURU Inc. never noticed an appearance, was never disclosed by ZURU Ltd. as an interested party during the time of alleged infringement, and did not otherwise enforce any rights to the patents-in-suit.[1]

At the hearing, Ms. Mowbray testified that the rights granted to ZURU Inc. via the oral agreement were the rights "to use the IP to sell, to manufacture, to distribute, and to market the Bunch O Balloons and the intellectual property associated with that, and also the ability to enforce that IP." Tr. at 87:23–88:8. However, other than this statement, Plaintiffs offered no evidence to support the notion that ZURU Inc. had exclusionary rights with respect to the patents-in-suit. Indeed, when Ms. Mowbray testified to the parties' conduct, she stated:

> …I think just the actions speak for themselves. ZURU, Inc., was actively manufacturing, was actively selling, and was actively marketing the product. ZURU, Inc., was reverting royalty payments to Tinnus.

Tr. at 89:15–19.

Thus, Ms. Mowbray's testimony further supports the fact that only certain rights, including the right to use, make, and sell, had been granted to ZURU Inc. based on the parties' conduct.[2] As discussed above, there is no evidence to suggest ZURU Inc. was engaged in any enforcement of the patents-in-suit for the time period in which Mr. Malone and Ms. Mowbray contend an oral agreement existed.

---

[1] For example, on April 20, 2016, ZURU Ltd. filed its corporate disclosure statement pursuant to Federal Rule of Civil Procedure 7.1 and stated ZURU Ltd. has no parent corporation. Docket No. 6.
[2] Ms. Mowbray testified that while she believes ZURU Inc. could have brought suit, it did not because of the closely-held nature of the companies and because she did not realize the need for them to be involved in the pending litigation. Tr. at 91:13–92:6.

Moreover, ZURU Ltd. affirmatively represented on several occasions that it was the exclusive licensee of the patents-in-suit. *See, e.g.*, Docket No. 392-2 at ¶ 3 (June 18, 2015 Declaration of Anna Mowbray) (stating that ZURU Ltd. entered into an exclusive license with Tinnus in Case No. 6:15-cv-551); Docket Nos. 1, 3, 265 (Complaint, Amended Complaint, and Second Amended Complaint) (identifying ZURU Ltd. as the exclusive licensee of the '749 and '282 Patents); Docket Nos. 392-15, 392-19, 392-24, 392-25 (identifying ZURU Ltd. as the real party interest in parallel proceedings before the Federal Circuit and the PTAB); Docket Nos. 392-42, 392-43 (identifying ZURU Ltd. as exclusive licensee in response to Defendants' interrogatories). These prior statements are not consistent with Plaintiffs' current position that ZURU Inc. had an exclusive license to the patents-in-suit as of November 2014. Indeed, during the hearing, Mr. Malone's testimony that he had been operating with respect to all of the ZURU entities, but simply did not know the importance of ZURU Inc. at the time of the license agreement, was undermined by his prior interrogatory response in this case on September 13, 2016, where he stated that the August 19, 2014 agreement included the exclusive nature of the licensing agreement and compensation between ZURU Ltd. and Tinnus. Tr. at 66:4–71:5.[3]

In addition, the Court's scheduling order in this case directed the parties to file a certificate "listing all persons, associations of persons, firms, partnerships, corporations, affiliates, parent corporations, or other entities that are financially interested in the outcome of this litigation." Docket No. 43 at 4. In response to the Court's Order, Plaintiffs named only "Tinnus Enterprises, LLC and ZURU Ltd." as parties interested in this litigation. Docket No. 58. Undoubtedly, these representations prejudiced Defendants throughout the course of the litigation because they relied

---

[3] As of September 13, 2016, Mr. Malone admitted he knew that ZURU Ltd. and ZURU Inc. were two companies under the ZURU umbrella but stated in the interrogatory response that the only exclusive license was between ZURU Ltd. and Tinnus. Tr. at 70:9–18.

on these statements and did not pursue discovery regarding what rights, if any, were granted (or intended to be granted) to ZURU Inc. *See Employers Mut. Cas. Co. v. New Horizon Prod., LLC*, No. 1:09-CV-958, 2010 WL 11530737, at *4 (E.D. Tex. Dec. 7, 2010) (finding that adding new parties, when additional discovery would now have to be conducted, is prejudicial to the other parties).

As the Magistrate Judge discussed, the Federal Circuit has made clear that a licensee may not generally sue for damages unless it has exclusive rights under the patent, *including the right to sue*. Docket No. 406 at 6 (emphasis added); *Poly-America*, 383 F.3d at 1311. Nothing in the record here implies that ZURU Inc. had such rights. Plaintiffs now rely on *Waymark* and *Aspex* to support a finding that an oral license agreement existed. Docket No. 422 at 12, citing 334 F.3d 1358 (Fed. Cir. 2003); 288 F. App'x 697 (Fed. Cir. 2008). But these cases are distinguishable. In *Waymark*, the Federal Circuit reversed sanctions on a supposed lack of standing where the partnership in question claimed a written assignment of the patent. *Waymark*, 334 F.3d at 1364. Plaintiffs contend there is more evidence of an oral license here, but ZURU Inc. has no claim to a written assignment of the patents-in-suit. It has alleged only an oral license that, based on the conduct of the parties, provided it with the rights to make, sell, and/or use the patented inventions. While the Court recognizes that licenses can be oral as a general matter, the mere existence of an oral agreement does not convey the rights sufficient to collect damages for infringement, including the right to sue. Those rights must be proven, and Plaintiffs have failed to prove that those rights existed here.

Similarly, Plaintiffs rely on the *Aspex* case to support a finding that an oral exclusive license existed. Docket No. 422 at 12. As an initial matter, the Federal Circuit did not find that Aspex had an oral exclusive license, but merely agreed with the district court that evidence in the record

was sufficient to establish a genuine issue of material fact as to whether there was an oral or implied exclusive license. *Aspex*, 288 F. App'x at 706. Again, the question is not whether ZURU Inc. had an oral license, but what rights were conveyed by that license. Here, there is no evidence in the record to suggest that ZURU Inc. had the requisite rights to the patents-in-suit to collect lost profits—namely the right to sue. This fact alone is distinguishable from *Aspex* where the district court found, *inter alia*, that Aspex had sought to enforce its rights under the patents. *Id.*

Given that Mr. Malone executed a letter regarding an oral license to ZURU Inc. on July 1, 2015, if Mr. Malone had indeed intended to license ZURU Inc. there is no explanation as to why ZURU Inc. was not then included in the first amended license agreement that was executed shortly thereafter on November 4, 2015.[4] Docket Nos. 364-4, 364-5. Similarly, even where ZURU requested that ZURU Inc. be added to the letter granting trademark assignment a year earlier on November 20, 2014, ZURU Inc. was never incorporated into these written license agreements. *See* Docket No. 435-7 (Email from Johanna Bejarano at ZURU to Josh Malone requesting that ZURU Inc. be added to the letter granting Trademark Assignment). Yet Plaintiffs rely on these agreements to anchor the rights of ZURU Inc. in the patents-in-suit to collect damages. On the one hand, Plaintiffs argue that the license (and therefore its amendments thereto) apply equally to all ZURU entities with respect to the rights conferred therein. *See, e.g.*, Docket No. 422 at 3–4. On the other hand, Plaintiffs contend that the integration clause of the first amended license agreement does not apply to ZURU Inc. because it is not a party to the first amended license agreement. Docket No. 422 at 13. Plaintiffs cannot simultaneously contend that all rights were granted by virtue of the license agreement but that specific clauses do not apply to ZURU Inc. because they were not a party to the license agreement.

---

[4] Ms. Mowbray testified that it simply did not cross her mind to include ZURU Inc. in that license agreement. Tr. at 92:11–19.

Further, as to the integration clause, Plaintiffs argue that the second amended license agreement moots the clause and gives life to the oral agreement, including all "ZURU Related Entities." Docket No. 422 at 15. However, as Plaintiffs acknowledge, the second amended agreement was executed on October 18, 2016. Docket No. 364-6. As the Magistrate Judge pointed out, the Court, at that time, had already granted Plaintiffs' motion for preliminary injunction and Telebrands had been enjoined from selling the accused products. Docket No. 406 at 6, citing Docket No. 142.[5] Thus, even if the second amended license agreement voided the integration clause of the first amended license agreement, or gave ZURU Inc. exclusive rights to the patents-in-suit, there would be no lost profits to collect from that point on as the alleged infringing products were no longer being sold.

Ultimately, the absence of an express writing conveying exclusive rights to ZURU Inc., combined with ZURU Inc.'s lack of participation in any of the multiple litigations over the past three years, as well as the absence of any notice of its interests in representations to the courts, suggests that ZURU Inc. did not have exclusive rights to collect damages. While Plaintiffs provided testimony of an alleged oral agreement between ZURU Inc. and Tinnus, that testimony fails to meet further support in the evidentiary record and was contradicted by prior statements made during the course of this litigation. It appears that what occurred here was perhaps an unintentional oversight in the licensing of the patents-in-suit and the structuring of the ZURU entities. The Court understands the significance of this oversight to the Plaintiffs' damages case, but the record evidence demonstrates that ZURU Inc. did not have sufficient rights to the patents-in-suit to collect lost profits during the time of alleged infringement. As this is the only basis for

---

[5] The Court granted the motion for preliminary injunction on September 29, 2016, and the actual order on the injunction issued on October 31, 2016. Docket Nos. 142, 159.

reconsideration of the motions presented, the Court **DENIES** those Motions (Docket Nos. 422, 423, 424, 425).

Moreover, whether ZURU Inc. has a license to the patents-in-suit and whether lost profits are available is a question of law for the Court to decide. *See Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010) (holding the district court's interpretation of a contract presents a question of law…"); *Micro Chem., Inc. v. Lextron, Inc*., 318 F.3d 1119, 1122 (Fed. Cir. 2003) ("Availability of lost profits is a question of law reviewed without deference"). Even if the jury could be asked to find whether ZURU Inc. had an oral license, the only material question is whether the license conveyed exclusive rights to the patents-in-suit, a determination the Court must make, and a determination for which the Court has found the evidence in the record insufficient to establish that ZURU Inc. had exclusive rights to the patents-in-suit during the time of alleged infringement. The Court has thoroughly reviewed all of the evidence presented and resolved the question as a matter of law. Therefore, no question of fact remains for the jury to resolve on this issue. Thus, Plaintiffs' argument that a question of fact remains for the jury on the existence of a license is without merit.

Finally, Plaintiffs assert these same arguments in their objections to the Magistrate Judge's Order (Docket No. 407). Docket No. 428.[6] For the reasons stated herein, the Court agrees with the Magistrate Judge and finds he did not clearly err in his findings. Therefore, Plaintiffs' objections (Docket No. 428) are **OVERRULED**. In addition, while Plaintiffs quibble with the Magistrate Judge's issuance of an order (rather than a report and recommendation) denying the motions to join and intervene as moot in light of his concurrent recommendation, this Court has

---

[6] Defendants filed a response to Plaintiffs' objections. Docket No. 443.

now fully considered the issues presented on a *de novo* basis and the Magistrate Judge's issuance of an order is therefore irrelevant to the outcome.

## CONCLUSION

For the reasons stated herein, the Court **DENIES** the ZURU entities' and Plaintiffs' Motions to Reconsider (Docket Nos. Docket Nos. 422, 423, 424, 425). Plaintiffs' same objections to the Magistrate Judge's Order (Docket No. 428) are **OVERRULED.**

**SIGNED this 1st day of November, 2017.**

*[signature]*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE