**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **TINNUS ENTERPRISES, LLC, ZURU LTD.,** | § § § | |
| | § | **CIVIL ACTION NO. 6:16-CV-00033-RWS** |
| **Plaintiffs,** | § § | **(LEAD CASE)** |
| | § | |
| **v.** | § § | |
| | § | |
| **TELEBRANDS CORPORATION, BULBHEAD.COM, LLC,** | § § § | |
| | § | |
| **Defendants.** | § § | |

<u>**REDACTED MEMORANDUM OPINION AND ORDER**</u>

Before the Court are the parties' motions for post-trial relief. Having considered the parties' written submissions and the arguments at the April 18, 2018 hearing, the Court rules as follows:

- Plaintiffs' Motion for Enhanced Damages under 35 U.S.C. § 284 (Docket No. 578) is **GRANTED**;

- Plaintiffs' Motion for Apportionment of Damages as to Retailer Defendants (Docket No. 579) is **DENIED**;

- Plaintiffs' Motion for a Permanent Injunction (Docket No. 580) is **GRANTED**;

- Plaintiffs' Motion for Prejudgment and Post-judgment Interest (Docket No. 581) is **GRANTED**;

- Defendants' Renewed Motions for Judgment as a Matter of Law and for a New Trial (Docket No. 582) are **GRANTED-IN-PART** and **DENIED-IN-PART**;

- Defendants' Renewed Supplemental Motion for Judgment as a Matter of Law or Alternatively a New Trial (Docket No. 702) is **DENIED**; and

- Plaintiffs' Motion to Declare These Consolidated Cases as Exceptional and for Attorneys' Fees (Docket No. 583) is **GRANTED**.

# BACKGROUND

This case concerns a group of water balloon patents assigned to Tinnus Enterprises and invented by Tinnus's founder, Mr. Malone. Plaintiffs Tinnus Enterprises, LLC and Zuru Ltd. ("Plaintiffs") and Defendants Telebrands Corporation ("Telebrands") and Bulbhead.com, LLC ("Bulbhead") are direct competitors in the water balloon market. The parties' products fill multiple water balloons simultaneously; exemplary pictures of the products at issue are shown below:

    

(Plaintiffs' Bunch O Balloons)   (Telebrands' Balloon Bonanza)   (Telebrands' Battle Balloons)

This dispute led to multiple cases before this Court. Plaintiffs filed their first complaint on June 9, 2015, alleging that Telebrands' Balloon Bonanza product infringes U.S. Patent No. 9,051,066 ("the '066 Patent"). Case No. 6:15-cv-551 ("*Tinnus I*"), Docket No. 1. Defendants then filed an ultimately unsuccessful petition for post-grant review ("PGR") of the '066 patent. Case No. 6:15-cv-551, Docket No. 334.

In the early stages of *Tinnus I*, the Court granted a preliminary injunction, which enjoined the sale of Telebrands' Balloon Bonanza products. *See* Case No. 6:15-cv-551, Docket Nos. 66,

84, 91).[1]  During the pendency of the injunction, Plaintiffs sued Telebrands and Bulbhead in this action.  *See* Amended Complaint, Docket No. 265.  Here, Plaintiffs allege that Defendants' Battle Balloons product (a redesign of Balloon Bonanza) infringes claims 1–3 of U.S. Patent No. 9,315,282 ("the '282 Patent") and claim 1 of U.S. Patent No. 9,242,749 ("the '749 Patent") (collectively "the patents-in-suit").

The '282 Patent is entitled "System and Method for Filling Containers with Fluids."  '282 Patent.  The disclosure of the '282 Patent relates to fluid inflatable systems, specifically to a system and method for filling containers with fluids.  '282 Patent at 1:22–24.  Like the '282 Patent, the '749 Patent describes a system for simultaneously filling multiple water balloons. '749 Patent at 6:35–57.

In early 2016, Plaintiffs filed suit against Bed Bath & Beyond, Fry's Electronics, The Kroger Company, Sears Holding Corporation and Walgreen Co. ("Retailers"), again alleging infringement of the patents-in-suit.  *See* Amended Complaint, Case No. 6:16-cv-34, Docket No. 5.  Plaintiffs filed an emergency motion for a preliminary injunction in both cases as to the Battle Balloons products.  Docket No. 19; Case No. 6:16-cv-34, Docket No. 26.  The Court consolidated both actions, and issued an injunction against Defendant Telebrands.  Docket No. 159.

However, the Retailers did not agree to be bound by the injunction against Telebrands.  The Court held a hearing and ultimately issued an injunction against the Retailers.  Docket Nos. 182, 211, 224.  The Federal Circuit later affirmed the both injunctions.  *Tinnus Enterprises, LLC v. Telebrands Corp.*, Nos. 2017-1175, 2017-1760, 2017-1811 (Fed. Cir. Jan. 16, 2018).

The parties agreed to consolidate the two cases for jury trial, which took place in November 2017.  Docket Nos. 468, 473, 546–556.  At trial, Defendants stipulated to infringement of claims

---

[1] The Federal Circuit affirmed the injunction on January 24, 2017.  *See Tinnus Enterprises, LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017).

1–3 of the '282 Patent, and the jury found that those claims were not invalid. Docket No. 543 at 3. As to the '749 Patent, the jury found that Defendants infringed claim 1 and the claim was not invalid. *Id*. at 2. The jury awarded Plaintiffs $10,250,000 in lost profits and $2,000,000 as a reasonable royalty. *Id*. at 4. The jury further awarded Plaintiffs $67,000 to compensate Plaintiffs for the Retailers' infringement. *Id*. at 5. Finally, the jury found that Telebrands and the Retailers' infringement was willful. *Id*. The parties now move the Court for post-trial relief.

I.      **Plaintiffs' Motion for Enhanced Damages under 35 U.S.C. § 284 (Docket No. 578)**

In exceptional cases, "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. The decision to increase damages, and the amount of such increase, is within the court's discretion. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935–36 (2016). "As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount." *Id*. at 1933. "When deciding how much to award in enhanced damages, district courts often apply the non-exclusive factors articulated in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996)." *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1244–45 (Fed. Cir. 2017).

*Read* sets forth nine non-exclusive factors: (1) whether the infringer deliberately copied the ideas of another; (2) whether the infringer investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's misconduct; (7) remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal its

misconduct. *Read*, 970 F.2d at 827 (Fed. Cir. 1992). An award need not rest on any particular factor, and not all relevant factors need to weigh in favor of an enhanced award. *See SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1469 (Fed. Cir. 1997). While the *Read* factors are helpful to the Court's exercise of its discretion, an analysis focused on "egregious infringement behavior" is the touchstone for enhancing damages rather, than a more rigid, mechanical assessment. *See Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-3999, 2016 WL 3880774, at *16 (N.D. Cal. July 18, 2016).

Plaintiffs argue that enhanced damages are appropriate in this case because Telebrands' infringement was particularly egregious. Plaintiffs cite communications among Telebrands employees that demonstrate an intent to deliberately copy Plaintiffs' patented "Bunch O Balloons" product. Docket No. 578 at 8. Plaintiffs assert that Defendants presented no evidence of any reasonable investigation that led to a good-faith belief that the patents-in-suit were not infringed or invalid. *Id.* at 10. Plaintiffs further argue that Defendants' litigation tactics were designed solely to delay resolution of the case, obstruct Plaintiffs' ability to prove its case, frustrate the Court by ignoring important orders and ultimately drive up litigation costs. *Id.* at 13. Specifically, Plaintiffs argue Defendants filed numerous dilatory motions, attempted to inject Post Grant Review ("PGR") proceedings into the trial after the Court ruled that information regarding those proceedings was excluded, repeatedly argued claim constructions that were previously rejected by the Court and engaged in inappropriate discovery practices that caused unnecessary delay and expense. *Id.*

Plaintiffs also argue that this was not a close case because Defendants presented no legitimate defense as to infringement or invalidity for either of the patents-in-suit. *Id.* at 17. Plaintiffs assert that the duration of Defendants' misconduct was significant and that Defendants'

infringement began on the day the patents-in-suit issued and continued until they were enjoined. *Id*. Lastly, Plaintiffs argue that "Defendants attempted to conceal their motivations behind the development of the Battle Balloons product under the guise of privilege and advice of counsel, even though Defendants changed their story at trial and claimed it was their expert, Dr. Kamrin, who spearheaded the development effort." *Id*. at 19. According to Plaintiffs, the totality of circumstances warrants enhancing the jury's damages award to the maximum amount permitted under 35 U.S.C. § 284, which would be $36,951,000.00. *Id*. at 21.

In response, Defendants argue this was a close, hard-fought case. Docket No. 589 at 10. Defendants contend that their non-infringement and invalidity arguments were reasonable. *Id*. at 11–12. According to Telebrands, the Battle Balloons product was the result of its efforts to design around the '066 Patent in order to avoid another lawsuit from Plaintiffs. Docket No. 589 at 13. Telebrands alleges it had a good-faith belief it had avoided the "common face" and "second end" claim limitations of the '066 Patent. *Id*. Telebrands further asserts that when the '749 Patent first issued in January 2016, it had a good-faith belief of non-infringement because the '749 patent claimed the same "common face" and "second end" limitations as the '066 Patent. *Id*. at 14. Telebrands contends it already began selling the infringing Battle Balloons before either of the patents-in-suit issued. *Id*.

Next, Telebrands argues that it had a good-faith belief that the patents-in-suit were invalid based, in part, on proceedings before the PTAB. *Id*. at 14. In June 2015, Telebrands filed a petition for PGR on Plaintiffs' '066 Patent. *Id*. at 13. Then, on January 6, 2016 (prior to the issuance of the '749 Patent), the PTAB instituted the PGR, finding it more likely than not that the '066 Patent claims were obvious and indefinite. *Id*. at 14. Telebrands further contends that it also relied on declarations from its infringement/invalidity expert, Dr. Kamrin, who opined that the Battle

Balloons product did not infringe the '749 Patent and that both patents-in-suit were invalid. *Id*. at 15. Thus, Telebrands asserts this weighs against enhancement under the second and fifth *Read* factors because its non-infringement and invalidity arguments were reasonable. *Id*. at 20, 28.

Defendants argue that other *Read* factors weigh against enhancement as well. According to Defendants, their litigation conduct was not egregious. Defendants rely on the fact that they stipulated to infringement of the '282 Patent to streamline the issues at trial. *Id*. at 21–22. Defendants also argue that their allegedly dilatory motions were, in fact, reasonable and brought in good faith. *Id*. at 22–23. As to size and financial condition, Telebrands argues it is a company with only 90 employees and that the total damages requested by Plaintiffs represent a ███████ ███████ of Telebrands' overall yearly profits. *Id*. at 28. Telebrands further argues it had no motivation to harm Plaintiffs and that it made no attempt to conceal any misconduct. *Id*. at 28–29.

### A. Whether Defendants Deliberately Copied Plaintiffs' Ideas or Design

Plaintiffs argue that Telebrands' copying is undeniably evidenced by internal communications from Telebrands' employees regarding Mr. Malone's Kickstarter campaign and the "development" of the Balloon Bonanza product. Docket No. 578 at 7. Defendants argue that the Battle Balloons product has different stair-cased housing and that the modification resulted from legitimate design-around efforts. Docket No. 589 at 7–8.

This factor weighs in favor of enhanced damages. The evidence presented at trial showed that Telebrands worked with an outside consultant, Mr. Rogai, to develop a copy of Plaintiffs' Bunch O Balloons product, which they originally discovered on a Kickstarter campaign started by Mr. Malone. *See* 11/15/17 P.M. Tr. at 11:13–26:18, 42:6–9; *see also* PTX 83, PTX 87, PTX 137. For example, one email from Mr. Rogai to Telebrands employees states: "Here it is with 37 fillers

in one cap.  Tested and it works just like Bunch of Balloons."  PTX 137.  In another email, Mr. Rogai further explains:

> "So you know what the original actual product 'Bunch of Balloons' looks like. Here is a pic below.  [Includes picture of Plaintiffs' Bunch O Balloons product.] Here is our version below where we would just paint the cap and change out the balloons using the bands removed from their product, new BLUE balloons we loaded on, and a painted cap. [Includes picture of prototype.]"

*Id*.  These emails were exchanged in 2014 and describe the original development of Telebrands' *first* water balloons product, Balloon Bonanza.  *Id*.

To be clear, Balloon Bonanza is *not* an accused product in this case.[2]  However, those emails are still highly relevant because the product at issue here (Battle Balloons) is a modified version of Balloon Bonanza, designed after Balloon Bonanza was enjoined in *Tinnus I*.  Case No. 6:15-cv-551, Docket No. 84.  The record shows that Telebrands discovered Mr. Malone's Kickstarter campaign (11/15/17 P.M. Tr. at 11:21–24) and decided it was a "cool idea" (11/14/17 P.M. Tr. at 45:17–18) before manufacturing the functionally similar product Balloon Bonanza. After Balloon Bonanza was enjoined, Telebrands only made superficial changes to the product's housing and renamed it Battle Balloons.  In reality, Battle Balloons was functionally identical to Balloon Bonanza:

---

[2] Plaintiffs sued Defendants over Balloon Bonanza in 2015 (*Tinnus I*), alleging it infringed a different patent (the '066 Patent).  *See* Case No. 6:15-cv-551.



**BALLOON BONANZA**
Housing

**BATTLE BALLOONS**
Housing

This modification does not change the fact that Telebrands copied Mr. Malone's idea. *See Whirlpool Corp. v. TST Water, LLC*, No. 2:15-CV-01528-JRG, 2018 WL 1536874, at *3 (E.D. Tex. Mar. 29, 2018) (granting a motion for enhanced damages after finding that "the attempted design around process engaged in by [the plaintiff] began with copying"). For these reasons, the Court finds that the first *Read* factor favors enhanced damages.

B. *Whether Defendants Investigated Plaintiffs' Patent and Formed a Good Faith Belief That It Was Invalid or That It Was Not Infringed*

Plaintiffs argue that this factor strongly favors enhancement because Defendants did not provide any evidence supporting a good-faith belief that the patents-in-suit were not infringed or invalid. Docket No. 578 at 9. Specifically, Plaintiffs argue that Defendants waived their advice of counsel defense and then attempted to rely on their expert, Dr. Kamrin, as having provided infringement and invalidity opinions. *Id*. at 10. Regardless, Plaintiffs argue that any of Dr. Kamrin's opinions would have been flawed because he offered positions that were excluded by the Court, he is not a lawyer and he failed to consider secondary considerations of non-obviousness in formulating his opinions. *Id*. at 11.

Defendants argue that they had a good-faith belief that they were not infringing the '749 Patent based on their interpretation of the terms "common face" and "second end." Docket No. 589 at 13. Defendants assert that they also believed the patent was invalid based on the PTAB's grant of their PGR petition for the '066 Patent, which also disclosed the "common face" and "second end" limitations. Additionally, Defendants argue that they relied on the analysis of their expert with respect to invalidity of the '749 and '282 Patents. *Id*. at 15.

A brief recap of the timeline of this case is important to the Court's analysis. On January 4, 2016, the Patent Trial and Appeal Board (PTAB) authorized a post-grant review to be instituted on claims of the '066 Patent. *See* '066 Institution Decision, Docket No. 589-8. The PTAB found that "the information presented in the Petition demonstrates that it is more likely than not that Petitioner [Telebrands] would prevail in showing that the challenged claims, except claims 7 and 9, are unpatentable."[3] *Id*. at 3. The '749 Patent then issued on January 26, 2016. Docket No. 1-1. The '282 Patent issued on April 19, 2016. Docket No. 3-2.

As to the '749 Patent, it is possible that Defendants may have had a good-faith belief that they did not infringe. According to Telebrands, Battle Balloons was the result of redesign efforts intended to avoid the "common face" and "second end" limitation of the '066 Patent and Battle Balloons was released before the '749 Patent issued. *See* 6:15-cv-551, Docket No. 113 (Plaintiffs first learned of Battle Balloons on January 11, 2016).

After the '749 Patent issued, Dr. Kamrin examined the patent and determined that: (1) the Battle Balloons did not infringe the '749 Patent because it avoided the "common face" and "second end" limitations and (2) the '749 Patent was invalid because the claims were similar to those of

---

[3] The PTAB instituted based on obviousness and indefiniteness.

the '066 Patent subject to PGR proceedings. *See* Docket No. 33-1. Thus, there is some evidence to support Defendants' assertion.

These arguments do not apply to the '282 Patent because that patent does not contain the terms "common face" or "second end." As stated, Defendants conceded infringement of the '282 Patent at trial. 11/14/17 P.M. Tr. at 57:5–12. However, Defendants argue that they had a good-faith belief that the '282 Patent was invalid for obviousness and lack of written description. According to Defendants, Dr. Kamrin examined the patent and submitted a declaration in May 2016 explaining that he believed the patent was invalid, in part, based on the institution decision of the '066 Patent because the subject matter and prior art were similar. *See* Docket No. 33-1. Thus, there is some evidence that Defendants investigated the '282 Patent and believed that the patent was invalid.

The operative question is whether Defendants' beliefs were in "good-faith." Dr. Kamrin did not examine secondary considerations when developing his obviousness opinions. 11/17/17 P.M. Tr. at 126:3–19 & 128:14–18; *see also* Docket No. 33-1 (no discussion of secondary considerations). Inventors had been trying to develop a better system for simultaneously inflating multiple water balloons for as long as water balloons have been available, and that the products-at-issue experienced great commercial successful. On this record, the Court is not convinced that Defendants' formed a "good-faith" belief as to invalidity. Nonetheless, Defendants, at the very least, did investigate Plaintiffs' patents. For these reasons, the Court finds this factor is neutral.

*C. Defendants' Behavior as a Party to the Litigation*

Plaintiffs argue that Defendants' litigation tactics were designed to delay resolution of this case, obstruct Plaintiffs, frustrate the Court and drive up litigation costs. Docket No. 578 at 13. Specifically, Plaintiffs argue that Defendants filed numerous dilatory motions, attempted to

reargue rulings previously made by the Court, took frivolous positions and engaged in inappropriate discovery practices. *Id.* Defendants argue that there were few discovery disputes in this case and that they worked with Plaintiffs to reach a number of agreements. Docket No. 598 at 21. Defendants further contend that their motives were not dilatory and that their arguments were justified. *Id.* at 23–27. For the reasons discussed herein, the Court finds that this factor favors enhanced damages.

### a. Motions Practice

Early on in this case, the Court admonished the parties for excessive motion practice and abuse of the Court's emergency motion procedure. *See, e.g.*, Docket No. 132. Specifically, Telebrands filed an emergency motion to compel a response, which the Magistrate Judge deemed a non-emergency. *See id.* at 2 (denying Telebrands' motion as a non-emergency and explaining that the Court had "already admonished the parties regarding their abuse of emergency motions").

Telebrands proceeded to file several non-meritorious motions, thereby expending significant resources of the parties and the Court. For example, after a full evidentiary hearing, extensive briefing and consideration of objections to the Magistrate Judge's Report and Recommendation, Telebrands filed a motion to reconsider the Court's preliminary injunction. Docket No. 153. Telebrands' motion to reconsider was denied as baseless (Docket No. 229), and the preliminary injunction was ultimately upheld on appeal. *Tinnus*, Nos. 2017-1175, 2017-1760, 2017-1811. Telebrands simultaneously moved to stay the injunction. Docket No. 146. The Court denied that motion as premature (Docket No. 157) and denied Telebrands' subsequent motion re-urging the Court to stay the injunction. Docket No. 229.[4] Telebrands then filed a motion to stay

---

[4] The motion to stay was nearly identical to a prior motion to stay pending appeal, which was denied by this Court (Case No. 6:15-cv-551, Docket No. 123) and upheld by the Federal Circuit (Case No. 6:15-cv-551, Docket No. 154). The Court's denial of Telebrands' motion to stay in this case was similarly upheld by the Federal Circuit under Federal

this matter pending completion of PGR proceedings. Docket No. 239. Again, the Court denied Telebrands' motion and found that every factor weighed against a stay. Docket Nos. 262, 293. In the end, the PTAB found the asserted claims were not invalid. Docket Nos. 626-1, 626-2; Docket No. 543.[5]

After repeated motions to stay this action were denied by the Court, Telebrands filed a motion to dismiss just a few months before trial but after the deadline for filing dispositive motions. Docket No. 298. Once again, Defendants directed the resources of the parties and the Court to a non-meritorious issue. Docket Nos. 359, 456. The excessive motions practice demonstrated an intent to delay and obstruct this action. For these reasons, this factor weighs in favor of enhanced damages.

### b. Discovery Conduct

Telebrands' discovery conduct weighs in favor of enhanced damages. The Court became aware of this conduct when Plaintiffs filed a motion to compel production of documents related to Telebrands' third generation of water balloon products, Easy Einstein Balloons. Docket No. 219. The Magistrate Judge found that Telebrands' refusal to produce the requested discovery was not justified. *See* Docket No. 223. The information was relevant to the Court's ability to enforce the injunction in this matter and the Protective Order provided sufficient means for the production. *Id.* at 3–4 ("these products are indisputably relevant and Telebrands was not substantially justified in refusing to produce the requested product samples. Telebrands provides no justification as to why it could not accept Plaintiffs' offer to designate the materials 'Attorney's Eyes Only' and provide

---

Circuit Rule 36. *Tinnus Enterprises, LLC v. Telebrands Corp.*, Nos. 2017-1175, 2017-1760, 2017-1811 (Fed. Cir. Jan. 16, 2018).

[5] The PTAB found that the asserted claims were not proven invalid by the "preponderance of the evidence" standard, whereas the jury applied the higher "clear and convincing" standard. Docket Nos. 626-1, 626-2; Docket No. 543.

a public release date."). Moreover, Plaintiffs' motion to compel was "a direct result of Telebrands' failure to be forthright with Plaintiffs and engage in good faith negotiations." *Id.* at 4. The Magistrate Judge concluded that "[t]hese types of tactics waste resources and necessarily prolong the resolution of discovery disputes" and awarded costs and fees under Federal Rule of Civil Procedure 37. *Id.* at 4–5.

Later, Plaintiffs were forced to file a motion to compel or modify the Protective Order because Telebrands' refused to produce documents related to the PGR proceedings. Docket No. 272. This caused the Court to sift through numerous individual disputes, all of which resulted in Defendants ultimately agreeing to de-designate material, the Court ordering material to be de-designated or the Court modifying the Protective Order. Docket No. 275. These disputes would have been avoided if Defendants had simply engaged in good-faith negotiations with Plaintiffs. Thus, this factor favors enhanced damages.

### c. Re-argument of Issues Already Decided by the Court

Perhaps the most needless effort expended concerned disputes over the meaning of the "common face" and "second end." The Court first construed these terms in April 2016 in *Tinnus I*. Case No. 6:15-cv-551, Docket Nos. 181, 200. Despite the prior constructions, Telebrands and the Retailers[6] continued to dispute the meaning of these terms through the preliminary injunction dispute and another full claim construction hearing.

At the preliminary injunction stage, the Court heard testimony from Dr. Kamrin, and found that Dr. Kamrin's proposal overstated the Court's prior construction of "common face." Docket No. 99 at 12. The Court therefore maintained its constructions and rejected Defendants' narrow interpretation. *Id.* With respect to "second end," the Court resolved a dispute between the experts

---

[6] Of the Defendant Retailers, only Bulbhead was a party to *Tinnus I*.

and clarified its prior construction. *Id.* at 13–14. Based on these constructions, the Court found a likelihood of success on the merits as to infringement of claim 1 of the '749 Patent. *Id.*

Thereafter, Defendants continued to dispute the meaning of these claims. Docket No. 200 at 10–14; Docket No. 225. The Court conducted another claim construction hearing and re-heard arguments already considered. Docket No. 199. Ultimately, the Court maintained its prior constructions. Docket No. 200 at 10–14; Docket No. 225.

Despite the prior rejections, Dr. Kamrin still advanced the same opinions. As a result, Plaintiffs moved to strike Dr. Kamrin's opinions (Docket No. 329). The Court agreed, and struck numerous paragraphs of Dr. Kamrin's report that contained irrelevant opinions on the meaning of "common face" and "second end." *Id.* The Court warned that "should Dr. Kamrin submit a supplemental report that again so blatantly violates the Court's claim construction order or attempts to provide continued claim construction opinion, the Court will not hesitate to award sanctions in the form of an adverse inference and/or attorney's fees." *Id.* at 7.

Rather than offering new argument or evidence, Defendants found creative ways to reassert their rejected positions. The Magistrate Judge warned that Defendants' positions were preserved for appeal and that they need not continue to re-argue or disagree with the Court. *See* Docket No. 384 at 7 n.1 ("Dr. Kamrin may consider his claim construction arguments preserved for appellate purposes without the need to further articulate those opinions in his supplemental report."). Because Defendants repeatedly attempted to circumvent the Court's orders and drove up the expense of litigation, this factor favors enhanced damages.

### d. Continued Assertion of Claims and Defenses

Plaintiffs contend that Defendants consistently took untenable positions, such as non-infringement of the '282 Patent and inequitable conduct by Plaintiffs. Docket No. 578 at 13.

Defendants contend that their stipulation to infringement of the '282 Patent was an effort to narrow the case and that dropping the inequitable conduct claim did not burden Plaintiffs. Docket No. 589 at 21–22.

The Court appreciates parties' efforts to streamline claims and defenses as cases approach trial and such efforts should not normally form a basis for enhanced damages. However, the circumstances were such that the belated disposal of issues led to a significant waste of resources. Telebrands knew its inequitable conduct claim was weak because it barely survived Plaintiffs' initial motion to dismiss. *See* Docket Nos. 55, 100 ("Nothing in the factual allegations infers the omission of material information or the specific intent to deceive the PTO[;]" however, "[t]aking the allegations to be true, Telebrands has alleged facts to infer the possibility of a failure to properly notify the Examiner of the PGR decision" and "the Court finds that the counterclaim as to inequitable conduct based on the notice of the PGR decision has been sufficiently pled and is entitled to some discovery"); *see also* Docket No. 133 (Order adopting R&R (Docket No. 100)). One year later, Plaintiffs filed a successful motion for summary judgment of no inequitable conduct (Docket No. 332), and the Magistrate Judge found the claim to be baseless. Docket Nos. 386, 413. Defendants did not object. *See* Docket No. 386.

Finally, while Defendants' only non-infringement defense was based on interpretations of "common face" and "second end," which were absent from the asserted claims of the '282 Patent, Defendants refused to stipulate to infringement of the '282 Patent until trial. Indeed, this occurred long after the Court granting its preliminary injunction. Docket Nos. 99, 142.

For these reasons, this factor weighs in favor of enhanced damages.

### e. Trial Conduct

On the eve of trial, Defendants filed four motions and trial briefs on issues already resolved by the Court. *See* Docket Nos. 511, 512, 513, 514, 515, 547 (11/14/17 A.M. Tr.) at 23:3–8 (Plaintiffs' counsel noted "Judge Love just dealt with this two weeks ago when the Defendants filed an emergency motion to file another summary judgment . . . motion on this ruling[,]" and the Court noted that it "was denied").

Defendants then flagrantly ignored the Court's repeated ruling that mention of the PTAB or the PGR proceedings were excluded from evidence and not to be discussed in front of the jury. *See, e.g.*, Docket No. 453 (Granting Plaintiffs' Motion *in Limine* No. 1, excluding reference to administrative proceedings before the PTAB). Defendants violated this order during examination of the first witness on the first afternoon of trial, questioning Mr. Malone on an article that was not admitted into evidence. 11/14/17 P.M. Tr. at 127:15–130:20. At that time, the Court warned Defendants' counsel that use of the article was a violation of the Court's ruling:

> THE COURT: I'm troubled by this exhibit … this article is not about the PTO. This article is about the PTAB. And when you get over here, all this information that is highlighted relates to PTAB defects.
>
> And so I don't quite know how Mr. Dunlap was going to redirect his witness on that. But I want you to know I understand what happened here. And if there's an explanation for what occurred, I'm – I'm more than happy to hear it now. But I think this article clearly refers to what the PTAB does.
>
> * * *
>
> Well, I guess my concern about it is, you know, I think everybody understands PTAB proceedings are not going to come into this trial.

11/14/17 P.M. Tr. at 143:24–144:9; 144:25–145:2.

Two days later, Defendants' counsel attempted to solicit testimony from Telebrands' Chief Operating Officer about a declaration he submitted in the PGR proceedings. 11/16/17 P.M. Tr. at

11:24–18:9.  The Court sustained Plaintiffs' objection and reminded counsel that "[w]e're not going there," but Defendants' counsel proceeded to solicit similarly prohibited testimony. *Id.* at 18:15–19:5. Plaintiffs objected again, and the Court again sustained the objection, directing the jury to disregard the statements. *Id.* at 19:6–11. Immediately thereafter, Defendants' counsel solicited testimony in further violation of the Court's repeated rulings. *Id.* at 19:24–20:4. Once again, Plaintiffs objected and the Court sustained the objection and ordered the jury to disregard the testimony. *Id.* at 20: 5–8. Undeterred, Defendants' counsel continued to solicit the same prohibited testimony, and the Court sustained Plaintiffs' objections three more times. 11/16/17 P.M. Tr. at 20:10–21:14. Defendants' flagrant disregard for the Court's rulings is inexcusable.

Defendants continued to open the door to prohibited issues throughout trial. On the morning of November 17, 2017, Defendants raised several objections to Mr. Ratliff's testimony on lost profits. One objection pertained to his reliance on Dr. Perryman's testimony for sales during a time period when other balloon products were being sold.[7] *See* 11/17/17 A.M. Tr. at 9:12–15 ("MR. UNDERHILL: Okay. And the -- the huge objection we have is that Perryman's testimony was based on price erosion that was occurring with respect to the Balloon Bonanza product."). After discussion, Plaintiffs' counsel agreed to remove certain portions of Mr. Ratliff's slide deck. Defendants thus withdrew their objection. *See Id.* at 9:18–10:4.

However, on cross-examination, Defendants' counsel violated their own objection and purposely solicited testimony from Mr. Ratliff on the objected-to information. *See id.* at 79:15–80:14 ("Q: You testified about Dr. Perryman's analysis with respect to online sales; is that correct?" … "So your testimony that you gave was not confined to his analysis with respect to online sales in 2016; is that correct?" … "Okay. And so your testimony was referring to price

---

[7] Dr. Perryman was a damages expert hired by Plaintiffs. While he did not testify at trial, Plaintiffs' damages expert, Mr. Ratliff, relied on some of Dr. Perryman's analysis at trial.

erosion with respect to a different Telebrands product?"). The Court admonished Defendants' counsel for this behavior:

> THE COURT: . . . I think if there was any door open on this issue, Mr. Underhill, you opened the door, and now you're complaining about it. …This did not come up on direct. You opened the door, and now you're complaining about it. … I do want to let you know, Mr. Underhill, in light of this conduct and the previous conduct that we've repeatedly discussed throughout this trial, I am on the verge of reducing your closing argument by 20 minutes.

11/17/17 A.M. Tr. (Sealed Portion No. 4) at 90:10–22.

Defendants' course of conduct throughout this case weighs in favor of enhancement. At nearly every stage of this litigation, Defendants took untenable positions and created unnecessary and wasteful work for the parties and the Court. This type of behavior is sanctionable and, indeed, did result in sanctions by the Court. *See i4i*, 598 F.3d at 859 (Fed. Cir. 2010) (finding litigation misconduct typically refers to "bringing vexatious or unjustified suits, discovery abuses, failure to obey orders of the court, or acts that unnecessarily prolong litigation.")

### D. Defendants' Size and Financial Condition

Plaintiffs argue that although Telebrands is a privately held company, discovery revealed $█████ in revenue and $██████ in profit. Docket No. 578 at 16, citing November 9, 2017 Iyer Dep. Tr. at 19:7–20:17. Plaintiffs argue that Telebrands is a leader in the television infomercial market and that the Retailer Defendants are all large corporations with substantial revenue. Docket No. 578 at 16. Telebrands maintains that it is a small company with only 90 employees and that its gross margin as to the accused products was ██████████████ ███████████ Docket No. 589 at 24.

After considering the parties' assertions, the Court finds that this factor is neutral.

E. *Closeness of the Case*

Plaintiffs argue that this was not a close case because Defendants presented no legitimate infringement defense for either of the patents-in-suit. Docket No. 578 at 17. For the same reasons discussed with respect to their litigation conduct, Defendants argue that this case was close. Docket No. 589 at 28.

This was not a close case. At the outset of this action, the Court held evidentiary proceedings on Plaintiffs' motion for a preliminary injunction and found that Plaintiffs had shown a likelihood of success on the merits. Docket Nos. 99, 159. From that time until the time of trial, Defendants did not pursue any new defenses. Rather, Defendants continued to re-argue claim construction positions, which the Court repeatedly rejected. Regardless, Defendants never proffered a non-infringement position for the '282 Patent and did not contest infringement at trial. As to invalidity, Defendants only pursued defenses that the Court previously considered and found unpersuasive. Docket Nos. 99, 159. Defendants relied on PGR petitions, but those petitions were instituted on obviousness and were ultimately unsuccessful. Docket Nos. 626-1, 626-2.

At the end of the six-day trial, the jury deliberated for just two-and-a-half hours before finding that Defendants infringed the patents-in-suit, that the patents-in-suit were valid and that Defendants' infringement was willful. Docket No. 544; 11/21/17 Tr. at 180:11–13. *See SSL Servs., LLC v. Citrix Sys., Inc.*, No. 08-CV-158-JRG, 2012 WL 4092449, at *5 (E.D. Tex. Sept. 17, 2012), *vacated and remanded on other grounds*, 769 F.3d 1073 (Fed. Cir. 2014) (finding this factor favored enhancement where the jury found willful infringement, that the patent was not invalid and awarded a $10 million lump-sum award).

For these reasons, the Court finds that this factor favors enhancement of damages.

*F. Duration of Defendants' Misconduct*

Plaintiffs argue that although the infringement period was shortened by the preliminary injunction, the duration of infringement was significant. Defendants continued selling the infringing products from the time the Magistrate Judge recommended granting the preliminary injunction in July 2016 (Docket No. 99) until the injunctions were entered in October 2016 (Docket No. 159) and February 2017 (Docket No. 224). Docket No. 578 at 17. Defendants argue that Telebrands' infringement was only around nine months, and they attempted a design-around during that time. Docket No. 589 at 28.

Although the period of infringement is nine months, the parties' history leading up to this point is relevant and significant. As discussed, Telebrands knew of Mr. Malone's related '066 Patent as early as June of 2015, when Plaintiffs first sued Telebrands. Case No. 6:15-cv-551, Docket No. 1. The preliminary injunction in *Tinnus I* caused Telebrands to redesign the Balloon Bonanza product and create the Battle Balloons product. 11/16/17 A.M. Tr. at 29:13–31:13.

The Court denied finding Telebrands in contempt based on the redesign efforts. Case No. 6:15-cv-551, Docket Nos. 144, 166. However, the redesign was superficial, and the Court determined that such redesign was not likely to change the outcome. Docket Nos. 99, 159. The Court determined that a subsequent redesign (resulting in the third generation of copycats, Easy Einstein Balloons) was not likely to escape an infringement finding. Case No. 6:17-cv-170, Docket No. 89. However, Telebrands continued selling the products even after the injunction recommendations. 11/15/17 P.M. Tr. at 32:19–33:1. *See PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, No. 5:11-CV7-61 (GLS/DEP), 2016 WL 6537977, at *8 (N.D.N.Y. Nov. 3, 2016), *appeal dismissed*, No. 16-4106, 2016 WL 10655596 (2d Cir. Dec. 12, 2016) ("continuing

to sell the infringing products after notice of infringement and during the course of litigation supports enhancement.").

On this record, the Court finds that this factor weighs slightly in favor of enhancement.

### G. Remedial Action by Defendants

Plaintiffs argue that Defendants took no remedial action once they were on notice about infringement. Docket No. 578 at 18. According to Plaintiffs, Telebrands made no effort to stop selling the accused products after the Court's rulings, and Telebrands attempted to conceal the development of its Easy Einstein Balloon products. *Id.* Further, Plaintiffs argue that the design-around in this case was spurred only by the recommendation for a preliminary injunction. *Id.* Defendants simply argue that they attempted design-arounds during the course of litigation. Docket No. 589 at 28.

As discussed above, the design-arounds were still likely to infringe the relevant patents-in-suit. Docket Nos. 99, 159; Case No. 6:17-cv-170, Docket No. 89. Telebrands' CEO, Mr. Khubani, admitted that the Battle Balloons design-around was not initiated by Telebrands' knowledge of Mr. Malone's original invention but rather spurred by the injunction recommended in *Tinnus I.* *See* 11/16/17 A.M. Tr. at 31:8–13 ("Q. Okay. Isn't it true, Mr. Khubani, that Telebrands didn't begin to develop Battle Balloons, the second product, until after a Court order recommended to the District Judge that told you to stop selling Balloon Bonanza; isn't that true? A. Yes."). Moreover, Telebrands attempted to conceal its redesign efforts—conduct for which it was sanctioned, as discussed above. Docket No. 223. Again, the Court found that this redesign was likely to infringe the patents-in-suit. Case No. 6:17-cv-170, Docket No. 89. Because Defendants failed to take remedial action and only took preventative action when forced by Court order, the Court finds this factor weighs in favor of enhancement.

*H. Defendants' Motivation for Harm*

Plaintiffs argue that Telebrands' copying of their product and repeated attempts to introduce new infringing products in the face of injunctions show that Telebrands undertook these measures to harm Plaintiffs. Docket No. 578 at 19. Defendants argue that they were only motivated to sell the accused products to help their own businesses. Docket No. 589 at 29.

Defendants certainly had a profit-based motivation to continue selling the infringing products. However, because Telebrands and Zuru were the only two competitors in the market, any gain by Defendants necessarily came at Plaintiffs' expense. Moreover, the jury found that the infringing acts were willfully committed. For these reasons, this factor slightly favors enhancement of damages.

*I. Whether Defendants Attempted to Conceal Their Misconduct*

As previously noted, Plaintiffs argue that Defendants attempted to conceal Easy Einstein products and the development of their Battle Balloons products. Docket No. 578 at 19. Defendants contend that they disclosed their Battle Balloons products prior to the issuance of the patents-in-suit and that they properly disclosed their motivations to design-around. Docket No. 589 at 29.

While the circumstances regarding the development of the infringing Battle Balloons products are not clear,[8] Telebrands was not forthright in its development of its Easy Einstein product as a design-around. As discussed above, Plaintiffs had to move to compel the production of this information. Docket No. 219. Despite the injunction, Telebrands refused to produce any information or a prototype. Docket No. 223. Telebrands argued that the Easy Einstein balloons were not relevant and had not yet been publicly released. The Magistrate Judge rejected those

---

[8] The parties dispute Dr. Kamrin's involvement in the development of the Battle Balloons products and whether Defendants concealed this development under the guise of attorney-client privilege. Docket No. 578 at 19; Docket No. 589 at 29.

arguments and awarded fees and costs. Docket No. 223 at 4–5. This Court has since enjoined sales of the Easy Einstein balloons. Case No. 6:17-cv-170, Docket No. 89.

Given the unjustified withholding of relevant information, the Court finds this factor weighs in favor of enhancement.

*J. The Retailer Defendants*

While the majority of the foregoing discussion focuses on Telebrands' conduct, the Retailers were either directly involved or complicit in a number of Telebrands' actions. The Retailers joined in a number of the motions discussed above; shared defense counsel throughout this litigation and at trial; shared experts with Telebrands (including Dr. Kamrin); and asserted the same claims and defenses. All Retailers are also indemnified by Telebrands.

The Retailers took additional actions that warrant enhanced damages. At the injunction hearing in this matter, the Court inquired whether the Retailers would agree to be bound by any injunction issued against Telebrands. *See* June 17, 2016 Preliminary Injunction Tr. at 8:12–20. The Court indicated that the appropriate course would be for the Retailers to abide by any rulings made as to Telebrands and counsel for the Retailers indicated they would discuss that matter. *See id*. at 9:1–7. The Retailers refused to be bound by the injunction. As a result, the Court conducted additional injunction proceedings and issued a separate injunction against Retailers. Docket No. 224.[9] The Retailers unnecessarily prolonged these proceedings, which only concerned approximately 200,000 units of remaining balloon inventory. Docket No. 224 at 3.

The Retailers continued selling inventory after Telebrands was enjoined and after the Magistrate Judge recommended an injunction as to the Retailers. *Id*. The Retailers never gave a definitive inventory account and refused to produce discovery on the same. *See id*. ("the Retailer

---

[9] This injunction was later upheld by the Federal Circuit. *Tinnus Enterprises, LLC et al. v. Telebrands Corp. et al*, Nos. 2017-1175, 2017-1760, 2017-1811 (Fed. Cir. Jan. 16, 2018).

Defendants have produced no discovery to date on the state of their inventory . . . none of the Retailers' submissions include accounts for the inventory, documents that should exist in the ordinary course of business.").

The Court denied a separate motion to stay the case as to the Retailers. *See* Docket No. 198 at 2–3 (reasoning that "[t]he fact that the Court was required to consider whether injunctive relief was appropriate as to the Retailers' stocked inventory—an issue *separately* raised by the Retailers in their disagreement to be bound by the injunction against Telebrands—demonstrates that the claims against the Retailers are not merely peripheral" and finding that "[t]he refusal to cooperate in forthright discovery shows that justice would be better served by permitting Plaintiffs to seek appropriate relief against the Retailers.").

After the injunction against the Retailers, at least one Retailer continued to sell the accused products. *See, e.g.*, Docket No. 323. While the Court commends the parties for resolving this matter without further Court intervention, communication breakdown between the parties caused the Court to facilitate the in-person meet and confer that resolved the issue. *See* Docket No. 344 ("[t]his motion is similar to other recent motions before the Court insomuch as a proper meet and confer would likely avoid unnecessary court intervention on this matter" . . . "the Court will undertake the consideration of whether any sanction may be appropriately awarded for a party's unreasonable tactics in attempting to resolve this matter.").

K. *Conclusion*

The Court has discretion to "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. This case was initiated by an attempt to design around Plaintiffs' invention. However, the "design-around" was not a substantive alteration but a cosmetic change to a product that was enjoined. Ultimately, although the Court finds that this conduct does not

merit a full trebling of damages, given Defendants' continued litigation misconduct and other actions described herein, the Court finds a significant enhancement is appropriate. *See Whirlpool Corp., No.* 2:15-cv-1528-JRG, 2018 WL 1536874, at *10 (enhancing damages in the amount of $3.8 million after considering egregious infringement behavior); *compare ReedHycalog UK, Ltd. v. Diamond Innovations Inc., No. 6:08-CV-325, 2010 WL 3238312, at *9 (E.D. Tex. Aug. 12, 2010)* (trebling damages where the court found that seven of the nine *Read* factors weighed heavily in favor of enhancement). Having reviewed the *Read* factors and having considered the totality of the circumstances in this case, for the reasons discussed, the Court finds an enhancement of 100 percent is appropriate for both Telebrands and the Retailers.

Because the jury awarded $12,250,000 as a result of Telebrands' infringement, this award shall be increased to **$24,500,000**. As to the Retailers' infringement, the jury awarded $67,000. As explained below, the Court is granting the Defendants' JMOL regarding the willfulness of Defendant Retailer Fry's. Since the Plaintiffs were seeking $13,756 for "unique" sales attributable to Fry's (Docket No. 579 at 6), the amount to be enhanced is $53,244. Accordingly, the final damages awarded from the Retailers is **$106,488**.

## II.     Plaintiffs' Motion for Apportionment of Damages as to Retailer Defendants (Docket No. 579)

Plaintiffs request that the Court re-apportion the damages attributed to the Retailers. Docket No. 579. Specifically, Plaintiffs assert that a "disagreement" has arisen as to the amount of reasonable royalties for which each Retailer is liable. *Id.* at 2. Plaintiffs contend that each Retailer Defendant is liable for a reasonable royalty on every unit of the infringing products it sold, which totals just under $1 million in the aggregate. *Id.* Plaintiffs cite testimony and a demonstrative exhibit (PTX-254) to show that their damages expert presented a damages model involving "overlapping" and "unique" sales. *Id.* at 5–6. Based on the evidence, Plaintiffs argue

that the Court should "clarify" that the Retailers actually owe the "Total Adjusted Royalty," which would include "overlapping" sales in the amount of $981,623. *Id*. at 6–7. Lastly, Plaintiffs contend they "anticipated" this concern and raised it with the Court. *Id*. at 4.

In response, Defendants argue that the jury determined that the Retailer defendants' liability should be capped at $67,000, according to Question 4c of the verdict form. Docket No. 587 at 2. Defendants point out that PTX-254 never went back to the jury because it was a demonstrative exhibit. *Id*. They also argue that Plaintiffs' request amounts to asking the Court to "act as a substitute for the jury" and award increased damages. *Id*. Finally, Defendants contend that Plaintiffs did not raise this concern to the Court because they argued for a different format for the verdict form during the jury charge conference. Docket No. 587 at 3.

The Court will not disturb the verdict form. Question 4(c) was unambiguous. *See* Verdict Form, Docket No. 543 at 5. ("**Question 4c:** What sum of money do you find from a preponderance of the evidence would fairly and reasonably compensate Plaintiffs for the Retailers' infringement through the time of trial? **Answer in dollars and cents:** $67,000"). Moreover, Plaintiffs have not cited a case in which a court altered the jury's final verdict form in the manner requested. The Court will not assume that the jury intended something other than the number it listed.

In addition, Plaintiffs had every opportunity during the charge conference to ask the Court to modify the verdict form but did not do so. Instead of asking the Court to break out the award according to each individual retailer, Plaintiffs sought to combine the question of damages as to Telebrands and the Retailers into a *single question*.[10] *See* 11/20/17 P.M. Tr. at 145:1–3.

---

[10] This request made little sense because the Court consolidated the case against Telebrands (6:16-cv-33) and the case against the Retailers (6:16-cv-34) for trial, which requires a separate damages questions for each case.

Regardless, the time to raise this issue was during the charge conference, not in post-trial briefing.[11]

*See Flexuspine, Inc. v. Globus Med., Inc.*, 879 F.3d 1369, 1375 (Fed. Cir. 2018) (finding that defendant's lack of objection to the verdict form prior to the jury's deliberations waived submission of invalidity as a counterclaim).[12]

Thus, Plaintiffs' Motion for Apportionment of Damages as to the Retailers (Docket No. 579) is **DENIED**.

### III. Defendants' Renewed Motions for Judgment as a Matter of Law and for a New Trial (Docket Nos. 582, 702)

Judgment as a matter of law is only appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008).

Under Fifth Circuit law, courts are "especially deferential" to a jury's verdict and will not reverse jury findings that are supported by substantial evidence. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). The Court should "uphold a jury verdict unless the facts and inferences point so

---

[11] Even after Plaintiffs' comments during the Court's charge conference on 11/20/17 described above, Plaintiffs again sought the same relief in the form of a single damages question on the morning of 11/21/17. *See* 11/21/17 A.M. Tr. at 177: 1–17.

[12] Plaintiffs are in a more difficult position than the appellant in *Flexuspine*. Whereas in *Flexuspine* the appellant failed to object, the Plaintiffs in this case argued the *opposite* of what they now seek. *Flexuspine*, 879 F.3d at 1375.

strongly and so overwhelmingly in favor of one party that reasonable men could not arrive at any verdict to the contrary." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 366 (5th Cir. 2001); *see also Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005). However, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 577 (5th Cir. 2003)).

In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 451 (5th Cir. 2013). Although a court must review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 337 (5th Cir. 2001). However, a court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury. *See id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000)). The Court gives "credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Arismendez*, 493 F.3d at 606.

In Defendants' Renewed Motions for Judgment as a Matter of Law, Defendants make four main arguments. Docket Nos. 582, 702. First, Defendants argue that both patents-in-suit are invalid as a matter of law. *Id.* at 8–23. Second, Defendants argue that no reasonable jury could find infringement of the '749 Patent. *Id.* at 23–28. Third, Defendants contend that no reasonable jury could find willful infringement of either patent. *Id.* at 28–35. Fourth, Defendants assert that Plaintiffs cannot recover lost profits, including price erosion damages and excess freight charges.

*Id.* at 35–46; *see also* Docket No. 702 (supplemental JMOL specifically addressing the issue of lost profits).

In response, Plaintiffs argue that the jury's verdict as to invalidity for both patents should stand. Docket No. 588 at 9–23. In addition, Plaintiffs argue that there was substantial evidence to support the jury's finding of infringement of the '749 Patent. *Id.* at 23–27. Plaintiffs further argue that the jury heard sufficient evidence to support its willfulness finding. *Id.* at 27–37. Lastly, Plaintiffs assert that a reasonable jury could (and did) find that Zuru Ltd. incurred lost profits for the sales it would have made. *Id.* at 38–51; *see also* Docket No. 709.

A. *Invalidity*

a. **Obviousness**

A patent is obvious "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C.A. § 103. "Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012) (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966)). "A party seeking to invalidate a patent on the basis of obviousness must demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Id.* (internal quotations omitted).

Defendants have not met their burden as to any of the claims because Plaintiffs provided sufficient evidence for a reasonable jury to find that the claims were not obvious. For example, as

to the differences between the claims and the prior art, Plaintiffs' technical expert (Dr. Kudrowitz) testified that the "sufficiently limited" limitation was lacking in all prior art references, including a specific discussion about the Donaldson and Lee references. 11/20/17 P.M. Tr. at 17:3–20:3. Dr. Kudrowitz also explained generally how the Donaldson and Lee references work. *See id.* In addition, the jury also heard substantial evidence, including testimony from Dr. Kudrowitz, that a motivation to combine was lacking. 11/20/17 P.M. Tr. at 20:11–21:23.

Plaintiffs also presented substantial evidence on objective indicia. "[O]bjective indicia may often be the most probative and cogent evidence of nonobviousness in the record." *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997). For example, the jury heard substantial evidence on copying, including communications between Telebrands employees and a contractor explaining how they copied Plaintiffs' Bunch O Balloons product after finding it on Kickstarter. *See* 11/15/17 P.M. Tr. at 11:13–26:18, 42:6–9; *see also* PTX 83, 87, and 137; *see also Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1285–86 (Fed Cir. 2000) (explaining how copying can help show an invention is nonobvious). As to commercial success, there was substantial evidence as to the success of both the Plaintiffs' Bunch O Balloons product and the accused infringer, Battle Balloons. *See* PTX 46; 11/15/17 A.M. Tr. at 75:08–25, 76:01–25 (explaining success of Bunch O Balloons). *See* PTX 147, 149, 150, 171, 304; 11/16/17 A.M. (Sealed Portion No. 3) at 13:4–11, 14:25, 15:01–04, 16:04–08, 23:19–21, 24:14–19 (explaining success of Battle Balloons). The jury also heard substantial evidence as to industry praise, including an appearance on the *Today Show*. 11/14/17 P.M. Tr. at 89:11–14, 134:15–24; 11/15/17 A.M. Tr. At 77:03–23. The jury heard substantial evidence regarding long-felt need, including testimony that the invention solved the problem of how to fill and tie multiple balloons at once. 11/14/17 P.M. Tr. at 85:24–86:12; 11/15/17 Tr. at 11:1–12; 11/16/17 P.M. Tr. at 129:14–

17; *see also* 131:05–06 (Defendants conceded all non-infringing alternatives at a bench conference).

The Court also notes that Defendants' expert, Dr. Kamrin, seemingly did not account for objective indicia before reaching his ultimate conclusion on obviousness. For example, Dr. Kamrin testified that "secondary considerations were not discussed today" and disclaimed any analysis of specific objective indicia. 11/17/17 P.M. Tr. at 126:3–19 & 128:14–18. There is at least some Federal Circuit case law suggesting that it may be inappropriate to grant Defendants' JMOL for obviousness since Dr. Kamrin's testimony did not evaluate these objective factors. *See InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1352 n.8 (Fed. Cir. 2014) (explaining that when "an expert purports to testify, not just to certain factual components underlying the obviousness inquiry, but to the ultimate question of obviousness, the expert must consider all factors relevant to that ultimate question").

Accordingly, for the reasons above, Defendants' JMOL for invalidity based on obviousness is **DENIED**.[13] Defendants have not shown by clear and convincing evidence that any of the claims are obvious.

### b. Written Description

Under 35 U.S.C. § 112(a), a patentee satisfies the written description requirement by "convey[ing] with reasonable clarity to [a POSA] that, as of the filing date sought, he or she was in possession of the invention." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563–64 (Fed. Cir. 1991). Whether the written description requirement has been satisfied is a question of fact. *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed. Cir. 1998). A district court "must accord deference to

---

[13] Before the briefing completed, the PTAB issued final written decisions upholding the validity of the patents-in-suit. Docket No. 626. The parties then submitted additional briefing on whether PGR estoppel should apply. Docket Nos. 645, 649. Given the Court's ruling that Defendants have not met their burden on JMOL, it is not necessary to reach the PGR estoppel issue at this time.

the jury findings on written description" and "not substitute its judgment for that of the fact finder." *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000). Finally, "under proper circumstances, drawings alone may provide a 'written description' of an invention as required by § 112." *Vas-Cath*, 935 F.2d at 1565.

Defendants contend that claims 1–3 of the '282 Patent are invalid because the patent's written description does not support the requirement that two or more of the containers press together when unfilled. Docket No. 582 at 21. Plaintiffs respond that the jury heard substantial evidence to support its finding that the patent was valid. Docket No. 588 at 21–23.

Here, a reasonable jury could find that the claims are not invalid for written description. Dr. Kudrowitz, testified that Figure 1 of the '282 Patent expressly shows containers in an unfilled state. 11/20/17 P.M. Tr. at 64:20–23, 65:15–20. Moreover, the jury heard evidence that the depicted containers *touch* in the unfilled state. Dr. Kudrowitz testified at trial that a POSITA looking at Figure 1 would "assume" that the unfilled containers are touching and it would have to be an "optical illusion" for them to not touch. 11/20/17 P.M. Tr. at 35:24–36:4. Dr. Kudrowitz also testified that Figure 2 further supports an adequate written description. 11/20/17 P.M. Tr. at 36:5–37:20.

Accordingly, for the reasons above, Defendants' JMOL for invalidity based on adequate written description is **DENIED**.

### B. Non-infringement

Next, Defendants argue that no reasonable jury could find infringement of the '749 Patent. Docket No. 582 at 23. Defendants argue that the accused products have neither (1) a "plurality of holes extending through a common face of the housing at a second end," nor (2) a "plurality of flexible tubes, each hollow tube attached to the housing at a respective one of the holes at the

second end of the housing."  Docket No. 582 at 23 (citing '749 Patent at 6:36–42).  In response, Plaintiffs argue the motion should be denied because the jury heard substantial evidence to support its infringement finding.  Docket No. 588 at 23.

There is sufficient evidence to support the jury's infringement finding as to the '749 Patent, including testimony by Dr. Kudrowitz, the '749 Patent itself and the accused products.  11/16/17 P.M. Tr. at 87:8-120:2; PTX 2, PTX 40.  Applying the Court's claim construction, Dr. Kudrowitz testified how each element of claim 1 was present in the accused products and concluded by providing his opinion that the accused products infringe.  11/16/17 P.M. Tr. at 104:11–1120:2.  Dr. Kudrowitz testified on both direct and cross that the claim language requires a "plurality of holes extending through a common face of the housing."  PTX 2 at 6:37–39; 11/16/17 P.M. Tr. at 111:13–112:19 ("And by the Court's definition, a shared outer surface through which a plurality of holes extend, all of these holes are extending through a shared outer surface of the housing.  There's—there's really no debate about that."); 143:3–4 (clarifying on cross that two or more holes must extend through the "common face of the housing" not just any common face); 143:8–11 (same).  Dr. Kudrowitz also testified that he disagreed with Dr. Kamrin as to the "second end."  11/16/17 P.M. Tr. at 112:20–24 (explaining Defendants' position as "arguing that the second end is only this flat surface right here, that flat tip").  Dr. Kudrowitz went on to explain why—under the Court's construction—he believed Dr. Kamrin's argument was incorrect.  *Id*. at 113:10–15 ("the Court defined second end as, an outer limit of the housing distinct from the first end.  There's nothing in that about linear opposites in the definition.").  The jury heard substantial evidence on the issue to support its finding.

Accordingly, for the reasons above, Defendants' JMOL for non-infringement of the '749 Patent is **DENIED**.

*C. Willfulness*

For the reasons stated with respect to Plaintiffs' Motion for Enhanced Damages (Docket No. 578), the Court **DENIES** the JMOL as to willfulness for Telebrands and all Retailers except Fry's Electronics. As detailed above, the jury heard sufficient evidence of Telebrands' willful infringement, including emails between Telebrands employees and an outside consultant describing how Telebrands planned to copy Plaintiffs' product. *See* 11/15/17 P.M. Tr. at 11:13–26:18, 42:6–9; *see also* PTX 83, PTX 87, PTX 137. As to the Retailers, the jury heard sufficient evidence to support a willfulness finding: (1) the Retailers, like Telebrands, admitted at trial that Battle Balloons infringes the '282 Patent;[14] (2) the Retailers continued selling Battle Balloons after the lawsuit was filed (and did not stop until the Court entered a preliminary injunction)[15]; and (3) all Retailers are indemnified by Telebrands.[16]

However, as to Fry's Electronics, the JMOL for willfulness is **GRANTED**. While the jury heard from a representative from every other Retailer, the jury never heard any testimony from any witness from Fry's Electronics. Therefore, the jury did not hear sufficient evidence to find willfulness. As detailed in the enhanced damages section, the damages as a result of Fry's Electronics' infringement must be excluded from the enhancement.

*D. Lost Profits*

35 U.S.C. § 284 sets the floor for "damages adequate to compensate for [patent] infringement" at "a reasonable royalty for the use made of the invention by the infringer." The

---

[14] *See* 11/16/17 A.M. Tr. at 53:06–54:21; 11/16/17 P.M. Tr. at 41:03–19; 11/16/17 P.M. Tr. at 62:17–64:21; 11/16/17 P.M. Tr. at 72:09–73:07.

[15] *See* 11/16/17 A.M. Tr. at 61:25–63:01, 76:22–23, 80:12–21; 11/16/17 P.M. Tr. at 48:07–16; 11/16/17 P.M. Tr. at 62:10–16, 66:06–15; 11/16/17 P.M. Tr. at 75:05–10.

[16] *See* 11/16/17 A.M. Tr. at 59:14–23; 11/16/17 P.M. Tr. at 54:09–55:12; 11/16/17 P.M. Tr. at 66:19–24; 11/16/17 P.M. Tr. at 75:11–20.

burden of proving damages falls on the patentee. *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003). Section 284 has been interpreted as "expansive" in what may be recovered to compensate for infringement. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995). "[T]he general rule for determining actual damages to a patentee that is itself producing the patented item is to determine the sales and profits lost to the patentee because of the infringement." *Id.* at 1545. "To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." *Id.*

### a. Background

The parties have a long history of disputing damages in this action. Prior to trial, the parties filed numerous motions regarding lost profits. *See* Docket Nos. 334, 335, 372, 395, 422, 423, 515. Both the Magistrate Judge and the undersigned dealt with these motions extensively through multiple orders and hearings. *See* Docket Nos. 403, 405, 406, 470, 483, 484, 485, 496.

The dispute with respect to lost profits first arose late in the case when Defendants filed a motion for summary judgment that Plaintiffs were not entitled to lost profits damages. *See* Docket No. 334. Defendants argued that Plaintiffs' Bunch O Balloons products were actually sold by Zuru Inc., which was not a party to the suit, and that the named Plaintiff Zuru Ltd. could not recover from those sales. *Id.* Plaintiffs responded and filed a motion to join all Zuru entities. *See* Docket No. 372. The Zuru entities also filed a motion to intervene. *See* Docket No. 395.

The Magistrate Judge concluded, and the Court agreed, that Zuru Ltd. should not recover lost profits for sales made by other Zuru entities, such as its parent company Zuru Inc. *See* Docket No. 406, 484. This recommendation eliminated many of the sales Plaintiffs planned to argue at trial, but left intact those sales made to Wal-Mart as the evidence presented suggested a question of fact remained with respect to those sales. *See id.* at 8 (finding that the "evidence, which includes

purchase orders and invoices by ZURU Ltd., raises a material factual dispute regarding whether ZURU Ltd. made sales to retailers in the United States.").  The Magistrate Judge also ordered that the motion to join Zuru Inc. and the motion for Zuru Inc. to intervene be denied.  *See* Docket No. 407.  Plaintiffs then filed a Motion to Reconsider but the Court denied the motion and found that Zuru Inc. did not have exclusive rights to collect damages.  Docket No. 485.

Defendants continued to reargue the issue of lost profits and filed an emergency motion and time-barred "trial motion" on the eve of trial.  *See* Docket Nos. 492, 515.  The Court denied both motions because the issues had already been decided and permitted testimony regarding Zuru Ltd.'s sales at trial.  Docket No. 496.  After trial, Defendants filed their Renewed Motion for Judgment as a Matter of Law arguing that no reasonable jury could find that Zuru Ltd. is entitled to lost profits.  Docket No. 582 at 36.  Defendants also filed a Renewed Supplemental Motion for Judgment as Matter of Law or Alternatively a New Trial based on alleged new evidence pertaining to the sales of Zuru Ltd.  Docket No. 702.

### b.  Zuru Ltd.'s Sales

In their original motion for a new trial, Defendants argued that no reasonable jury could find that Zuru Ltd. is entitled to lost profits because Defendants argued that Zuru Ltd. never took title to any of the Bunch O Balloons products or sold them to Wal-Mart.  Docket No. 582 at 36–37.  After the post-trial briefing was completed, Defendants requested leave of court to file a supplemental motion on damages and re-open discovery in this matter due to the production of new evidence related to the issue of Zuru Ltd.'s sales in related Case No. 6:17-cv-170 ("*Tinnus IV*").  Docket No. 590.  On October 22, 2018, the Court determined that the issue required further factual development; therefore, the Court re-opened discovery for a period of 60 days with respect to lost profits.  Docket No. 671.  During this time, a series of discovery disputes regarding the conduct of counsel and the scope of the Court's order arose.  The Magistrate Judge resolved the

discovery disputes, ordering discovery to be completed by January 4, 2019, and any supplemental motion for judgment as a matter of law or a new trial to be filed by January 11, 2019. Docket Nos. 694, 697. The Court overruled objections to the Magistrate Judge's order. Docket No. 718. Thereafter, Defendants filed their supplemental motion requesting that the Court set aside the jury's damages award as a matter of law or grant a new trial. Defendants argued that the new evidence obtained during this late period of discovery warrants such an outcome. As both motions present an evidentiary issue with respect to Zuru Ltd.'s sales, the Court takes them up in tandem, focusing on the newly presented evidence.

Determining whether the newly discovered evidence warrants a new trial requires a three-prong analysis: (1) the probability that the evidence would have changed the outcome of the trial; (2) whether the evidence could have been discovered earlier through the moving party's due diligence; and (3) whether the evidence is merely cumulative or impeaching. *See Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1284 (Fed. Cir. 2000), citing *Farm Credit Bank v. Guidry,* 110 F.3d 1147, 1155 (5th Cir. 1997); *Diaz v. Methodist Hosp.,* 46 F.3d 492, 495 (5th Cir. 1995).

Defendants contend that the following new evidence contradicts the sales theory Plaintiffs presented at trial:

(1) Emails from Christian Pellone, Zuru Ltd.'s CFO, stating to auditors that sales were "not sales of Zuru Limited, but Zuru Inc," (Docket No. 702-3); calling Zuru Ltd. "an 'undisclosed agent' of Zuru Inc." that "does not have any stock of its own that it can sell" (Docket No. 702-4); identifying Zuru Ltd. as "a sales support company, which as a stand alone company books no sales" (Docket No. 702-6); and stating that "all rights and responsibilities attached to these sales imbue in Zuru Inc" (Docket No. 702-5);

(2) Ltd. Board Resolutions from October 18, 2016 stating an agency intention with respect to Ltd. and Inc. (Docket No. 702-7);

(3) Inc. Board Minutes from October 18, 2016 stating that "since the incorporation of [Ltd.]… [Ltd.] has been acting as an undisclosed agent of the Company, and has entered into contracts with customers for on [*sic*] behalf of the Company" and it would enter a "written undisclosed agency agreement with [Ltd.]," to memorialize the long-standing agency relationship. (Docket No. 702-9);

(4) Audited financials showing "service income" that Inc. paid Ltd. DTX-224; DTX-225;

(5) Inc. invoices for a service fee. (Docket Nos. 702-11, 702-12, 702-13, 702-14, 702-15.); and

(6) A statement by Mr. Pellone that "Zuru Inc. is the parent company. It derives all the sales income." (Docket No. 702-10.)

Turning to the first prong, it is unlikely that such evidence would have changed the outcome of the trial on damages. The outcome of the trial would have only been changed if Defendants established that Zuru Ltd. did not make any sales to Wal-Mart, thereby leaving no sales for the basis of a lost profits award. The only direct evidence that Defendants provide on this point is a statement in an email from Zuru Ltd.'s CFO, Mr. Pellone, stating that certain sales were "not sales of Zuru Limited, but Zuru Inc." Docket No. 702-3 at 5. As an initial matter, Defendants do not provide any context for these statements. However, even assuming the statement pertains directly to the Wal-Mart sales at issue in this case, it appears to be a single out-of-court statement provided via email to an auditor for tax purposes. *Id.* That single statement is not likely to overcome the substantial evidence considered by the jury evidencing Zuru Ltd.'s sales of Bunch O Balloons to Wal-Mart. *See, e.g.*, PTX 293, PTX 294, PTX 295; 11/15/17 A.M. Tr. (Sealed Portion Nos. 1 and 2) at 10:18–10:25, 21:19–21, 24:2–3, 24:12–14; 11/17/17 A.M. Tr. (Sealed Portion No. 4) at 25:6–30:13.

For example, Plaintiffs presented evidence that the language of the Zuru Ltd./Wal-Mart supplier agreements specifically describes Zuru Ltd.'s activities as "sales." *See* PTX 293 at 1 (providing that "[a]ll sales and deliveries of Merchandise (as defined below) by Supplier [ Zuru

Ltd.] to Company [Wal-Mart] will be covered by and subject to the terms of this Agreement"). Furthermore, Zuru Ltd.'s COO, Anna Mowbray, testified that purchase orders to Zuru Ltd. and corresponding invoices issued by Zuru Ltd. established that Zuru Ltd. was the seller of those products. PTX 295; 11/15/17 A.M. Tr. (Sealed Portions Nos. 1 and 2) at 6:24–10:25. In addition, Plaintiffs' damages expert went through the supplier agreement, the Wal-Mart purchase orders and invoices (which all reflected Bunch O Balloons sales to Wal-Mart) as well as Zuru Ltd.'s bank statements which showed money paid by Wal-Mart for Bunch O Balloons purchases. 11/17/17 A.M. Tr. (Sealed Portion No. 4) at 25:6– 30:13; PTX-293, PTX-294, PTX-295. At most, presentation of Mr. Pellone's email statement may have undermined the credibility of Ms. Mowbray, who testified to these sales. 11/15/17 A.M. Tr. (Sealed Portions Nos. 1 and 2) at 6:24– 10:25. But the jury was still able to consider the supplier agreement between Zuru Ltd. and Wal-Mart, the Wal-Mart purchase orders and the invoices to Zuru Ltd. PTX-293, PTX-294, PTX-295.

The remainder of Defendants' new evidence is circumstantial evidence relating to an agency relationship between Zuru Ltd. and Zuru Inc., a service income paid to Ltd. by Inc., invoices for a service fee and other evidence suggesting that Zuru Ltd. earned no profits. *See* Docket No. 702 at 7–10. This circumstantial evidence is cited to support an argument that the Court has already rejected—that Zuru Ltd. may not recover lost profits for its sales of Bunch O Balloons. *See* Docket No. 406, at 8–9. The Court already found that "Defendants cite no authority that this specific arrangement would prevent a recovery of lost profits under the Patent Act." *Id.* at 9, n. 1. Thus, Defendants' arguments regarding corporate structure and the booking of actual profits made from Zuru Ltd.'s sales is merely cumulative. To date, Defendants have presented no further authority on this issue. The probability that this evidence would have changed the outcome of the trial is low.

Moreover, this evidence could have been discovered much earlier had Defendants been diligent. Defendants did not raise any defense with respect to lost profits until July 7, 2017, when they filed their lost profits motion for summary judgment and a *Daubert* motion related to Dr. Ratliff's opinions. Docket Nos. 334, 335. Notably, on August 2, 2017, Plaintiffs submitted an Addendum to the Second Amended License Agreement, which was signed by Christian Pellone as Chief Financial Officer of Zuru Ltd. Docket No. 364-7. Mr. Pellone's existence and role at Zuru Ltd. was therefore indisputably known to Defendants before the Court re-opened discovery on the issue of lost profits on September 11, 2017. Docket No. 405.

Aware of Mr. Pellone's role at Zuru Ltd., Defendants were given the opportunity to seek additional discovery regarding damages prior to trial, but they failed to seek out this information. *See* Docket No. 405 at 4 (the Court reopening discovery). Although Defendants did take a supplemental 30(b)(6) deposition of Zuru Ltd., they did not ask any questions about Mr. Pellone or seek to depose him or call him at trial. As the Court previously discussed, nothing suggests that Plaintiffs or Plaintiffs' counsel improperly withheld documents to present a misleading picture to the jury. *See* Docket No. 694. Rather, it appears that Defendants were not diligent and only discovered this information when new counsel for Defendants took over discovery in contemporaneous litigation. The evidence could have been discovered earlier had Defendants been diligent.

Finally, the evidence presented in Defendants' supplemental motion is primarily cumulative and/or impeaching. As discussed, Defendants' arguments with respect to the corporate structure of the Zuru entities, the booking of profits and the receipt of service income were all presented at trial. Indeed, Defendants cite to two of their own exhibits admitted at trial in support of their motion. *See* Docket No. 702, citing DTX-224, DTX-225. While Mr. Pellone's statements

were not presented at trial, at best they would attack the credibility of Plaintiffs' corporate representative, Ms. Mowbray, who testified to Zuru Ltd.'s sales. 11/15/17 A.M. Tr. (Sealed Portions Nos. 1 and 2) at 6:24–10:25.

In sum, the newly discovered evidence does not warrant a new trial. Accordingly, Defendants' Renewed Supplemental Motion for Judgment as a Matter of Law or Alternatively a New Trial (Docket No. 702) is **DENIED**.

As to Defendants' argument regarding the passing of title of the Bunch O Balloons products (Docket No. 582), Defendants fail to cite any supporting Federal Circuit case law on this issue. Instead, Defendants cite generally to other courts' statements about what defines a "sale." *See* Docket No. 582 at 37. The Court finds no precedent to grant a JMOL on this basis. The Uniform Commercial Code (UCC) states "title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods,"[17] U.C.C. § 2-401. Here, as discussed, the jury heard substantial evidence that Zuru Ltd., not Zuru Inc., made the sales in question. PTX 293, PTX 294, PTX 295; 11/15/17 A.M. Tr. (Sealed Portion Nos. 1 and 2) at 10:18–10:25, 21:19–21, 24:2–3, 24:12–14; 11/17/17 A.M. Tr. (Sealed Portion No. 4) at 25:6– 30:13. Accordingly, Defendants' JMOL as to lost profits on the basis of the passing of title is **DENIED**.

### c. Cost-Plus-Ten Percent

Defendants argue that even if Zuru Ltd. did make sales, there is no evidence that Zuru Ltd. would have profited from additional sales of Bunch O Balloons. Docket No. 582 at 38–42. Defendants assert that the evidence showed that Zuru Ltd. was a sales agent of Zuru Inc., and Zuru Ltd.'s revenue was determined on a cost-plus-ten-percent basis. *Id*. Defendants' argument boils

---

[17] The UCC further defines a seller as "a person who sells or contracts to sell goods." UCC § 2-103.

down to this: there is a lack of causation between the amount of Bunch O Balloons sales and Zuru Ltd.'s lost profits. Plaintiffs contend that Defendants' arguments ignore that Zuru Ltd. made the sales and earned revenue from them. Docket No. 588 at 44–48.

Defendants' argument is not persuasive. The evidence at trial showed that all proceeds from Zuru Ltd.'s sales to Wal-Mart were paid to Zuru Ltd. and were deposited into Zuru Ltd.'s bank account. PTX 294; 11/15/17 A.M. Tr. (Sealed Portion Nos. 1 and 2) at 9:13–10:17; 11/17/17 A.M. Tr. at 28:13–29:5. Thus, Zuru Ltd. profited from such sales. Because Zuru Ltd. generated revenue from these sales, it has a claim for lost profits. 11/17/17 P.M. Tr. at 20:23–21:3; *Rite-Hite*, 56 F.3d at 1545.

The fact that the Mowbray siblings made internal decisions on where to book Zuru Ltd.'s profits does not alter or erase the fact that Zuru Ltd. earned revenue in the first instance. *See* PTX 250; 11/17/17 A.M. Tr. at 13:18–14:16; 30:1–13.

Lastly, none of the cases Defendants cite hold that lost profits must be booked on a financial statement in order to be recoverable as lost profit damages. *See* Docket No. 582 at 39–41. Even if it mattered, it is impossible to know where Zuru Ltd.'s additional sales would have been booked or whether the Mowbrays would have altered the cost-plus-ten-percent model. *See* 11/15/17 A.M. Tr. (Sealed Portions Nos. 1 and 2) at 28:16–23 (Ms. Mowbray testifying that as to the cost-plus-ten-percent model, "we could have changed that at any time since it's such a close group."). Thus, the jury heard substantial evidence to support its verdict on lost profits.

Accordingly, Defendants' JMOL as to lost profits on this basis is **DENIED**.

### d. Price Erosion

Defendants next argue that no reasonable juror could find price erosion for three principal reasons. Docket No. 582 at 42. First, Defendants assert that Plaintiffs have not shown any "but for" causation resulting from the infringing sales. *Id.* at 42–44. Second, Defendants argue that

Plaintiffs' damages testimony regarding price erosion was legally insufficient because Plaintiffs' expert failed to consider price elasticity. Finally, Defendants contend that Plaintiffs' damages expert improperly assumed that Telebrands infringed in 2015. *Id*. at 45. Plaintiffs argue that they presented sufficient evidence of price erosion from which a reasonable jury could find lost profit damages. Docket No. 588 at 48–51.

First, Defendants' "but for" causation argument is unpersuasive. Defendants mainly rely on testimony by Ms. Mowbray during a hearing in 2015 when she stated it would be difficult to ███████ in the toy industry. *See* 11/15/17 A.M. Tr. (Sealed Portion Nos. 1 and 2) 16:17–24. However, Ms. Mowbray explained that her testimony was given with the understanding that Telebrands has always been in the market with an infringing product. 11/15/17 A.M. Tr. at 134:4–12. Thus, the testimony did not relate to the but-for world, which is the correct setting for a price erosion analysis. *See Ericsson, Inc. v. Harris Corp*., 352 F.3d 1369, 1378 (Fed. Cir. 2003) ("To recover lost profits on a theory of price erosion, a patentee must show that "but for" infringement, it would have sold its product at a higher price.").

Moreover, the jury also heard evidence that ██████ was willing and able to pay higher prices for Bunch O Balloons. 11/17/17 A.M. Tr. at 24:22–25; 11/20/17 A.M. Tr. at 74:17–25, 76:5–10. Even Defendants' expert conceded that Zuru Ltd. was able to raise the price of Bunch O Balloons charged to ██████ from 2014 to 2015. 11/20/17 A.M. Tr. at 74:17–25; 76:5–10. Thus, this basis for JMOL is without merit.

Second, Defendants' argument about price elasticity is also unpersuasive. Defendants argue that under *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001), Mr. Ratliff's testimony was "legally insufficient" because "Mr. Ratliff simply pretended no sales would have been lost if Wal-Mart's price went up." Docket No. 582 at

44. But Mr. Ratliff *did* consider what effect higher prices would have on demand but concluded that in this case, the relevant market was inelastic. 11/17/17 A.M. Tr. at 23:11–24:22; 11/17/17 A.M. Tr. (Sealed Portion No. 4) at 21:1–26:10, 92:7–95:8. In supporting his opinion, he explained that price inelasticity is not a perfectly linear evaluation and that there are numerous factors that can contribute to price inelasticity as to any given product. 11/17/17 A.M. Tr. (Sealed Portion No. 4) at 21:1–24:18.

Since *Crystal Semiconductor*, the Federal Circuit has clarified that a theory of an inelastic market does not automatically preclude recovering price erosion damages. *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1379 (Fed. Cir. 2003). As in *Ericsson*, Plaintiffs in this case did not even get the full amount they sought in lost profit damages. Docket No. 543 at 4. To the extent the jury accepted Plaintiffs' price erosion theory, the award is supported by substantial evidence.

Third, Defendants contend that Mr. Ratliff's damages analysis improperly assumed that Telebrands infringed in 2015, even though no such finding has been made. Docket No. 582 at 45. Yet Mr. Ratliff explained time and again that his analysis rested on infringement beginning when the '749 Patent first issued in January 2016. 11/17/17 P.M. Tr. (Sealed Portion No. 4) at 5:12–15, 15:23–25. Specifically, Mr. Ratliff testified that █████████████████████████ ████ beginning in January 2016 "but for" infringing competition from Battle Balloons. 11/17/17 A.M. Tr. (Sealed Portion No. 4) at 93:6-12. Thus, this argument is meritless.

Accordingly, Defendants' JMOL as to price erosion is **DENIED**.

### e. Excess Freight Expenses

As to Defendants' argument regarding the inclusion of excess freight expenses, there is no indication that the jury awarded excess freight charges as part of its damages verdict. Even if it did, the jury heard substantial evidence that Zuru Ltd. paid excess freight charges as a result of Defendants' infringement. 11/17/17 A.M. Tr. at 42:20–43:8.

Accordingly, Defendants' JMOL as to excess freight expenses is **DENIED**.

E. *Motion for New Trial*

Under Federal Rule of Civil Procedure 59(a), a new trial may be granted on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Rule 59(a)(1)(A). The Federal Circuit reviews the question of a new trial under the law of the regional circuit. *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1347 (Fed. Cir. 2007). The court can grant a new trial "based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985). "Courts grant a new trial when it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (quoting *Del Rio Distributing, Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n. 3 (5th Cir. 1979)). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith*, 773 F.2d at 612–13. The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).

Defendants seek a new trial on infringement, invalidity, willful infringement and lost profits. Docket No. 582 at 46. Defendants assert that the verdict is contrary to the weight of the evidence. *Id*. at 48. Defendants also argue that the willfulness, liability and lost profits verdicts were unfairly tainted by Plaintiffs' focus on Telebrands' pre-lawsuit conduct. *Id*. at 48–56. Defendants further contend that Plaintiffs' damages presentation provides an additional basis for a new trial. *Id*. at 56. Defendants also assert that Plaintiffs improperly influenced the jury with

emotion and prejudice.  *Id*. at 59.  Finally, Defendants argue that a new trial on invalidity is warranted for additional reasons.  Docket No. 582 at 61.

In response, Plaintiffs argue that Defendants fail to demonstrate any unfairness, prejudice or jury confusion.  Docket No. 588 at 53.  They contend that Telebrands' pre-lawsuit conduct was relevant to this case.  *Id*.  Plaintiffs further contend that Defendants fail to show that Plaintiffs' damages presentation justifies a new trial.  *Id*. at 57.  Finally, Plaintiffs assert that Defendants fail to demonstrate any improper influence.  *Id*. at 59.

### a.  Weight of the Evidence

Defendants first assert that "[f]or the reasons described in Defendants' motions for renewed JMOL of noninfringement, no willful infringement, invalidity and no lost profits, a new trial should be granted."  Docket No. 582 at 48.  As explained in the section on Defendants' JMOLs, *supra* at 28–53, there was substantial evidence in the record to support the jury's findings on these issues.  Consequently, Defendants again fail to demonstrate an "absolute absence of evidence to support the jury's verdict."  *See Seibert v. Jackson Cnty.*, 851 F.3d 430, 439 (5th Cir. 2017) (new trial granted only when verdict is against the great weight of the evidence, meaning "an absolute absence of evidence to support the jury's verdict.").  For the same reasons explained with respect to Defendants' JMOL motions, the weight of the evidence does not justify a new trial.

Accordingly, Defendants' Motion for a New Trial on this basis is **DENIED**.

### b.  Telebrands' Pre-Lawsuit Conduct

As to Defendants' argument that the willfulness, liability and lost profits verdicts were unfairly tainted by Plaintiffs' focus on Telebrands' pre-lawsuit conduct, the Court finds this argument to be without merit.  Defendants' argument mainly concerns Plaintiffs' pre-trial presentation on Balloon Bonanza and how that product was created.

These concerns were raised before the Magistrate Judge during pretrial proceedings. At the pre-trial hearing, the Magistrate Judge explained that he had to come up with *some* way to allow the parties to refer generally to the facts of that case, so that Plaintiffs could tell their story to the jury. The Magistrate Judge recognized Defendants' concerns and decided that Plaintiffs would be permitted to tell their story in a limited way:

> This has to boil down, as far as willfulness, is this is the way it's going to be presented. Mr. Malone developed an invention and he patented it. He got the '066 patent. Mr. Malone, Ms. Mowbray, Tinnus, however you want to say it, believes Telebrands infringed that patent, and they pursued legal action on that patent. Then Telebrands developed another product, and in the meantime, we got another patent, and we believe they're still infringing, and they're infringing this patent with this product. That's the way it's going to have to be presented.

Docket No. 522 at 87:14–23.

The trial generally went according to that plan.[18] Plaintiffs were able to show the jury the emails about copying as evidence of willfulness and non-obviousness. The evidence presented focused on Battle Balloons and the '282 and '749 Patents. The jury was informed multiple times, both by counsel for the parties and in the jury instructions themselves, which products were tied to the verdict and which were not. *See* Jury Instructions, Docket No. 540 at 6 ("The Balloon Bonanza is not an accused product in this case."); *see also* 11/14/17 P.M. Tr. at 47:16–21, 50:2–5, 52:13–14. Thus, the jury was not confused as to which products were at issue.

Accordingly, Defendants' Motion for a New Trial on this basis is **DENIED**.

---

[18] Defendants argue that Plaintiffs violated this plan during both Plaintiffs' opening argument and during Ms. Mowbray's testimony. During opening, Plaintiffs' counsel stated that Plaintiffs were forced to bring a "second lawsuit" to enforce its patents. 11/14/17 A.M Tr. at 38:16. Yet this does not violate the Magistrate Judge's ruling, as the Magistrate Judge stated Plaintiffs could explain they pursued "legal action" against Balloon Bonanza. Moreover, Defendants did not timely object, as Defendants did not raise this issue until after opening statements were completed. See 11/14/17 P.M. Tr. at 66:4–67:9. As to Ms. Mowbray's testimony, as explained further in Section VI (Attorneys' Fees), Ms. Mowbray's comments were immediately corrected on the record by Plaintiffs' counsel and thus did not warrant a curative instruction. *See* 11/15/17 A.M. Tr. at 40:19–42:14.

### c. PTAB Proceedings

Defendants next argue that the willfulness verdict was tainted because they were not allowed to show the jury the PTAB's institution decisions as to the '066, '749, and '282 Patents. Defendants again argue they had a good-faith belief that the patents were invalid and that those PTAB decisions should have been shown to the jury as evidence of Defendants' good-faith belief. This argument was raised before the trial, but the Magistrate Judge precluded any "references, argument, or evidence regarding any order from or proceeding before the PTAB." Docket No. 477 at 1. The Magistrate Judge found that this evidence would be substantially more prejudicial than probative and would likely confuse the jury. Because the '066 Patent was not at issue in this case, it made little sense to allow references to those proceedings.[19] In addition, the institution decisions for the patents-in-suit issued on February 21, 2017, well after this lawsuit was first filed in January 2016. Lastly, in early 2018, both patents-in-suit were found valid in final written decisions by the PTAB. Docket No. 626. Thus, it is even more clear now than at the time of trial that allowing the PTAB evidence in would have been substantially more prejudicial than probative.

Defendants still argued at trial that their good-faith belief that the patents were invalid was based on the advice of Dr. Kamrin. *See, e.g.*, 11/15/17 P.M. Tr. at 136:6–22. Any claim that Telebrands was unable to explain itself fully at trial is more likely due to its repeated attempts to elicit expert testimony from its fact witnesses. *See id*. at 13:3–9, 18:19–19:8, 19:24–21:14, 26:1–31:19.

The verdict was not tainted by keeping the PTAB proceedings out of the case. Defendants' Motion for a New Trial on this basis is **DENIED**.

---

[19] Moreover, the '066 Patent was invalidated for indefiniteness based on language not contained in the patents-in-suit in this case. And as explained above, that indefiniteness decision was later reversed by the Federal Circuit.

#### d. Plaintiffs' Damages Presentation

Defendants next contend that the exclusion of the PTAB evidence precluded them from cross-examining Mr. Ratliff on his alleged assumption that "Telebrands was illegally on the market after June 2015 due to the '066 Patent" because "when the '066 Patent issued, but before the '749 and '282 patents issued Telebrands would have been required to take a license or be enjoined." Docket No. 582 at 56–57. However, Mr. Ratliff explained to the jury that his analysis was not dependent on infringement before the first patents-in-suit issued in January 2016. 11/17/17 P.M. Tr. (Sealed Portion No. 4) at 5:12–15, 15:23–25. Moreover, defense counsel brought this issue to the Court's attention during a lengthy bench conference. *Id.* at 81:16–91:9. Defense counsel then directly asked Mr. Ratliff about this issue, and Mr. Ratliff again affirmed that his analysis was "solely" based on conduct beginning in 2016. *Id.* at 94:1–9. Thus, the PTAB evidence about the '066 Patent had little relevance to Mr. Ratliff's testimony.

Because Defendants have not shown that this justifies a new trial, Defendants' Motion for a New Trial on this basis is **DENIED**.

#### e. Plaintiffs' Closing Argument

Defendants argue that the damages number presented by Plaintiffs during the rebuttal portion of their closing argument misstated the testimony of Defendants' expert, Dr. Hatch. Docket No. 582 at 58. Specifically, Defendants argue that Plaintiffs stated Dr. Hatch had advocated for a reasonable royalty number of $16 million, when he actually advocated for $1.67 million. *Id.* at 58–59. After reviewing the transcript, Plaintiffs' statement about Dr. Hatch's testimony does not reach the high bar needed to warrant a new trial.

During Dr. Hatch's direct testimony, Defendants' counsel asked him how his math would differ if he used Ms. Mowbray's number of $█/unit. *See* 11/20/17 P.M. Tr. (Sealed Portion No. 5)

at 62:20–63:7.  He responded that because there were almost ███████ units, it would be about

$16 million.  *Id*.  He then opined that Telebrands would not pay that number.  *Id*. at 63:11–13.

> During closing, Plaintiffs characterized this testimony as follows:

> And then Dr. Hatch talked about this testimony as well, and these were questions
> by Telebrands' own counsel.  You were in court and you heard Ms. Mowbray's
> testimony, and she indicated that it would be $█ a unit was her number.  And then
> he was asking: How much would that work out to if you multiplied $█ a unit times
> the number of Battle -- Battle Balloons units?  That would be about 16 million in
> reasonable royalty.  That's Dr. Hatch's testimony through direct examination with
> their own lawyers. And you didn't hear any of that in [Defense counsel's] closing.

11/21/17 Tr. at 153:2–12.  Nothing in this statement is demonstrably false.  Plaintiffs explained

that the $16 million number was based on Ms. Mowbray's own number at $█/unit.  The jury was

aware of the number Dr. Hatch advocated because Defendants had just argued their own damages

number during their closing.  Thus, Defendants were not unfairly prejudiced by this statement.

Moreover, the jury did not award Plaintiffs their full request (over $20 million) or even the $16

million mentioned here.

> Accordingly, Defendants' Motion for a New Trial on this basis is **DENIED**.

### f.  Improper Influence

Defendants next argue that Plaintiffs "improperly influenced the jury with emotion and

prejudice."  Docket No. 582 at 59.  Defendants argue that Plaintiffs appealed to "sectionalism,"

focusing on things like: Plaintiffs' counsel's small law practice in Tyler, Texas; Defendants' "big

firm" from Washington D.C.; Mr. Malone's local roots and large family; and that one of

Defendants' counsel is a "big shot" who "was just in the Tyler paper last week."  Docket No. 582

at 59–60.

As an initial matter, Defendants did not timely object to many of the things they now

complain about.  Moreover, Defendants' counsel made similar statements during *voir dire*.  *See*

11/14/17 A.M. Tr. at 98:7–9 ("I practice law in Henderson.  I grew up in Henderson.  I raised three

kids in Henderson."). As to Defendants' argument about Mr. Malone's local roots and large family, it is only fair to allow each side to tell their story to the jury. Here again, Defendants did the same thing, and the jury heard extensive testimony from Telebrands' CEO about how he came to America and how he created his company. *See* 11/15/17 P.M. Tr. at 91:22–101:10. Lastly, Defendants employed their own fair share of "sectionalism." *See, e.g.*, 11/14/17 P.M. Tr. at 46:14–17 ("There's Telebrands, an American company in New Jersey, and ZURU Ltd, which we were told started in New Zealand and is now headquartered in China. It's a conglomerate, actually.").

Lastly, the comments about one of Defendants' counsel, David Boies, were a non-issue.[20] During *voir dire*, not a single juror acknowledged having ever heard his name. 11/14/17 A.M. Tr. at 74:16–19. Moreover, the Court instructed Plaintiffs not to mention his name again, and Plaintiffs complied. 11/15/17 A.M. Tr. at 19:14–19. It was appropriate for the parties to ask the jurors about him during *voir dire*. Once no juror acknowledged knowing who he was, no further mention was made.

Defendants' arguments do not meet the high bar required for a new trial. Defendants' Motion for a New Trial on this basis is **DENIED**.

### g. "Red Zone" Analogy

Defendants' final argument for a new trial on invalidity hinges on an analogy Plaintiffs' counsel made during opening and closing arguments. Docket No. 582 at 61. Plaintiffs' counsel analogized the clear and convincing evidence standard for invalidity to the "red zone" in football. *See* 11/14/17 P.M. Tr. at 42:21–43:1; *see also* 11/21/17 A.M. Tr. at 92:17–21.

---

[20] For context, Mr. Boies was in the news shortly before trial started in late November related to his former representation of a different client. While he filed a notice of appearance in this case and attended the pre-trial hearing before the Magistrate Judge, he did not appear at trial.

On this record, this is not enough to warrant a new trial. The Court heard Defendants' objection at trial and specifically included the following clause in the jury instructions: "You may have heard counsel argue or a witness testify regarding the burden of proof in this case. The only consideration of the burdens of proof you should make in this case are the ones I am providing you today in these instructions." Docket No. 540 at 7. Moreover, as discussed above, Defendants' invalidity expert failed to even account for secondary considerations. Thus, the jury's finding on invalidity was supported by the evidence, and the jury instructions properly instructed them on the law.

Accordingly, Defendants' Motion for a New Trial on this basis is **DENIED**.[21]

### h. Conclusion

In sum, none of these arguments for a new trial, either alone or taken together, reach the high bar required for a new trial. Accordingly, Defendants' Motion for a New Trial (Docket No. 582) is **DENIED**.

## IV. Plaintiffs' Motion for Permanent Injunction (Docket No. 580)

Plaintiffs argue that under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), the Court should grant permanent injunctive relief. Docket No. 580. Plaintiffs further request a return of the cash bond of $4,825,000 that was posted with the Court to secure the preliminary injunction. *Id*. at 2. Defendants do not dispute Plaintiffs' analysis under the *eBay* factors. Rather, Defendants sole contention is that the Court should grant JMOL for Defendants or grant their motion for a new trial. Docket No. 586 at 2. Defendants further contend that the Court should not release the bond until the appeal process is complete. *Id*.

---

[21] Defendants also make vague references to some of their proposed jury instructions that the Court did not adopt and argue that these also warrant a new trial on invalidity. Docket No. 582 at 55. However, they do not argue what prejudice they suffered. These arguments do not warrant a new trial.

A permanent injunction is appropriate. Defendants' entire response turns on its Motion for JMOL or New Trial (Docket No. 582). As described above, every JMOL has been denied with the exception of the willfulness finding as to Fry's. The Court also declined to grant a new trial. Since Defendants did not dispute Plaintiffs' analysis under the *eBay* factors as to whether a permanent injunction is necessary, this motion is essentially unopposed.

Under the *eBay* factors, a permanent injunction is appropriate. "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391.

The Court has issued a preliminary injunction in this case, and the jury found that every Defendant willfully infringed.[22,23] *See* Docket Nos. 99, 142, 159, 543. Furthermore, because Zuru's Bunch O Balloons and Telebrands' Battle Balloons are direct competitors, Defendants' infringement would cause irreparable injury to Plaintiffs. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) ("Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude."). Money damages are also inadequate to compensate Plaintiffs because Zuru was concerned about its loss of brand recognition and loss of customer goodwill. *See* 11/15/17 A.M. Tr. at 69:9–22; 70:3–15. For all the reasons laid out by the Magistrate Judge in recommending the preliminary injunction, the balance of hardships favors an injunction. *See* Docket No. 99 at 27–28 (explaining that Telebrands has lots of other products but

---

[22] The preliminary injunction was also affirmed by the Federal Circuit. *See* Docket No. 593.

[23] The Court entered judgment as a matter of law that Defendant Retailer Fry's did not willfully infringe. *See supra* at 35.

Plaintiffs rely on this product more heavily).  At trial, Mr. Iyer confirmed that Telebrands had "way more products that sold much more than the Battle Balloons product."  11/16/17 P.M. Tr. at 22:22–23:22.  As explained previously by the Magistrate Judge, the public interest is best served by enforcing patents that are valid and infringed.  *See* Docket No. 99 at 29.

Lastly, as to Defendants' contention that the Court should decline to release the bond, this argument is not supported by Federal Circuit law.  *See Glaxo Grp. Ltd. v. Apotex, Inc*., 376 F.3d 1339, 1349 (Fed. Cir. 2004) ("Apotex additionally asserted that the district court improperly ordered the release of Glaxo's preliminary injunction bond.  Because the entry of a permanent injunction obviates the need for a preliminary injunction bond, we find this issue to be moot.").  Thus, the bond should be released.

Accordingly, Plaintiffs' Motion for Permanent Injunction (Docket No. 580) is **GRANTED**.  It is hereby **ORDERED** as follows:

- The Court **FINDS** that Plaintiffs have carried their burden of showing that: (a) they have suffered irreparable injury; (b) remedies at law, such as money damages, are inadequate; (c) the balance of hardships warrants injunctive relief; and (d) the public interest would not be disserved by a permanent injunction.

- Pursuant to Federal Rule of Civil Procedure 65, 35 U.S.C. § 271, 35 U.S.C. § 283, and the inherent equitable powers of the Court, the Court hereby **PERMANENTLY RESTRAINS AND ENJOINS** all Defendants (inclusive of Telebrands Corp.; Bulbhead.com, LLC; Bed Bath & Beyond Inc.; Fry's Electronics; The Kroger Company; Sears Holdings Corporation; and Walgreens Boots Alliance, Inc.), their officers, agents, servants, employees, attorneys and all other persons who are in active concert or participation with the Defendants who receive actual notice of this Order by personal

service or otherwise, from making, using, importing, marketing, advertising, offering to sell, or selling in the United States the Battle Balloons product or any colorable imitation of the same that infringes either U.S. Patent No. 9,242,749 ("'749 Patent") or U.S. Patent No. 9,315,282 ("'282 Patent").

- This permanent injunction shall remain in effect until the expiration of the '749 Patent and the '282 Patent.

- The Clerk of Court is hereby directed to return to Plaintiffs the cash bonds in the amount of **$4,825,000** that Plaintiffs previously posted with the Court in compliance with the Court's prior preliminary injunction orders. Docket Nos. 159, 167, 224, 235.

## V. Plaintiffs' Motion for Prejudgment and Post-judgment Interest (Docket No. 581)

Plaintiffs request that the Court award prejudgment interest at the prime rate compounded annually from January 2016 through December 31, 2017. Docket No. 581. Defendants argue that if the Court awards prejudgment interest it should use the weekly average 52-week Treasury Bill rate compounded annually. Docket No. 585. In keeping with the standard practice of this District, the Court **ORDERS** Defendants to pay Plaintiffs prejudgment interest at the prime rate compounded quarterly from January 2016 through the date on which the Court enters final judgment. *See VirnetX, Inc. v. Apple Inc.*, No. 6:10-cv-417, Docket No. 732 at 35 (listing a sample of cases where the Court awarded prejudgment interest on the damages at the prime rate compounded quarterly). Further, the Court **ORDERS** Defendants to pay Plaintiffs post-judgment interest at the statutory rate upon entry of judgment as prescribed by 28 U.S.C. § 1961.

Accordingly, Plaintiffs' Motion for Prejudgment and Post-Judgment Interest (Docket No. 581) is **GRANTED**.

## VI. Plaintiffs' Motion to Declare These Consolidated Cases as Exceptional and for Attorneys' Fees (Docket No. 583)

Plaintiffs request the Court declare these cases exceptional and award Plaintiffs $5,003,016.58 in attorneys' fees and $1,027,656.54 in expert fees. Docket No. 583 at 2.

The relevant statute, 35 U.S.C. § 285, provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." A case is exceptional when it "stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Whether a case is deemed "exceptional" is a matter left to the Court's discretion and must be made on a case-by-case basis, with consideration of "the totality of the circumstances." *Id.*; *see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014) ("[T]he determination of whether a case is 'exceptional' under § 285 is a matter of discretion."); *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011) ("we are mindful that the district court has lived with the case and the lawyers for an extended period.").

Some factors the Court may consider in making its determination under § 285 are "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane*, 134 S. Ct at 1756 n.6. To be considered exceptional, conduct need not be "independently sanctionable." *See id.* Nor is a finding of bad faith required; "a case presenting either subjective bad faith or exceptionally meritless claims" may warrant an award of fees. *Id.* at 1757. "After determining that a case is exceptional, the district court must determine whether attorney fees are appropriate," which is within the Court's discretion. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (citations omitted). Ultimately, a party must prove

entitlement to attorney fees by a preponderance of the evidence. *Octane Fitness*, 134 S. Ct. at 1758.

"It is equally necessary for the trial court to explain why this is not an exceptional case in the face of its express finding of willful infringement." *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986). Conversely, "[e]ven an exceptional case does not require in all circumstances the award of attorney['s] fees." *Id.* Many factors can determine whether fees are warranted in the finding of willfulness. *Id.* "The trial judge is in the best position to weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." *Id.*

Plaintiffs argue that Defendants engaged in bad-faith litigation conduct that caused delay, undue burden and significant expenses in this case. Docket No. 583 at 3. Plaintiffs argue that Defendants took untenable positions with respect to infringement of the '282 Patent, non-infringing alternatives and inequitable conduct. *Id.* at 4–5. Plaintiffs also argue that Defendants took dilatory tactics to stay this case or transfer it and repeatedly interjected the PGR proceedings. *Id.* at 5–6. Finally, Plaintiffs argue that Defendants attempted to re-litigate claim construction and took unreasonable discovery positions. *Id.* at 7–8.

Defendants contend that they filed legitimate motions and that narrowing of issues for trial is not litigation misconduct. Docket No. 590 at 11. Defendants argue that they handled the PGRs properly, did not commit litigation misconduct with claim construction briefing, took reasonable positions with their experts and did not take any unreasonable discovery positions. *Id.* at 13–15. Finally, Defendants argue that Plaintiffs' litigation misconduct does not justify an award of fees. *Id.* at 17–18.

For the reasons discussed herein, the Court finds this case is exceptional. Defendants' motion practice in this case was excessive and seemingly conducted for no legitimate purpose other than to burden Plaintiffs and cause delay. *See supra* at 12–16. Early on, the Court admonished Defendants for abuse of the Court's emergency motion practice, yet Defendants' frivolous practices continued. *See* Docket No. 132 at 2 (denying Telebrands' motion as a non-emergency and explaining that the Court had "already admonished the parties regarding their abuse of emergency motions"). Defendants brought numerous unmeritorious motions, thereby unnecessarily expending significant resources of the parties and the Court. These included a motion to reconsider the Court's preliminary injunction (Docket No. 153), a premature motion to stay the injunction (Docket No. 146), a re-urged motion to stay the injunction (Docket No. 168), a motion to sever and stay the Retailers (Docket No. 178) and a motion to stay pending PGR proceedings (Docket No. 239). Several the Court's rulings were ultimately upheld by the Federal Circuit. Docket Nos. 229, 157, 198, 262, 293; *Tinnus Enterprises, LLC et al. v. Telebrands Corp. et al*, Nos. 2017-1175, 2017-1760, 2017-1811 (Fed. Cir. Jan. 16, 2018). Defendants also filed a belated motion to dismiss this case just a few months before trial, which was ultimately denied and never appealed. Docket Nos. 359, 456. Defendants also engaged in sanctionable discovery misconduct in this matter. *See supra* at 13–14.

Perhaps the most common theme throughout this litigation, however, was Defendants' constant re-urging of issues already decided by the Court. *See supra* 15–18. Defendants' continued assertion of claims and defenses and belated streamlining of issues wasted significant resources. *Id.* Defendants' unacceptable trial conduct, described above, further highlights the exceptional nature of this case. Despite clear rulings from the Court, Defendants flagrantly and continuously violated motions *in limine* and sustained objections. S*ee supra* at 17–19; s*ee also,*

*e.g.*, Docket No. 453 (granting Plaintiffs' Motion *in Limine* No. 1, excluding reference to administrative proceedings before the PTAB). Defendants' conduct was so egregious the Court admonished Defendants on the record. 11/17/17 A.M. Tr. (Sealed Portion No. 4) at 90:10–22. Moreover, the jury's finding of willfulness further supports a finding that this case is exceptional. *See, e.g., S.C. Johnson & Son,* 781 F.2d at 201 (finding it is "necessary for the trial court to explain why this is not an exceptional case in the face of its express finding of willful infringement.").

Defendants go beyond merely attempting to justify their own conduct and allege that Plaintiffs' misconduct makes an award of fees inappropriate. Docket No. 590 at 17. According to Defendants, Plaintiffs substantially inflated their damages number, maintained inappropriate discovery positions as to particular ZURU entities and interjected the '066 Patent at trial. Docket No. 590 at 17–20. In their Renewed Supplemental Motion for Judgment as a Matter of Law or Alternatively a New Trial, Defendants argue that Plaintiffs' withholding of evidence further means that the case is not exceptional. Docket No. 702, at 18–19. The Court has already considered and rejected this argument on the merits. *See supra* at 35–38.

In relative comparison, Plaintiffs' conduct, although perhaps not immune from criticism, does not alter the finding that this case is exceptional. Indeed, as to the issue of damages—the main argument raised by Defendants—that issue was overlooked by both parties until the time of dispositive motions. Moreover, as the Court noted in ruling on the issue, it appeared that "what occurred here was perhaps an unintentional oversight in the licensing of the patents-in-suit and the structuring of the ZURU entities." Docket No. 485 at 12. As to the withholding of evidence on this issue, as the Court explained above, that Defendants were not diligent in seeking out that information. *See supra* at 40–42. Indeed, Defendants have not established any improper withholding of information in this litigation. The emails in question were produced in a related

action where different custodians were identified, different search terms were used and Defendants were represented by new counsel. *See* Case No. 6:17-cv-170.

As to injecting the '066 Patent into this trial, the Court has already considered and rejected this argument on the merits. *See supra* at 48. This infraction pales in comparison to the testimony purposefully solicited by Defendants' counsel in the face of numerous and sustained objections. 11/16/17 P.M. Tr. at 11:24–21:14.

As discussed *supra* at 24–25, the Retailers were complicit in a number of the actions described herein. The Retailers frivolously refused to be bound once the injunction as to Telebrands issued, s*ee supra* at *id.*, and continued selling inventory after Telebrands was enjoined and after the Magistrate Judge recommended the injunction. *See* Docket No. 224 at 3. The Retailers never provided definite accounts of their inventory and failed to produce discovery on the same. *See id.* ("the Retailer Defendants have produced no discovery to date on the state of their inventory… none of the Retailer's submissions include accounts for the inventory, documents that should exist in the ordinary course of business.").

In sum, this case is exceptional. At nearly every stage of this litigation, Defendants took untenable positions and created unnecessary hurdles for the parties and the Court. This conduct continued throughout trial, giving rise to numerous sustained objections and admonishments on the record. Having found that the case is exceptional, the only remaining issue is the amount of fees to be awarded.

Plaintiffs submitted declarations from three of their attorneys in support of their request for fees. Docket Nos. 583-1, 583-2, 583-3. Plaintiffs request a total of $4,634,775.45. Docket No. 583 at 11. Plaintiffs contend these fees are reasonable because the partners billed at a rate ranging from $320 to $435, less than the average billing rate of $606 for intellectual property partners in

Texas, and the associates billed at a rate ranging from $250 to $345, below the average rate of $435 for intellectual property associates in Texas.  *Id*.  Adding the requested expenses, the total attorneys' fees requested are $5,003,016.58.  Plaintiffs also seek an award of expert fees in this case as a sanction for the abuse of the judicial process.  *Id*.  Plaintiffs request $1,027,656.54 for expert fees.

Defendants argue that Plaintiffs have not shown the fraud or bad faith necessary to award expert fees and that Plaintiffs attach no bills for their experts to indicate whether the amount is for this case only or whether it includes other cases he worked on.  Docket No. 590 at 21.  Defendants also argue that Plaintiffs' attorney fee submissions are inadequate because they attach no actual bills or invoices, include fees from other cases, and there are arbitrary reductions to the bills with excessive percentages and noncompensable time that is not separated out.  *Id*. at 21–24.  Finally, Defendants argue that even if the Court were to award fees, the request should be adjusted downward by at least 25 percent due to duplicative overstaffing.  *Id*. at 24.

The Court does not find that expert fees are warranted as an additional sanction.  Plaintiffs do not point to any conduct separate from their basis for attorneys' fees to justify an award of expert fees.  Docket No. 583 at 12–13.  Plaintiffs simply ask this Court to rely on its inherent equitable power to impose sanctions for the bad faith conduct of Defendants.  *Id*.  While the Court finds an award of attorneys' fees appropriate based upon the conduct in this case described herein, the Court does not find a basis to further sanction Defendants in the form of expert fees.  *See Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1392 (Fed. Cir. 2008) ("[w]here, as here, the district court's award of attorney fees under section 285 and expert witness fees under its inherent authority are predicated on the same conduct, the district court must offer a reasoned

explanation for why the award of attorney fees and expenses under section 285 is not a sufficient sanction for the conduct in question.").

As to the amount of attorneys' fees to be awarded, the Court **ORDERS** the parties to meet and confer regarding an appropriate amount for fees. The Court notes that it does not find Plaintiffs' requested fee amount objectively unreasonable. However, to the extent there are disputes, the parties should submit an accounting of the disputes with attached support within **seven (7) days** of this Order. Time billed and any invoices should, at a minimum, reflect the number of hours worked and the rate at which those hours were billed.

Accordingly, the Motion for Attorneys' Fees is **GRANTED**.

## CONCLUSION

In sum, the Court **ORDERS** as follows:

- Plaintiffs' Motion for Enhanced Damages under 35 U.S.C. § 284 (Docket No. 578) is **GRANTED**.

- Plaintiffs' Motion for Apportionment of Damages as to Retailer Defendants (Docket No. 579) is **DENIED**.

- Plaintiffs' Motion for a Permanent Injunction (Docket No. 580) is **GRANTED**.

- Plaintiffs' Motion for Prejudgment and Post-judgment Interest (Docket No. 581) is **GRANTED**.

- Defendants' Renewed Motions for Judgment as a Matter of Law and for a New Trial (Docket No. 582) are **GRANTED-IN-PART** and **DENIED-IN-PART**. All motions are **DENIED** with the exception of Defendants' JMOL for willfulness as to Fry's Electronics, which is **GRANTED**.

- Defendants' Renewed Supplemental Motion for Judgment as a Matter of Law or Alternatively a New Trial (Docket No. 702) is **DENIED.**

- Plaintiffs' Motion to Declare These Consolidated Cases as Exceptional and for Attorneys' Fees (Docket No. 583) is **GRANTED**.

**SIGNED this 15th day of March, 2019.**

_Robert W Schroeder III_
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE